UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ENGELHARD CORPORATION, )
)
)
)
Plaintiff, )
)
vs. )      Civil Action No.:
)
UNITED STATES OF AMERICA, )   **05  11241 JLT**
UNITED STATES DEPARTMENT OF )
DEFENSE, DONALD RUMSFELD )
in his official capacity as SECRETARY )
OF THE DEPARTMENT OF DEFENSE, )
U.S. MINT, HENRIETTA HOLSMAN )      RECEIPT #_____
FORE, in her official capacity as DIRECTOR )      AMOUNT $_____250.00
OF THE U.S. MINT, NUCLEAR )      SUMMONS ISSUED___3
REGULATORY COMMISSION, and NILS )      LOCAL RULE 4.1_____
J. DIAZ, in his official capacity as CHAIRMAN )      WAIVER FORM_____
OF THE NUCLEAR REGULATORY )      MCF ISSUED_____
COMMISSION, )      BY DPTY. CLK.____MP.
)      DATE_____4/13/05
Defendants. )
)

**COMPLAINT**          MAGISTRATE JUDGE____RBC

## INTRODUCTION

1.    This is an action by Engelhard Corporation seeking contribution and other
      equitable relief for damages and defense costs associated with property damage
      and other losses caused by the release and/or threatened release of hazardous
      substances, radioactive materials and other contaminants at the former Engelhard
      Corporation facility located at State Route 152, Plainville, Massachusetts (the
      "Facility").

## THE PARTIES

2.    The Plaintiff, Engelhard Corporation (hereinafter "Engelhard"), is a Delaware corporation with its principal offices at 101 Wood Avenue, Iselin, New Jersey, 08830.

3.    Defendant, United States of America (the "United States"), acting through its departments, agencies and instrumentalities, contracted with Engelhard for the production of nuclear fuel fabrication and development services, and for the manufacture of coinage and coin stock products.   All such contracts were performed at the Facility.

4.    Defendant, U.S. Department of Defense, is the department of the Federal government responsible for the national defense.

5.    Defendant, Donald Rumsfeld, acting in his official capacity, is the Secretary of the Department of Defense.

6.    Defendant, U.S. Mint, is the agency of the Federal government responsible for the manufacture of the national money supply.

7.    Defendant, Henrietta Holsman Fore, acting in her official capacity, is the Director of the U.S. Mint.

8.    Defendant, Nuclear Regulatory Commission, is the agency of the Federal government responsible for the national nuclear regulatory program.

9.    Defendant, Nils J. Diaz, acting in his official capacity, is the Chairman of the Nuclear Regulatory Commission.

2

## JURISDICTION AND VENUE

10. Engelhard brings this action against all defendants pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, ("CERCLA"), 42 U.S.C. §§ 9601-9675; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992; and the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202.

11. Jurisdiction in this Court is founded upon Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and Section 7002(a) of RCRA, 42 U.S.C. § 6972(a).

12. Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because each of the Defendants may be found in this Judicial District. Venue is proper in this District under Section 7002(a) of RCRA, 42 U.S.C. § 6792(a), because the Facility may be found in this Judicial District.

13. Sections 101(21) and 120(a)(1) of CERCLA, 42 U.S.C. §§ 9601(21) and 9620(a)(1), waive the United States' sovereign immunity with respect to actions brought under CERCLA. Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), waives the United States' sovereign immunity with respect to actions brought under RCRA.

## STATEMENT OF FACTS

### History of Engelhard Corporation

14. In 1957, the D. E. Makepeace division of Engelhard Industries, Inc. built the Facility, as a new manufacturing facility on about 18.3 acres on the west side of Massachusetts State Route 152 in Plainville, Massachusetts, for the purpose of

3

expanding its uranium metal fabrication operations which were conducted pursuant to contracts with the United States Atomic Energy Commission and its licensees.

15.   After a series of corporate reorganizations, the current Engelhard Corporation was formed in 1981.

16.   Engelhard Corporation is the successor-in-interest to Engelhard Industries, Inc.

### Nuclear Fuel Processing at the Facility

17.   From 1957 to 1962, the primary operations at the Facility were nuclear component fabrication, comprised of melting uranium alloys, shaping, forming and heat-treating operations, and "Form Roll" operations, a steel and titanium metal shaping and treating operation to produce aerodynamic surfaces.

18.   From 1957 to 1962, all nuclear activities at the Facility were governed by the Atomic Energy Act of 1954, as amended, 42 U.S.C. § 2011 et seq.

19.   The AEA authorized the Atomic Energy Commission to create and develop nuclear energy research and development programs for both military and civilian purposes, and to promote a civilian industry supporting military and civilian application of nuclear energy.

20.   Since 1954, the Atomic Energy Commission and its successor agencies have directly through their various regional offices and government-owned national research laboratories, and indirectly through other departments, agencies or instrumentalities of the United States, induced private sector business enterprises to engage in research and manufacturing activities, under contracts and otherwise, related to military and civilian uses of radioactive material.

4

21. The Atomic Energy Commission and its successor agencies exercised a uniquely pervasive degree of control over private enterprises engaged in nuclear industrial activities.

22. Under the AEA, private ownership of special nuclear material was prohibited until 1964.

23. The United States controlled the manufacture of products using government-owned radioactive material at private facilities, including at the Facility.

24. The United States controlled the safety and security, accountability for radioactive material, and radioactive material handling, storage and disposal at private facilities, including the Facility.

25. Engelhard held Special Nuclear Material license SNM No. 185, and its amendments, that permitted Engelhard to use and process special nuclear material.

26. From the late 1950's until 1962, Engelhard provided nuclear research services, nuclear fuel processing, and fabrication of nuclear fuel elements pursuant to the specific review and approval of the Atomic Energy Commission.

27. The development, processing, and fabrication activities listed in paragraph 26 were undertaken by Engelhard under the direction of the Atomic Energy Commission.

28. The United States owned all of the enriched uranium and other radioactive materials required to fabricate products under government contracts supporting military and civilian programs.

29. The United States also specified how the government-owned materials were stored, accounted for and disposed.

5

30.     The United States retained ownership and control over finished products fabricated at the Facility.

31.     From 1957 through 1962, the United States directly benefited from the work performed at the Facility.

32.     In the nuclear component fabrication process, large quantities of trichloroethylene were used to clean the products and equipment during production.

33.     From 1957-1962 all floor washings, floor drains, laundry and shower wastewater from the nuclear operation were filtered and discharged to large leach fields on-site.

34.     The Atomic Energy Commission was aware that the use and processing of the government-owned nuclear materials would result in radioactive production wastes, losses of nuclear material, contamination of work and process areas.

35.     Engelhard terminated all of its work with enriched uranium in 1962 and conducted decommissioning and decontamination of the Facility under oversight and with written approval of the Atomic Energy Commission.

36.     Despite the written approval of the Atomic Energy Commission, residual radioactive contamination arising from operations in the 1950's and 1960's is still found at the Facility.

37.     Under the provisions of the AEA, title to radioactive materials found today in the soil and groundwater at the Facility still resides with the United States.

38.     In 1990, the Facility was identified for inclusion in the Nuclear Regulatory Commission's Site Decommissioning Management Plan.

6

39.    In 1996, the Nuclear Regulatory Commission approved the Engelhard decommissioning plan for the Facility.

40.    In 1997, the Oak Ridge Institute for Science and Education performed an independent confirmatory survey of certain building areas at the Facility. Some portions of affected buildings at the Facility were released for unrestricted used.

41.    Other portions of the Facility are presently being addressed in Engelhard's ongoing decommissioning plan for the remainder of the Facility.

42.    In March 1997, regulatory jurisdiction for radioactive issues was transferred from the Nuclear Regulatory Commission to the Commonwealth of Massachusetts pursuant to Section 274b of the AEA, 42 U.S.C. § 2021b, when Massachusetts became an Agreement State. At that time, the Nuclear Regulatory Commission removed the Facility from it Site Decommissioning Management Plan.

43.    Presently stored on site at the Facility are approximately 93 tons of radioactive contaminated waste material generated during the decontamination and decommissioning of the Facility.

## Coinage Contracts with the U.S. Mint

44.    In 1966, Engelhard added capacity to the Facility, including Building 6, for the production of silver-copper alloy sandwich blanks and coin stock for the U. S. Mint.

45.    Under numerous contracts, the U. S. Mint provided Engelhard with government-owned materials used in the production of silver-copper alloy sandwich blanks and coin stock.

7

46.    Because of the high intrinsic value of the government-owned material shipped to
       the Facility, Engelhard was required to institute rigorous inventory control
       measures.

47.    Among the new operations added to Building 6 in 1966 was a degreasing pit
       located in the floor used to degrease the coin stock using trichloroethylene, and
       later, other chlorinated solvents.

48.    Engelhard also produced other precious metal alloys by melting silver, copper,
       lead, gold and other metals in furnaces, and by conducting metal finishing and
       fabricating operations, including use of metal degreasers that were located in
       Buildings 5 and 8 and used perchloroethylene and trichloroethane.

49.    From 1957-1973, wastewater from the Facility's nonnuclear operations was
       discharged to holding ponds or pits at the back of the plant.

50.    From 1973-1981, Engelhard operated an ion exchange wastewater treatment
       system designed to treat the facility's wastewater for reuse.

51.    Numerous unintentional spills and releases occurred that resulted in the discharge
       of treated and untreated wastewater at the back of the Facility.

52.    In about 1978, Engelhard arranged for wastewater to be pumped out of the
       holding ponds and trucked away to a local wastewater treatment plant.

53.    In 1981, Engelhard paid for and began using a connection to the local sanitary
       sewer system for the discharge of all wastewater from the Facility.

## Contamination at the Facility

54.    From 1957 until 1993 when Engelhard ceased then existing operations at the
       Facility, hazardous wastes and hazardous constituents, including radionuclides,

8

trichloroethylene, perchloroethylene, trichloroethane, and lead, were released to the environment at the Facility as a result of unintentional spills and releases.

55.     Elevated levels of mercury, cadmium and silver have been found in sediments in an embayment of Turnpike Lake, adjacent to the facility, and dichloroethene, dichloroethane, perchloroethylene, trichloroethylene, and trichloroethane have consistently been found in groundwater within bedrock wells and east of the facility and Route 152.

56.     On September 9, 1993, Engelhard and the United States Environmental Protection Agency ("EPA") entered into an Administrative Order on Consent, RCRA Docket No. I-92-1051 ("Administrative Order"), in which EPA determined in Finding number 6 that "Hazardous Wastes and/or Hazardous Constituents which have been released at the [Plainville] Facility have migrated and may still be migrating to the Ground Water, soils, surface waters and sediments at or in the vicinity of the Facility."

57.     Pursuant to the Administrative Order, Engelhard has hired environmental contractors and consultants to conduct investigations as to the extent and concentrations of hazardous constituents, and to mitigate and prevent constituents from migrating offsite; environmental contractor costs incurred by Engelhard as of December 31, 2004, are approximately $15,283,630.09.

58.     Additionally, Engelhard purchased five (5) homes near the Facility at a cost of $971,000 because of solvents in the shallow groundwater.

59.     On or about August 8, 2001, Engelhard issued to the United States Department of Justice, a "demand in writing" under Section 107 of CERCLA, 42 U.S.C. §9607,

asserting the United States' liability under Section 107 and Section 113 of CERCLA, 42 U.S.C. §§9607 and 9613, for environmental response costs at the Facility.

60. On March 4, 2005, Engelhard gave notice by registered mail of its intent to bring a citizen's suit against the Defendants under RCRA pursuant to the notice requirements of Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), and 40 C.F.R. Part 254.

61. The United States has so far failed to either pay for any of the environmental response costs incurred by Engelhard at the Facility or otherwise acknowledge its responsibility for such costs.

## FIRST CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
## UNDER CERCLA §107 FOR
## COST RECOVERY OF ALL ENVIRONMENTAL RESPONSE COSTS

62. Engelhard repeats and realleges the allegations of paragraphs "1" through "61" of this Complaint, as if set forth in this paragraph at length.

63. The Facility is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. §9601(9).

64. Each of the Defendants is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. §9601(21).

65. Defendants are persons who operated the Facility at a time when hazardous substances owned by the Defendants were released at the Facility, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. §9607(a)(2).

66. Defendants are persons who arranged for disposal or treatment of hazardous substances at the Facility, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. §9607(a)(3).

67. There have been releases of hazardous substances at the Facility, within the meaning of Section 107 of CERCLA, 42 U.S.C. §9607.

68. These releases of hazardous substances have caused Engelhard to incur necessary costs of response within the meaning of Section 107 of CERCLA, 42 U.S.C. §9607.

69. The environmental response costs incurred by Engelhard are necessary and consistent with the National Contingency Plan (the "NCP"), 40 C.F.R. Part 300.

70. Engelhard is an innocent party under CERCLA within the meaning of Section 107(b)(3), 42 U.S.C. § 9607(b)(3).

71. Defendants are jointly and severally liable under Section 107 of CERCLA, 42 U.S.C.§9607, for all environmental response costs that Engelhard has incurred and may continue to incur in the future, consistent with the NCP, including administrative oversight, and costs to evaluate the exposure to hazardous substances by the parties in and around the Facility, and costs incurred by Engelhard in responding to the release of hazardous substances at the Facility.

WHEREFORE, Engelhard requests that this Court enter judgment in favor of Engelhard and against Defendants as follows:

11

A. Declaring that Defendants are jointly and severally liable under Section 107 of CERCLA, 42 U.S.C. § 9607, for all response costs which were incurred in the past or which will be incurred in the future by Engelhard in responding to such release or threatened release of hazardous substances;

B. For such amount as may be determined by the Court to satisfy the obligation of Defendants for response costs incurred by Engelhard in responding to such release or threatened release of hazardous substances; and

C. For interest, costs and such other and further relief as the Court determines is just and appropriate.

## SECOND CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
## FOR CONTRIBUTION UNDER CERCLA §107(A)(4)(b)

72. Engelhard repeats and realleges the allegations of paragraph "1" through "71" of this Complaint, as if set forth in this paragraph at length.

73. Pursuant to CERCLA Section 107(a)(4)(B), 2 U.S.C. §9613(a)(4)(B), Defendants are liable for their equitable share of Engelhard's response costs, including all costs of removal or remedial action, and other necessary costs of response incurred by Engelhard.

74. Defendants are liable for contribution under CERCLA §107(a)(4)(B), 42 U.S.C.§9607(a)(4)(B), for their share of environmental response costs that Engelhard has incurred and may continue to incur in the future, consistent with the NCP, in responding to the release of hazardous substances at the Facility.

WHEREFORE, Engelhard requests that this Court enter judgment in favor of Engelhard and against Defendants as follows:

A.  Declaring that Defendants are liable to Engelhard for contribution under Section 107 of CERCLA, 42 U.S.C. § 9607, and Federal common law for all response costs which were incurred in the past or which will be incurred in the future by Engelhard in responding to such release or threatened release of hazardous substances;

B.  For such amount as may be determined by the Court to satisfy the obligation of Defendants for response costs incurred by Engelhard in responding to such release or threatened release of hazardous substances; and

C.  For interest, costs and such other and further relief as the Court determines is just and appropriate.

## THIRD CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
## FOR CONTRIBUTION UNDER FEDERAL COMMON LAW

75.   Engelhard repeats and realleges the allegations of paragraph "1" through "74" of this Complaint, as if set forth in this paragraph at length.

76.   Pursuant to CERCLA Section 113(f), 42 U.S.C. § 9613(f), Defendants are liable for their equitable share of Engelhard's response costs, including all costs of removal or remedial action, and other necessary costs of response incurred by Engelhard.

13

77.     Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), claims under
        CERCLA "shall be governed by Federal law."

78.     Defendants are liable for contribution under Federal common law, for their share
        of environmental response costs that Engelhard has incurred and may continue to
        incur in the future, consistent with the NCP, in responding to the release of
        hazardous substances at the Facility.

WHEREFORE, Engelhard requests that this Court enter judgment in favor of Engelhard
and against Defendants as follows:

        A.  Declaring that Defendants are liable to Engelhard for contribution under

        Section 107 of CERCLA, 42 U.S.C. § 9607, and Federal common law for all

        response costs which were incurred in the past or which will be incurred in the

        future by Engelhard in responding to such release or threatened release of

        hazardous substances;

        B.  For such amount as may be determined by the Court to satisfy the obligation

        of Defendants for response costs incurred by Engelhard in responding to such

        release or threatened release of hazardous substances; and

        C.  For interest, costs and such other and further relief as the Court determines is

        just and appropriate.

## FOURTH CAUSE OF ACTION

## AGAINST ALL DEFENDANTS
## FOR CONTRIBUTION UNDER CERCLA §113(f)(3)(B)

79. Engelhard repeats and realleges the allegations of paragraph "1" through "78" of this Complaint, as if set forth in this paragraph at length.

80. Pursuant to the Administrative Order of September 9, 1993, the EPA required Engelhard to undertake the investigation and remediation of the Facility.

81. Pursuant to Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), the Administrative Order resolves some or all of Engelhard's liability to the EPA for response costs in the investigation and remediation of the Facility.

82. Since the Administrative Order is a "settlement agreement" pursuant to Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), Defendants are liable for contribution under CERCLA §113(f)(3)(B), 42 U.S.C.§9613(f)(3)(B), for their share of environmental response costs that Engelhard has incurred and may continue to incur in the future, consistent with the NCP, in responding to the release of hazardous substances at the Facility.

WHEREFORE, Engelhard requests that this Court enter judgment in favor of Engelhard and against Defendants as follows:

A. Declaring that Defendants are liable to Engelhard for contribution under Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), for all response costs which were incurred in the past or which will be incurred in the future by Engelhard in responding to such release or threatened release of hazardous substances;

15

B. For such amount as may be determined by the Court to satisfy the obligation of Defendants for response costs incurred by Engelhard in responding to such release or threatened release of hazardous substances; and

C. For interest, costs and such other and further relief as the Court determines is just and appropriate.

## FIFTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
## UNDER RCRA §7002

83.   Engelhard repeats and realleges the allegations of paragraph "1" through "82" of this Complaint, as if set forth in this paragraph at length.

84.   Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), the United States is a person who, acted as a past or present generator of "solid waste" and "hazardous waste" at the Facility, as those terms are defined in Section 1004 of RCRA, 42 U.S.C. § 6903.

85.   Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), the United States is a person who, acted as a past or present operator of a "treatment, storage, or disposal facility," as those terms are defined in Section 1004 of RCRA, 42 U.S.C. § 6903.

86.   Pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), the United States is a person who, has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of solid or hazardous waste which presents an imminent and substantial endangerment to health or the environment.

16

87.     Defendants are liable pursuant to Section 7002(a)(2) of RCRA, 42 U.S.C. §
        6972(a)(2), for any and all past and future environmental response costs at the
        Facility, and/or for any other equitable relief that this Court may determine.

WHEREFORE, Engelhard requests that this Court enter judgment in favor of Engelhard
and against Defendants as follows:

        A.  Declaring that Defendants are liable under Section 7002 of RCRA, 42 U.S.C.
        § 6972, for any and all response costs which were incurred in the past or which
        will be incurred in the future by Engelhard in responding to such release or
        threatened release of hazardous substances;

        B.  For such amount as may be determined by the Court to satisfy the obligation
        of Defendants for response costs that will be incurred by Engelhard in responding
        to such release or threatened release of hazardous substances; and

        C.  For such other and further equitable relief as the Court determines is just and
        appropriate.

## SIXTH CAUSE OF ACTION

## AGAINST ALL DEFENDANTS

## UNDER DJA §§ 2201-2202

88.     Engelhard repeats and realleges the allegations of paragraph "1" through "87" of
        this Complaint, as if set forth in this paragraph at length.

89.     This Court has the power to render declaratory relief under 28 U.S.C. § 2201 and
        under CERCLA §113(g)(2), 42 U.S.C. §9613(g)(2).

17

90.     This Court should declare that Defendants are liable as alleged above under
        CERCLA for necessary response costs consistent with the NCP that Engelhard
        will incur in responding to the releases of hazardous substances alleged above and
        for all other relief deemed appropriate.

91.     This Court should declare that Defendants are liable as alleged above under
        RCRA for the abatement of the imminent and substantial endangerment caused by
        environmental conditions at the Facility.

WHEREFORE, Engelhard requests that this Court enter judgment in favor of Engelhard
and against Defendants as follows:

        A.  Declaring that Defendants are liable to Engelhard under Sections 107 and 113
        of CERCLA, 42 U.S.C. §§ 9607 and 9613, and Section 7002 of RCRA, 42 U.S.C.
        § 6972, for any and all response costs which were incurred in the past or which
        will be incurred in the future by Engelhard in responding to such release or
        threatened release of hazardous substances;

        B.  For such amount as may be determined by the Court to satisfy the obligation
        of Defendants for response costs incurred by Engelhard in responding to such
        release or threatened release of hazardous substances; and

        C.  For such other and further equitable relief as the Court determines is just and
        appropriate.

18

Respectfully submitted,

For the Plaintiff
ENGELHARD CORPORATION,
By its attorneys,

Dated: June 13, 2005

David P. Rosenblatt, Esquire (BBO # 428570)
Paul R. Mastrocola, Esquire (BBO #630664)
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
Telephone: (617) 345-3330
Telecopier: (617) 345-3299
Email: drosenblatt@burnslev.com
Email: pmastrocola@burnslev.com

Of Counsel

Ronald L. Kuis, Esquire
12 Scenery Road
Pittsburgh, PA 15221
Telephone: 412/731-7246
Telecopier: 412/731-3970
Email: rlkuis@aol.com

J:\Docs\27429\00000\00934868.DOC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

first party on each side only) Engelhard Corporation v. United States of America, et.al.

ngs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local

15, R.23, REGARDLESS OF NATURE OF SUIT.

)0, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
20*, 830*, 840*, 850, 890, 892-894, 895, 950.              for patent, trademark or copyright cases

, 140, 151, 190, 210, 230, 240, 245, 290, 310,
340, 345, 350, 355, 360, 362, 365, 370, 371,
891.

1.  Title of case (name of the case below)

220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 63... 40, 65 , 660,
690, 810, 861-865, 870, 871, 875, 900.

# 05 11241 JLT

v.    150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

None

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]    NO [x]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

    YES [ ]    NO [x]

    If so, is the U.S. or an officer, agent or employee of the U.S. a party?

    YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]    NO [x]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    N/A    YES [ ]    NO [ ]

    If yes, in which division do all of the non-governmental parties reside?

    Eastern Division [ ]    Central Division [ ]    Western Division [ ]

    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division [ ]    Central Division [ ]    Western Division [ ]

    Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, 8 separate sheet identifying the motions)

    YES [ ]    NO [ ]

YPE OR PRINT)
Y'S NAME    Paul R. Mastrocola, Esq.
, Burns & Levinson LLP, 125 Summer Street, Boston, MA  02110
ONE NO.  (617) 345-3244

(CategoryForm.wpd - 5/2/05)

℈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Engelhard Corporation

## DEFENDANTS
United States of America

**(b)** County of Residence of First Listed Plaintiff  Norfolk County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED. Laurel Bedig, Esq.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Paul R. Mastrocola, Esq., Burns & Levinson LLP
125 Summer St., Boston, MA  02110 (617) 345-3244

Attorneys (If Known)
U.S. Dept. of Justice
Environmental Defense Section
601 D St., NW, Suite 8000
Washington, DC  20004

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
CERCLA Sec. 107, Sec. 113, RCRA Sec. 7002, DJA Sec. 2201-2202

Brief description of cause: Plaintiff seeks contribution and other equitable relief for
damages and defense costs caused by release of hazardous substances

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE

DOCKET NUMBER

DATE
June 13, 2005

SIGNATURE OF ATTORNEY OF RECORD
Paul R. Mastrocola

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE