# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

)

**ENGELHARD CORPORATION,** )

)

          **Plaintiff,** )

)     **Civil Action No. 05-11241-JLT**

        **v.** )     (_Electronic filing_)

)

**UNITED STATES OF AMERICA** )

<u>**et al.,**</u> )

)

          **Defendants.** )

_____ )

## ENGELHARD CORPORATION'S MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION FOR PARTIAL DISMISSAL

Respectfully submitted,

David P. Rosenblatt, Esquire (BBO #428570)
Paul R. Mastrocola, Esquire (BBO #630664)
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
Telephone : (617) 345-3000
Fax: (617) 345-3299
drosenblatt@burnslev.com
pmastrocola@burnslev.com

Ronald L. Kuis, Esquire
12 Scenery Road
Pittsburgh, PA 15221
Telephone:  (412) 731-7246
Fax:  (412) 731-3970
rlkuis@aol.com

Attorneys for Plaintiff,
Engelhard Corporation

November 17, 2005

## STATEMENT OF JURISDICTION

Plaintiff Engelhard Corporation ("Engelhard") brings this action against Defendants, the United States of America and various agencies and officials of the United States of America (collectively, the "United States") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"), and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346; 42 U.S.C. § 6972(a); and 42 U.S.C. § 9613(b).

## STATEMENT OF THE CASE

This case involves a suit by Engelhard against the United States seeking contribution for environmental response costs under CERCLA, injunctive relief under RCRA, and declaratory relief pursuant to both CERCLA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

Engelhard responds herein to the United States' Motion for Partial Dismissal. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the United States moves for dismissal of the first, second, third, fifth and sixth causes of action in Engelhard's Complaint. Engelhard's first, second and third causes of action seek contribution from the United States for environmental response costs and are authorized under Sections 107 and 113 of CERCLA, and federal common law. 42 U.S.C. §§ 9607 and 9613. Engelhard's fifth cause of action seeks injunctive relief from the United States and is authorized under Section 7002 of RCRA. 42 U.S.C. § 9672. Engelhard's sixth cause of action seeks declaratory relief and is authorized under both Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

The United States does not challenge the justiciability of Engelhard's fourth cause of action seeking contribution from the United States pursuant to Section 113(f)(3)(B) of CERCLA.

42 U.S.C. § 9613(f)(3)(B).

On December 13, 2004, the Supreme Court issued its ruling in <u>Cooper Indus., Inc. v. Aviall Servs., Inc.</u>, 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004). The Supreme Court's decision unsettled more than two decades of understanding among the courts, federal and state government regulators, and the regulated community that a party could bring an action for contribution under Section 113(f)(1) of CERCLA in the absence of a prior or pending civil action under Section 106 or 107. 42 U.S.C. §§ 9606, 9607. <u>Cooper</u> also expressly left open the question whether a party in those circumstances could nevertheless bring an action for contribution under Section 107. That question is now raised by the United States in its Motion for Partial Dismissal.

Before the Supreme Court's ruling in <u>Cooper</u>, courts were virtually unanimous in their understanding that a party could obtain contribution under Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1). <u>Cooper</u> held that contribution under Section 113(f)(1) is not available to potentially responsible parties, like Engelhard, in the absence of a prior or pending CERCLA civil action. By altering this long-held assumption in the lower courts, including the First Circuit, <u>Cooper</u> requires that this Court reexamine the causes of action available under Section 107.

Engelhard's first, second, third and fourth causes of action are authorized under Sections 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f), P-62 to P-82 ("P" herein refers to Paragraphs of Engelhard's Complaint). Engelhard seeks to recover from the United States an equitable share of Engelhard's past and future environmental response costs at its facility in Plainville, Massachusetts (the "Plainville facility"), based on the United States' direct involvement under various toll manufacturing contracts with Engelhard, the United States' ownership of radioactive and other hazardous substances processed, managed and disposed of by Engelhard on behalf of the United States, and other circumstances that render the United States liable as an "arranger" pursuant to CERCLA. Engelhard alleges the United States to be liable as an "arranger"

3

for the treatment and disposal of hazardous substances at the Plainville facility, within the meaning of those terms as defined in CERCLA.

Pursuant to its fifth cause of action, Engelhard also seeks any and all injunctive relief allowable under the citizen suit provisions of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B). The broad language of Section 7002(a)(1)(B) imposes liability on any party, including the United States, that has "contributed" to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste that may present an imminent and substantial endangerment to health and the environment. Id. Prohibitions to maintaining a citizen suit under Section 7002(a)(1)(B) are listed at Section 7002(b)(2). 42 U.S.C. § 6972(b)(2). However, none of the prohibitions preventing maintenance of a RCRA citizen suit are applicable to the Plainville facility or the factual allegations of Engelhard's Complaint.

Finally, Engelhard's sixth cause of action is a request for declaratory relief under Sections 2201 of the Declaratory Judgment Act, 28 U.S.C. § 2201, and Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2). Declaratory relief is available when an "actual controversy" exists between the parties. Since the United States has not sought the dismissal of Engelhard's fourth cause of action under Section 113(f)(3)(B) of CERCLA, 42 U.S.C. §9613(f)(3)(B), the United States has impliedly agreed that an "actual controversy" does exist for which relief can be granted; therefore, dismissal of the sixth cause of action is unsupported.

The United States has moved under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for a judgment on the pleadings seeking to dismiss some, but not all, of Engelhard's causes of action with prejudice. No discovery has been conducted and the United States has filed only a partial Answer in response to the allegations contained in Engelhard's Complaint. As outlined above and discussed more fully herein, this Court has jurisdiction over the subject matter of this proceeding as required

by Rule 12(b)(1), and claims have been stated for which relief can be granted as required by Rule 12(b)(6).  Accordingly, the United States' Motion for Partial Dismissal must be denied.

## STATEMENT OF FACTS

This case arises from environmental cleanup efforts at Engelhard's Plainville facility located near Plainville, Massachusetts.  Manufacturing activities at the Plainville facility involved, in relevant part, the production of (1) nuclear fuel for atomic research and development purposes starting in approximately 1957 and terminating in 1962 and (2) coin blanks and other coinage material under contracts with the United States Mint from approximately 1966 through the 1980s. (P-14 to P-54.)  During the entire period that nuclear fuel was manufactured at the Plainville facility, the United States, through the Atomic Energy Commission, held title to the nuclear materials managed, processed, and treated by Engelhard.  Under the provisions of the Atomic Energy Act of 1954, as amended, 42 U.S.C. § 2011 et seq., the United States held sole and exclusive ownership of the nuclear material processed at the Plainville facility; private ownership of such materials was only permitted starting after 1962.  In fact, the United States still retains ownership to the radioactive materials that are found in the environmental media at the Plainville facility. (P-37.)  Similarly, contracts between Engelhard and the United States Mint required the United States to provide Engelhard with government owned materials used in the Plainville manufacturing operations. (P-45.)

Since the 1980s, Engelhard has been cleaning up hazardous substances at the Plainville facility.  Engelhard initially undertook investigation and cleanup activities voluntarily; an important fact not properly represented in the United States' Motion for Partial Dismissal.  Starting in 1993, Engelhard has continued with the investigation and cleanup of the Plainville facility under the Section 3008 corrective action program of RCRA.  42 U.S.C. § 6928.  (P-56.)  Under the RCRA

corrective action program, Engelhard is required to investigate and remediate past releases of hazardous waste at the Plainville facility, regardless of when the releases occurred. Id. As a matter of discretion or policy, the United States Environmental Protection Agency ("EPA") can choose to use the RCRA corrective action program to remediate sites that could be addressed under either RCRA or CERCLA. Because Engelhard has voluntarily conducted environmental response actions at the Plainville facility, and later entered into a Consent Order with the EPA under the RCRA corrective action program, there has been no Section 106 or 107 civil actions under CERCLA. Through December 2004, Engelhard has spent in excess of $15 million implementing the cleanup at the Plainville facility. (P-57.) Engelhard has alleged in the Complaint that these expenditures are "necessary costs of response . . . consistent with the national contingency plan" within the meaning of Section 107(a)(4)(B) of CERCLA. (P-69.)

Engelhard further alleges that the United States, through its ownership of processed materials and toll manufacturing contracts with Engelhard, significantly "contributed" to contamination at the Plainville facility and is therefore liable under Section 7002 of RCRA. 42 U.S.C. § 6972. (P-86 to P-87.)

## STATEMENT OF THE STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), a complaint cannot be dismissed unless the court is certain that no set of facts can be proved that would entitle plaintiff to relief. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). For dismissal under Rule 12(b)(6), the court must accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiff's favor. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). A Rule 12(b)(6) motion to dismiss should be granted only if it "appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Const. Co. v. Russo, 96 F.3d

566, 569 (1st Cir. 1996).  On a motion to dismiss under Rule 12(b)(1), "the party invoking federal court jurisdiction bears the burden of proving its existence."  Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 200 (1st Cir. 2000).

### SUMMARY OF THE ARGUMENT

Before Cooper, it was the unanimous understanding of ten Courts of Appeals, including the First Circuit, that a potentially responsible party ("PRP") could bring a contribution suit under CERCLA in the absence of a civil action under Section 106 or 107.  See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1147 (1st Cir. 1989); Kalamazoo River Study Group v. Rockwell Int'l Corp., 274 F.3d 1043, 1046 (6th Cir. 2001); Morrison Enters. V. McSares Inc., 302 F.3d 1127 (10th Cir. 2002).  Cooper disrupted two decades of CERCLA jurisprudence by interpreting the language of Section 113(f) far more narrowly, limiting its reach to a more restricted set of circumstances than those recognized earlier by the lower courts. Specifically, the Supreme Court determined that contribution actions under the enabling clause in the first sentence of Section 113(f)(1) are available to PRPs only when there has been a prior Section 106 or 107 civil action.  At the same time, the Supreme Court concluded that the savings clause in the last sentence of Section 113(f)(1) rebutted any presumption that the narrow contribution right established by the enabling clause is the exclusive right afforded to PRPs to recover their environmental response costs.  Although the majority declined to define the source of the broader right, the dissenting justices concluded that the source was Section 107(a)(4)(B) and, rather than protract the litigation, would have ruled that a PRP could pursue a Section 107 claim for relief against another PRP in the absence of a prior or pending Section 106 or Section 107 civil action.

The Supreme Court made clear that Section 113(f)(1) does not contain the exclusive

cause of action for contribution available to a PRP under CERCLA, although it declined to decide where the other contribution actions might lie.  The decision in <u>Cooper</u> leaves undecided whether another provision of CERCLA, such as Section 107, or federal common law, gives Engelhard, which has not faced a Section 106 or 107 civil action, a right to recover from the United States the government's equitable share of Engelhard's environmental response costs.

As described more fully below, Engelhard has a right to recover its response costs from other PRPs, such as the United States, pursuant to Section 107.  After <u>Cooper</u> unsettled the distinctions and terminology previously understood to apply to CERCLA causes of action, the proper term for this right will undoubtedly be a matter of dispute throughout the circuit and district courts.  Because Engelhard is seeking to recover only that share of its response costs for which the United States is equitably responsible, and because Engelhard and the United States are both potentially liable parties under CERCLA, the action is best termed one for contribution.  Use of this label also harmonizes this right of action with the use of the term "contribution" in the statute of limitations provisions of CERCLA.

The plain language of Section 107(a)(4)(B) unquestionably makes the United States liable to Engelhard for necessary costs of response that Engelhard incurred consistent with the National Contingency Plan ("NCP"), and thus, there is an express contribution right in Section 107(a)(4)(B).  A right of contribution is also fairly implied from the language of that Section, the legislative history, purpose, and structure of CERCLA as a whole, as well as from the broad waiver of sovereign immunity in Section 120(a), which requires that the United States be treated the same as any other liable party when the government is liable under CERCLA.  The addition of an express contribution right in the first sentence of Section 113(f)(1) did not foreclose the implied right under Section 107(a)(4)(B).  Nor do judicial precedents, which require reexamination in light of <u>Cooper,</u>

preclude such a right.  A right to contribution under CERCLA in the absence of a prior civil action under Section 106 or 107 is also available as a matter of federal common law.

Engelhard also seeks injunctive relief allowable under Section 7002(a) of RCRA.  42 U.S.C. §6972(a).  The United States expressly waives its sovereign immunity for citizen suits under this provision.  Furthermore, none of the prohibitions to maintaining a citizen suit under RCRA found at Section 7002(b)(2)(B) apply to the facts in the instant proceeding.  42 U.S.C. §6972(b)(2)(B). This Court has clear authority to order equitable relief in a form and manner appropriate to the facts evidenced at the Plainville facility.

## **LEGAL ARGUMENT**

I.     **Engelhard Has a Cause of Action Against the United States under CERCLA to Recover an Equitable Share of the Response Costs It Has Incurred and Will Incur in the Future.**

A.     **Section 107(a) unquestionably affords a private party a right to recover its response costs from another party, even if the party seeking recovery is itself a liable party.**

Even after the Supreme Court narrowly interpreted Section 113(f)(1) of CERCLA in Cooper, Engelhard is entitled to pursue a cause of action against the United States under CERCLA. Section 107(a)(4)(B) of CERCLA provides that a party who has incurred costs to clean up a facility can recover those costs from any other party who is liable under CERCLA. The text of the section states plainly that "[c]overed persons . . . shall be liable for any other necessary costs of response incurred by any other person consistent with the [NCP]." 42 U.S.C. § 9607(a)(4)(B).  In Key Tronic Corp. v. United States, 511 U.S. 809 (1994), the Supreme Court concluded that one PRP was entitled to recover response costs from another PRP under Section 107(a), even though both parties were liable under CERCLA.  Id. at 815-16.  The Court did not question the right of one PRP to seek recovery of response costs under Section 107(a), but rather focused its analysis on whether Section

107 "impliedly authorizes private parties to recover cleanup costs from other PRPs" (the majority conclusion, id. at 818) or whether it expressly did so.  See id. at 822 (Scalia, J., dissenting).  As Justice Ginsburg noted in her dissent in Cooper, every member of the Key Tronic Court agreed that a PRP which incurred necessary costs of response, consistent with the NCP, could recover those costs from another liable party in an action under Section 107(a). Cooper, 125 S.Ct. at 586-87 (Ginsberg, J., dissenting).

The Key Tronic majority concluded that, after Section 113 was added by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 ("SARA"), "the statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107." Key Tronic, 511 U.S. at 816.  Neither the majority nor the dissent in Key Tronic analyzed the nature of this "similar and somewhat overlapping" right of a PRP to recover under Section 107.  The Court in Cooper similarly left to the Courts of Appeals the task of defining the substance and terminology to assign to this right. See Cooper, 125 S.Ct. at 586.  In light of the plain text of Section 107(a) and the Supreme Court's decision in Key Tronic, there can be no doubt that Section 107(a)(4)(B) authorizes "any" person to maintain a cause of action against a party who is liable for a part of the necessary, NCP-compliant response costs that person has incurred.

The United States Court of Appeals for the First Circuit has upheld the "unqualified" right to contribution under Section 107(a) of CERCLA.  42 U.S.C. 9607(a).  United Technologies Corporation v. Browning-Ferris Industries, Inc., 33 F.3d 96, 102 (1st Cir. 1994).  In language both direct and unambiguous, the First Circuit states that the language of Section 107(a) is a "straightforward statutory directive." Id.  "Under the reading that we adopt [of Section 107(a)]. … the unqualified language "any other necessary costs" remains as Congress wrote it, that is, without qualification."  Although the United States may argue that the supporting language found in

Footnote 10 renders the early discussion as dictum, the First Circuit's finding of a right of contribution in Section 107(a) is given emphatically, without restrictions or reservations.  Id.

As courts have analyzed CERCLA over the past twenty-five years, a specialized legal lexicon has developed, full of terms of art whose meanings were widely assumed despite their not being defined in the statutory text.   Two such terms are "cost recovery actions" and "contribution actions."   Before Cooper, a "cost recovery" action was one under Section 107, brought by the federal or state government or by a party which was itself not a PRP, to hold all the defendants liable, jointly and severally, for the response costs the plaintiff had incurred.   The standard of liability is not defined in CERCLA; rather, in the context of "cost recovery" actions brought by the government, courts determined that it was joint and several, as a matter of federal common law.  See, e.g., United States v. Chem-Dyne Corp., 572 F. Supp. 802, 808 (S.D. Ohio 1983).  Reasoning from the determination that CERCLA liability under Section 107(a) is joint and several, courts determined that a party that is itself a PRP cannot bring a "cost recovery" action seeking the imposition of joint and several liability.  United Technologies, 33 F.3d at 101.

Under the common understanding before Cooper, a "contribution action" was, by default, the action available to a PRP to recover from another PRP its fair share of response costs for which the other PRP was severally liable.  Id. at 99-101.   By common agreement, courts accepted that a "contribution action" could be brought even in the absence of a prior CERCLA civil action, and many courts, including the First Circuit, expressed the opinion that even in those circumstances the "contribution action" was an action under Section 113.  See id.  Taken together, "cost recovery" and "contribution" actions satisfied the statutory language because one form of action or the other allowed "any" party to recover costs it had incurred for which another party was liable by virtue of Section 107(a).  Cooper has now undercut the assumptions on which this prior

structure and terminology were built by significantly narrowing the circumstances in which a "contribution action" is available. By fundamentally altering the universally understood scheme for bringing CERCLA actions, and by declining to address the question of recovery rights under Section 107(a)(4)(B), the decision in <u>Cooper</u> threatens to yield results which would impermissibly leave some parties without a cause of action to which the "any other party" language in Section 107(a)(4)(B) entitles them.

In the wake of <u>Cooper</u>, courts are left to construe how properly to give meaning to the categorical language that "any" party may recover under Section 107(a)(4)(B). Settled precedent and common sense dictate that a PRP which has some liability for a response cost still cannot hold another party jointly and severally liable for 100% of the response costs the PRP has incurred – it would be perverse if a party with a share of liability could thus avoid paying any share of its costs. <u>See</u>, <u>e.g.</u>, <u>New Castle County v. Halliburton NUS Corp.</u>, 111 F.3d 1116, 1121 (3d Cir. 1997). But it is equally clear that a PRP must have some right to recover its costs pursuant to Section 107(a)(4)(B) – any construction of CERCLA that provides otherwise will excise some parties from the term "any" which Congress wrote into that section. Because the nature of Engelhard's claim is one for recovery of that equitable portion of its costs for which the United States is severally responsible, and because Engelhard and the United States are both liable parties, consistent with the established terminology, this right is best characterized as a right of "contribution." But whatever term ultimately is attached to Engelhard's claim, it is clear that Section 107(a)(4)(B) authorizes it. This right to contribution under CERCLA in the absence of a prior civil action under Section 106 or 107 is express in the language of Section 107(a)(4)(B) itself, is fairly implied from that provision and the statute as a whole, and also arises as a matter of federal common law.

**B.      The text of Section 107(a)(4)(B) provides an express right of
<u>action to recover in contribution from another liable party.</u>**

Section 107(a)(4)(B) provides that certain classes of "covered persons" shall be
liable for "any other necessary costs of response incurred by any other person consistent with the
[NCP]."  42 U.S.C. §9607(a)(4)(B).  Section 101(21) of CERCLA broadly defines the term
"person" to include "an individual, firm, corporation, association, partnership, consortium, joint
venture, commercial entity, United States Government, State, municipality, commission, political
subdivision of a State or any interstate body." 42 U.S.C. § 9601(21).  Significantly, the term
"person" does not exclude PRPs and is not limited to "innocent" parties or governments.  The words
are all-inclusive.   Under this sweeping definition, both Engelhard and the United States are
"persons."

Dissenting in <u>Key Tronic</u>, Justice Scalia stated that Section 107(a) expressly
provides a private PRP a right of action against another PRP.  511 U.S. at 821-23 (Scalia, J.,
dissenting).  At least three Justices of the Supreme Court interpreted this language in exactly that
way.  See <u>id.</u> at 822 ("Section 107(a)(4)(B) states, as clearly as can be, that 'covered persons . . .
shall be liable for . . . necessary costs of response incurred by any other person.' Surely to say that
A shall be liable to B is the *express* creation of a right of action.") (Scalia, J., dissenting) (emphasis
in original).

Thus, under the express terms of the statute, "any other person[s]," a term broadly
defined in CERCLA to include Engelhard, can recover from "covered persons" (a term which
indisputably includes the United States in this case) the "necessary costs of response" they have
incurred — precisely the relief that Engelhard seeks in this action.  Engelhard alleges that the
United States is a "covered person" with respect to the Plainville facility. Engelhard seeks to
recover only that portion of its "necessary costs of response" incurred at the Plainville facility

equitably attributable to the United States. Because Engelhard, as a PRP, seeks only the United States' fair portion of the costs it has incurred, and not to hold the United States liable jointly and severally for all of its costs, this express right of action is properly termed, in the CERCLA lexicon, a right of contribution. This Court should find that Engelhard has an express right to contribution pursuant to Section 107(a)(4)(B).

### C.   A right of contribution is also implied in Section 107(a)(4)(B).

Whether the express cause of action of one PRP against another in Section 107(a)(4)(B) is deemed to be a right of contribution, it is evident that a right to contribution is also fairly implied from that statutory provision, from the CERCLA legislative history, from the underlying purpose and structure of the statute, and from the policy embodied in Section 120(a) providing that the United States is to be treated exactly as any other party with regard to CERCLA liability. As the Supreme Court has made clear, the ultimate question in deciding whether a private right of contribution must be implied from a federal statute is "whether Congress intended to create the private remedy – for example, a right to contribution – that the plaintiff seeks to invoke." Northwest Airlines, Inc. v. Transp. Workers Union of America, 451 U.S. 77, 91 (1981). Congressional intent is the "essential predicate" to the implication of a private right of contribution in a federal statute. Id. at 94. The issues are whether or not Congress intended in Section 107(a)(4)(B) to create a private right of contribution, enabling one PRP to recover "any other necessary costs of response" attributable to another PRP, and whether the implied right of contribution under CERCLA survived the adoption of an express right to contribution in the SARA amendments.

The relevant factors for assessing Congress' intent to create a right of contribution in CERCLA, and preserve implied rights after SARA, are "the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood

that Congress intended to supersede or to supplement existing state remedies." Id. at 91. CERCLA's statutory language, structure and legislative history evidence Congress' intent to provide a right of action for a PRP to recover its costs from another PRP, and, therefore, all of these factors support implication of a private right of contribution in Section 107(a)(4)(B) of CERCLA.

### 1. The text of Section 107(a)(4)(B) supports the implication of a private right of contribution.

The text of Section 107(a)(4)(B) is unequivocal in providing that a "covered person" that is liable under CERCLA is liable to "any" other person for the necessary, NCP-compliant response costs that other person has incurred. In Cooper the majority acknowledged that "[t]he cost recovery remedy of § 107(a)(4)(B) and the contribution remedy of § 113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties," although "the two remedies are clearly distinct." Cooper, 125 S.Ct. at 582 n.3. However, because Cooper forecloses Section 113 as a basis for a party which has incurred response costs to seek recovery from a "covered person" in the absence of a prior or pending CERCLA civil action or settlement, some means must be found to avoid impermissibly narrowing the term "any" in Section 107(a)(4)(B). An implied right of contribution supplements the express right and fills what would otherwise be a gap in the liability structure established by the text of Section 107(a)(4)(B).

PRPs, such as Engelhard, are members of the class of persons intended to be benefited by Section 107(a)(4)(B) because they are among the group of "any other person[s]" who are entitled to recover "any other necessary costs of response" they have incurred from the class of "covered persons" elsewhere enumerated in Section 107(a). Section 107(a)(4)(B) was thus enacted for the special benefit of a class of which Engelhard, as a person who has incurred necessary costs of response, is a member. See Northwest Airlines, 451 U.S. at 91. The categorical language of the liability provision supports the implication of a private right to contribution in the absence of a prior

15

CERCLA civil action.

### 2. The legislative history of CERCLA further supports the implication of a right to contribution from Section 107(a)(4)(B).

As originally enacted in 1980, CERCLA did not explicitly provide for joint and several liability or for contribution. In the absence of express provisions regarding these central principles of its new liability scheme, Congress clearly meant for the federal courts to fill gaps in the text of CERCLA. The legislative history reflects that Congress intended to accord the courts the principal role in developing standards of liability, according to "traditional and evolving principles of common law." 126 Cong. Rec. 31,965 (1980) (statement by Rep. Florio); see also United States v. USX Corp., 68 F.3d 811, 824 (3d Cir. 1995). The legislative history also shows that CERCLA was meant to encourage parties to take action without requiring the government to first undertake a cleanup itself or issue a cleanup order. The availability of contribution was viewed as a major incentive to liable parties to undertake early cleanup action, with an understanding that a fair share of the response costs they incurred could be recovered from other PRPs. See, e.g., H.R. Rep. No. 96-1016(I), at 16-17 (1980), reprinted in 1980 U.S.C.C.A.N. 6119, 6120 (1980) ("The legislation would also establish a federal cause of action . . . to induce such persons voluntarily to pursue appropriate environmental response actions with respect to inactive hazardous waste sites."); 126 Cong. Rec. 26,388 (1980) (remarks by Rep. Florio that CERCLA's liability scheme "creates a strong incentive both for prevention of releases and voluntary cleanup of releases by responsible parties").

Almost immediately following the enactment of CERCLA, the courts imposed joint and several liability in governmental actions under Section 107. See, e.g., Chem-Dyne, 572 F.

Supp. at 808. Just as quickly, the courts found that parties who may be subject to joint and several liability have a right to obtain contribution from other parties who were also liable under CERCLA. See, e.g., Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 890-92 (9th Cir. 1986); Walls v. Waste Res. Corp., 761 F.2d 311, 318 (6th Cir. 1985); City of Phila. v. Stepan Chem Co., 544 F. Supp. 1135, 1142-43 (E.D. Pa. 1982); see also Cooper, 125 S.Ct. at 581 (citing additional cases). This right to contribution was variously determined to have been implied from Section 107(a)(4)(B), or from Section 107(e), or to have arisen as a matter of federal common law. The right, however, did not depend upon the plaintiff being free from liability under the statute.

When Congress added Section 113 to SARA in 1986, it was not legislating in a vacuum. Congress knew that the lower courts had interpreted CERCLA to provide not only joint and several liability for PRPs, but had also fashioned an implied right of contribution allowing PRPs to recover an equitable share of the response costs they had incurred from other PRPs who were also liable. Congress included Section 113(f)(1) in the SARA amendments, adding not only the explicit right of contribution when there was a prior or pending CERCLA civil action, but also the savings clause providing that "nothing in [Section 113(f)(1)] shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [Section 106] or [Section 107]." 42 U.S.C. § 9613(f)(1).

In adding Section 113(f)(1), Congress intended to ratify and confirm the right to contribution that had existed before the SARA amendments. See, e.g., H.R. Rep. No. 99-253(I), at 79 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2861 (one of its principal goals was to "clarif[y] and confirm[] the right of a person held jointly and severally liable . . . under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the clean-up or cost that may be greater than its equitable share under the circumstances.");

*Oversight Hearings Before the House Subcomm. on Admin. Law and Governmental Relations, Comm. on Judiciary,* 99th Cong. 51 (1985) ("The fairness of a joint and several liability scheme depends upon the clear availability of contribution.")  Nothing in the legislative history suggests that Congress intended to narrow the scope of the contribution right fashioned by the courts prior to the SARA amendments.

The legislative history of Section 113(f)(1) also indicates that the words "during or following" were added to the enabling clause of the section because Congress was concerned that PRPs should not have to await the outcome of government-initiated civil actions to seek contribution.  As originally proposed by EPA and the Department of Justice ("DOJ"), the bill provided that contribution suits could be brought only *after* judgment or settlement of an action under CERCLA.  See 131 Cong. Rec. S494, sec. 202 (daily ed. Feb. 22, 1985).  The House of Representatives rejected this proposal and instead adopted H.R. 2817, making express in the first sentence of Section 113(f)(1) that a contribution action may be brought during or following a Section 106 or 107 action.  See H.R. Rep. No. 99-253(I), at 80, *reprinted in* 1986 U.S.C.C.A.N. at 2861.  At the same time, however, Congress added the savings clause to Section 113(f)(1), making it clear that contribution rights that existed outside Section 113(f)(1) were not diminished, including the contribution rights that had been found to exist by the courts prior to the passage of SARA.

Before Cooper, the lower courts, with very few exceptions, believed that CERCLA afforded PRPs the right to seek contribution from other PRPs irrespective of whether there had been a prior or pending civil action under Section 106 or 107 of CERCLA.  It is evident that the Supreme Court's narrow reading of the enabling clause of Section 113(f)(1) was based upon the plain meaning of the text of the first sentence of Section 113(f)(1), rather than upon the intent of Congress in passing Section 113(f)(1).  See Cooper, 125 S.Ct. at 584 ("Given the clear meaning of

the text, there is no need to resolve this dispute or to consult the purpose of CERCLA at all."). The Supreme Court carefully left open the meaning of the "'right of any person to bring an action for contribution in the absence of a civil action under [Section 106 or Section 107],'" which Congress included in the last sentence of Section 113(f)(1). See id. at 583-86. Thus, as interpreted in Cooper, the right embodied in the enabling clause of Section 113(f)(1), standing alone, provides a narrower contribution remedy than Congress intended. The savings clause of Section 113(f)(1), however, explicitly contemplates that a contribution right exists outside of the express provision, which the Court construed in Cooper. Congress' intent that Section 113 confirms *all* of the pre-SARA contribution rights identified by the courts indicates that this contribution right must arise from CERCLA itself. The balance of that contribution remedy therefore must be implied from the balance of CERCLA, and in particular, from Section 107(a)(4)(B), as it was by many courts prior to the enactment of SARA.

Finally, a right of contribution implied from Section 107(a)(4)(B) also avoids frustrating Congressional intent and averts any judicial construction that would diminish the inclusiveness of the term "any other party" in that section. Thus, the legislative history of CERCLA not only supports the implication of a right of contribution, but requires such an implication if Congressional intent is to be effectuated and the language of Section 107(a)(4)(B) is to be given its full meaning after Cooper.

**3.      The right of contribution implied from Section 107(a)(4)(B) is still available after the addition of an express and limited right of contribution in Section 113(f)(1).**

The pre-SARA courts that implied a contribution right from the original provisions of CERCLA did so consistent with Congress' intent that the courts fill the interstices and supply the liability standards left vague in the statutory language. SARA was not intended to change that

process.    Instead, the Congressional reports for SARA provided expressly that courts would continue to have the central role in defining the scope of contribution: even after SARA, "[a]s with joint and several liability, contribution claims will be resolved pursuant to Federal common law." S. Rep. No. 99-11, at 45 (1985); H.R. Rep. No. 99-253(I), at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. at 2862; H.R. Rep. No. 99-253(III), at 18-19 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3038, 3042.    Congress' intent that the courts play a central role in defining contribution under CERCLA distinguishes this case from <u>Northwest Airlines</u> and <u>Texas Industries</u>, in which the Court declined to imply contribution rights under federal civil rights and antitrust statutes.    <u>See</u> <u>Northwest Airlines</u>, 451 U.S. at 97; <u>Texas Indus., Inc. v. Radclif Materials, Inc.</u>, 451 U.S. 603, 639-40 (1981). Unlike CERCLA and SARA, the history of the statutes at issue in those cases gave no indication that Congress had considered the question of contribution or that Congress expected the courts to fill recognized gaps in the statutory liability scheme.

There is no evidence to suggest, or reason to suppose, that by enacting Section 113(f)(1), Congress intended to cut back the contribution rights federal courts had recognized under CERCLA.    Instead, reading the final sentence of CERCLA Section 113(f)(1) to preserve the implied contribution right previously recognized and enforced by courts irrespective of the existence of a civil action under Section 106 or 107 would comport with the "normal rule of statutory construction . . . that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."    <u>Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.</u>, 474 U.S. 494, 501 (1986).    Because the last sentence of Section 113(f)(1) expressly preserves the right to contribution in the absence of a civil action under Section 106 or 107, the first sentence of that section cannot evince a specific congressional intent to completely displace the judicially recognized cause of action in these circumstances.

4.    **The underlying purpose and structure of CERCLA support the implication of a private right to contribution.**

Implication of a private right to contribution from Section 107(a)(4)(B) is consistent with the underlying, essential purposes of CERCLA: to encourage the prompt cleanup of hazardous waste disposal sites and to ensure that the parties actually responsible for the contamination pay the costs of remediation. See 126 Cong. Rec. 31,964 (1980) (statement of Rep. Florio); H.R. Rep. No. 99-253(III), at 15 (1985), *reprinted in* 1986 U.S.C.C.A.N. at 3038. To accomplish the first of these purposes, Congress created the Superfund and sought to encourage voluntary cleanup action, so that cleanup of hazardous waste sites would be expedited and would not rely entirely on enforcement actions and federal funding.

Recognizing that the government lacked the resources to perform the necessary cleanups by itself, Congress therefore sought to encourage PRPs to act "by allowing private parties who voluntarily cleaned up hazardous-waste sites to recover a proportionate amount of the costs of cleanup from the other [PRPs]." Pennsylvania v. Union Gas Co., 491 U.S. 1, 21-22 (1989) (plurality opinion of Brennan, J.), *overruled on other grounds,* Seminole Tribe v. Florida, 517 U.S. 44 (1996); see also Key Tronic, 511 U.S. at 819 & n.13 ("CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others"). To further Congress' second purpose, that of sharing cleanup costs among responsible parties in proportion to their responsibility, courts implied a right of contribution from Section 107(a)(4)(B).

Implication of a contribution right in Section 107(a)(4)(B) is also consistent with the structure of CERCLA. First, to ensure that response costs further the goal of effective cleanup of hazardous substances, recovery on an implied right based on Section 107(a)(4)(B) is predicated on a plaintiff having performed a cleanup and incurring "necessary" response costs that meet a higher

standard than the government must show to recover its costs.  42 U.S.C. § 9607(a)(4)(B); *compare*

42 U.S.C. § 9607(a)(4)(A) (government may recover "all" costs "not inconsistent with the [NCP]")

*with* § 9607(a)(4)(B) (private party may recover "necessary" costs "consistent with the [NCP]").

Second, implication of a private right to contribution in Section 107(a)(4)(B) will not

interfere with the SARA statutory structure that encourages settlements.  In particular, Section

113(f)(2) provides that a person who has resolved its liability to the United States or a state, is "not

liable for claims for contribution regarding matters addressed in the settlement."  42 U.S.C. §

9613(f)(2).  This provision encourages settlements by reducing the exposure of settling parties to

other parties' suits for contribution, and by threatening recalcitrant, non-settling parties with having

to pay a disproportionate share of the overall cleanup costs.  Section 113(f)(2) is not limited by its

terms to barring contribution claims under Sections 113(f)(1) and 113(f)(3)(B), but applies to bar all

contribution claims, including those implied from Section 107(a)(4)(B) – and thus there is no

possibility of a plaintiff making an "end run" around a settlement by seeking to bring a claim for

contribution based on the implied cause of action in Section 107(a)(4)(B).  CERCLA's settlement

structure, and the attendant contribution protection, also suggest that the type of claim Engelhard

asserts here, based on Section 107(a)(4)(B), should be termed a "contribution" claim for the purpose

of conforming to the structure of CERCLA.

Third, a right of contribution implied from Section 107(a)(4)(B) meshes smoothly

with the statute of limitations provisions in Section 113(g).  The majority in Cooper gave weight to

the fact that Section 113(g)(3), providing statutes of limitations for contribution actions, appears to

be aligned with Section 113(f)(1), provided the latter provision is read as limiting contribution

claims to circumstances where there is a prior or pending Section 106 or 107 civil action or

settlement pursuant to Section 113(f)(3)(B).  See Cooper, 125 S.Ct. at 584.  In fact, however, the

alignment between those sections is imperfect. For example, Section 113(g)(3) provides no statute of limitations for contribution actions brought "during" a Section 106 or 107 civil action, or following Section 113(f)(3)(B) settlements with states. In those instances, as in the case of contribution claims implied from Section 107(a)(4)(B), the courts will have to look elsewhere to find an applicable statute of limitations. But since all claims for contribution based on Section 107(a)(4)(B) are claims for the recovery of an equitable share of response costs the contribution plaintiff has incurred, the plain terms of Section 113(g)(2) provide a statute of limitations applicable to an "action for recovery of the costs referred to in section 9607." 42 U.S.C. § 9613(g)(2).

Thus, implication of a contribution action from Section 107(a)(4)(B) does not create a gap in the statute of limitations provided in Section 113(g); no "borrowing" of a statute of limitations is needed because the statute includes a statute of limitations that is literally applicable by its plain language. The Section 113(g)(2) limitations periods are also applicable, by their plain text, to Section 113(f)(1) and 113(f)(3)(B) claims not covered by the statutes of limitations in Section 113(g)(3). Prior to <u>Cooper</u>, courts faced with identifying the statute of limitations applicable to contribution actions not brought during or following a Section 106 or 107 civil action, have, in fact, applied the statutes of limitations in Section 113(g)(2). <u>See, e.g.</u>, <u>Sun Co., Inc. v. Browning-Ferris, Inc.</u>, 124 F.3d 1187 (10th Cir. 1997).

**5.    Congress' intent that the United States be treated as any other liable party when the United States is itself a PRP supports the implication of a right to contribution from Section 107(a)(4)(B).**

Implication of a contribution right is also consistent with Section 120(a) of CERCLA, which subjects the United States to CERCLA liability "in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under [Section 107]." 42 U.S.C. § 9620(a); <u>see also</u> <u>FMC Corp. v. United States Dep't of</u>

Commerce, 29 F.3d 833, 840-41 (3d Cir. 1994) (holding that the United States, when it is a liable party under CERCLA, "should be held responsible for cleanup costs, just as any private business would be").  This "'unequivoca[l] express[ion]' of the Federal Government's waiver of its own sovereign immunity," Union Gas, 491 U.S. at 10 (citation omitted) (alteration in original), makes clear that the United States, as a PRP, is to be treated no differently than any other PRP.

However, under CERCLA, the United States is frequently in the position of being, in effect, two "persons" at once: one arm of the government (usually EPA) with the authority to undertake or order cleanups under CERCLA or another statutory program, while another arm of the government – often one of the defense or military services – is a PRP at a facility where necessary, NCP-compliant response costs have been incurred.  EPA has long been prohibited from proceeding under CERCLA against other federal agencies.  See Exec. Order 12,580 § 4(e), 52 Fed. Reg. 2923 (Jan. 23, 1987).  Consequently, an action against the government under CERCLA will almost invariably be in contribution.  For the United States truly to be subject to liability "in the same manner and to the same extent" as private parties, a broad contribution right, equivalent in scope to the cost recovery right in Section 107(a)(4)(A), must be available to private parties under CERCLA who have incurred response costs for which the United States is partly liable.

The United States takes the position that there is no right to contribution under CERCLA, based on Section 107(a)(4)(B), in the absence of a prior civil action under Section 106 or 107.  However, such an interpretation would as a practical matter destroy Congress' vision by cutting off the government's liability for contamination it caused at hundreds of facilities where remediation has been completed or is still ongoing.  Because the United States is the enforcer of CERCLA and other environmental statutes, but also a PRP at many hazardous substance disposal sites, the United States has many options for exercising its enforcement discretion to avoid governmental liability under CERCLA if its interpretation of Section 107(a)(4)(B) is adopted.

First, the government could simply choose to avoid any enforcement at such sites. Second, EPA could issue a Section 106 order to a PRP, requiring it to undertake a cleanup. Cooper teaches that contribution is not available under Section 113(f)(1) unless the PRP does not comply with the order and a Section 106 civil action is brought to enforce it. Third, the government could require RCRA corrective action at a facility in lieu of a CERCLA listing, and thereby impose the entire cost of response on the current owner or operator of the facility. EPA has deliberately made it a policy to move remediation out from under CERCLA authority and into other federal and state programs. See, e.g., September 24, 1996 EPA guidance document, *Coordination between RCRA Corrective Action and Closure and CERCLA Site Activities,* stating that "it has long been EPA's policy to defer facilities that may be eligible for inclusion on the [NPL under CERCLA] to the RCRA program. . . .") *at http://www.epa.gov/swerffrr/documents/924memo.htm.* Thus, the vast majority of hazardous waste sites across the nation are now being cleaned up under non-CERCLA authority. Fourth, the government could bring an action for injunctive relief under RCRA Section 7003, 42 U.S.C. § 6973, seeking to compel cleanup and impose fines. So long as it avoids a civil action under CERCLA Section 106 or 107, the United States could rest assured that, unlike other PRPs, it would not have to pay the costs of remediating contamination for which it was responsible.

Any interpretation of CERCLA that permits a contribution action only during or following a CERCLA civil action would in these ways permit the United States effectively to render meaningless Congress' broad waiver of sovereign immunity. The various means by which the United States could limit a responsible party's recourse under CERCLA against it would have the pernicious effects of distorting the government's enforcement priorities and allowing the United States to evade liability for its own role in contaminating property. Congress plainly never intended that result. On the other hand, implication of a private contribution right under Section 107(a)(4)(B)

would protect the integrity of Section 120(a) and hold the United States liable to the same extent as any private party.  Implication of that right is not only consistent with, but is required by, the structure of CERCLA.

Each and every one of the factors identified by the Supreme Court in <u>Northwest Airlines</u> thus strongly supports the implication of a private right of action for contribution under Section 107(a)(4)(B) of CERCLA.  The "essential predicate" to implication of a private right of contribution is present, because Congress intended such a right.  <u>Northwest Airlines</u>, 451 U.S. at 94. The savings clause in the last sentence of Section 113(f)(1) evinces the clear Congressional intent that the implied right of contribution in the absence of a prior civil action under CERCLA not be diminished by the adoption of an express statutory right in other circumstances.  Accordingly, the text of Section 107(a)(4)(B), the legislative history of CERCLA and SARA, their structure and purpose, all compel the conclusion that a private right of contribution enabling PRPs, such as Engelhard, to sue "covered persons," such as the United States, must be implied.

**6.     Precedents do not preclude the implication of a right to contribution from Section 107(a)(4)(B).**

On September 9, 2005, the United States Court of Appeals for the Second Circuit became the first appellate court to address CERCLA rights of contribution post-<u>Cooper</u>.  In <u>Consolidated Edison Co. of New York v. UGI Utilities</u>, 2005 U.S. App. Lexis 19477 (2d Cir. Sept. 9, 2005), the Second Circuit determined that the plaintiff could pursue a Section 107(a) claim because, in the court's view, the plaintiff's "costs to clean up the site … are 'costs of response' within the meaning of that section."  The Second Circuit explained that the <u>Cooper</u> opinion "impels us to conclude that it no longer makes sense to view section 113(f)(1) as the means by which the section 107(a) cost recovery remedy is effected by parties that would themselves be liable if sued under section 107(a)."  <u>Id.</u> at 22-23.  As a result, the court reasoned, "[e]ach of those sections …

embodies a mechanism for cost recovery available to persons in different procedural circumstances." Id. at 23.  Describing Section 107(a), the court stated that "parties are liable for the government's remedial and removal costs and for any other necessary costs of response incurred by any other person consistent with the [NCP]."  The only questions the Second Circuit considered determinative was whether Con Ed is a "person" and whether it has incurred "costs of response." Id. at 23 (citations omitted).

Furthermore, the Second Circuit did not distinguish between "innocent" parties and "parties that, if sued, would be held liable under section 107(a)" because that section "makes its cost recovery remedy available … to any person that has incurred necessary costs of response, and nowhere does [it] require that the party seeking necessary costs of response be innocent of wrongdoing." Id. at 23.  The fact that Engelhard is the owner of the Plainville facility is simply immaterial to its ability to bring an action under Section 107(a).

The Second Circuit sought to distinguish its decision in Consolidated Edison from its previous decision in Bedford Affiliates v. Sills, 156 F.3d 416 (2nd Cir. 1998).  In Bedford Affiliates, the plaintiff had entered into two consent orders with a state agency to conduct the cleanup and remedial action.  The Court in Consolidated Edison concluded, without citing statutory authority, that cleanup costs incurred under agreements with a state agency are not costs recoverable under CERCLA.  In Consolidated Edison, the plaintiff's agreement with the State of New York was characterized as a "Voluntary Cleanup Agreement." Consolidated Edison at 3.

Decisions from District Courts post-Cooper have split on the issue of a right of contribution under Section 107.  In Mercury Mall Assocs. Inc. v. Nick's Market Inc., 368 F.Supp.2d 513 (E.D. Va. 2005), the district court acknowledged that "the combined result of the Supreme Court's opinion in [Cooper] and the Fourth Circuit's holding barring an implied right of contribution under Section 107(a) is quixotic" but determined that it lacked the authority to find an

implied right of action under Section 107(a) until the Fourth Circuit or the Supreme Court unequivocally holds one to exist. Other district courts have found a right of contribution under Section 107. See, e.g., Vine Street LLC v. Keeling, 2005 U.S. Dist Lexis 4653 (E.D. Tex. Mar. 24, 2005); , et al, 365 F.Supp.2d 913 N.D. Ill. 2005); Metropolitan Water Reclamation Distr. Of Greater Chicago v. Lake River Corp., et al., 365 F.Supp.2d 913 (N.D. III 2005).

The First Circuit in United Technologies acknowledged that a CERCLA contribution right may exist in the absence of a prior civil action under Section 106 or 107, and unhesitatingly located that right in Section 107. Now that the Supreme Court has clarified that this right does not lie expressly in Section 113(f)(1), and has overturned the assumptions on which the United Technologies court based its reasoning, it is necessary for this Court to reassess the First Circuit's broad language regarding the interrelationship of Sections 107 and 113 in light of the supervening controlling precedent represented by the Cooper decision. See also In re Hemingway Transp., Inc., 993 F.2d 915, 931 (1st Cir. 1993).

It is also proper for this Court to revisit the "cost recovery" and "contribution" framework described in United Technologies, a case which arose under circumstances distinct from those in the instant matter and which does not preclude the implication of a right of contribution from Section 107(a)(4)(B). Unlike the plaintiff in this case, the appellants in United Technologies were already the subject of a civil action under Section 107 brought by the United States, and hence in a position to bring a claim for contribution under the express provision of Section 113(f)(1). See United Technologies, 33 F.3d at 97. The First Circuit, reflecting the settled understanding at that time, described the Section 107 "cost recovery" and Section 113 "contribution" actions as the two alternatives available to CERCLA plaintiffs, and held that a party which was itself a PRP could not seek "cost recovery" under Section 107 to hold another PRP jointly and severally liable for its

response costs.  See id. at 99-101.

Engelhard does not urge that a PRP should have a choice to proceed under Section 107 or Section 113.  Rather, in light of the Supreme Court's clarification that it was wrong to assume that a party could bring a Section 113 contribution suit in the absence of a prior CERCLA civil action – an assumption which underlies the "Section 107 cost recovery" versus "Section 113 contribution" dichotomy – Engelhard here argues that a PRP has the right to seek contribution based on Section 107(a)(4)(B) in the absence of a prior civil action under Section 106 or 107.

### D.    Engelhard has a federal common law right to sue the United States for contribution under CERCLA.

A right to contribution under CERCLA also arises as a matter of federal common law.  Federal common law arises in two narrow circumstances: when a federal rule of decision is necessary to protect uniquely federal interests, and when Congress has vested jurisdiction in the federal courts and empowered them to create governing rules of law.  See Texas Indus., Inc., 451 U.S. at 640.  In the case of CERCLA, both of these circumstances support a common law right of contribution.

In the first place, CERCLA implicates uniquely federal interests.  A uniquely federal interest includes one concerned with the rights and obligations of the United States.  See id. at 641. CERCLA is concerned with the rights and obligations of the United States in several respects. The most important of these is the comprehensive waiver of sovereign immunity provided in Section 120(a).  If parties which incur necessary, NCP-compliant response costs have no means of recovering the United States' equitable share at those facilities where the United States itself is a PRP, the broad, unambiguous waiver of the government's sovereign immunity under CERCLA would be rendered meaningless.  A separate provision of CERCLA requires the United States to clean up its own federal facilities.  42 U.S.C. § 9620(a)(2).  These rights and obligations of the

United States are clear in the statute, implicating a unique federal interest justifying the establishment of a federal common law of contribution.

Second, it is clear that Congress considered the development of common law to be central to the federal courts' implementation of the CERCLA liability provisions. Congress not only vested exclusive jurisdiction in the federal courts to adjudicate all disputes arising under CERCLA, 42 U.S.C. § 9613(b), but also explicitly authorized the federal courts to create governing rules of law. See, e.g., 42 U.S.C. § 9613(f)(1) ("Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure *and shall be governed by Federal law.*") (emphasis added). Since contribution claims under Section 113(f)(1) "shall be governed by Federal law," it would be consistent that claims under Section 107(a)(4)(B) would be governed by Federal law as well.

The legislative history of CERCLA makes clear that Congress intended that the liability regime of CERCLA would be shaped by "traditional and evolving principles of common law." 126 Cong. Rec. 31,965 (1980) (Statement by Rep. Florio). In omitting explicit provisions from the early versions of CERCLA that would have mandated both joint and several liability and contribution, Congress specifically left the development of these areas to such "traditional and evolving principles of common law" as the courts might develop. Id.; see USX Corp., 68 F.3d at 824.

Responding to the congressional invitation to create federal common law, the courts imposed joint and several liability in actions under Section 107. See, e.g., Chem-Dyne, 572 F. Supp. at 808. In enacting Section 113 through SARA, Congress acknowledged that the courts had counterbalanced the harshness of that joint and several liability by recognizing a "concomitant right of contribution" that sprang from the very same common law roots. H.R. Rep. No. 99-253(I) at 79,

*reprinted in* 1986 U.S.C.C.A.N. at 2861. And the legislative history of SARA makes clear that, even after Congress adopted the express statutory right to contribution in the first sentence of Section 113(f)(1), Congress intended for the courts to continue to develop common law principles to govern CERCLA contribution. See, e.g., S. Rep. No. 99-11, at 45 (1985); H.R. Rep. No. 99-253(I), at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. at 2862 ("[a]s with joint and several liability, contribution claims will be resolved pursuant to Federal common law."); H.R. Rep. No. 99-253(III), at 18-19, *reprinted in* 1986 U.S.C.C.A.N. at 3041.

      CERCLA's undeniable implication of unique obligations of the federal government, and the evident Congressional intent that courts develop federal common law principles to govern contribution claims under the statute, distinguish CERCLA from the laws at issue in Texas Industries and Northwest Airlines. In Texas Industries, the Court found that the plaintiffs were not members of a class intended to be benefited by the statute, no unique federal interests were implicated, and there was no evidence of Congressional intent to authorize federal courts to create substantive law under the anti-trust laws at issue. Texas Indus., 451 U.S. at 644. CERCLA is also distinguishable from the Equal Pay Act and Title VII analyzed in Northwest Airlines because neither of those statutes contained an express right to contribution, their legislative history was silent on whether there was a private right of contribution, and their underlying purposes and structures did not support the implication of a private remedy of contribution. Northwest Airlines, 451 U.S. at 94. In other words, the "essential predicate" for developing a common law right — Congress' intent to create such a right — was missing in both Northwest Airlines and Texas Industries.

      By contrast, CERCLA is a classic case for the development of a federal common law of contribution. CERCLA implicates unique federal interests, affecting the rights and, more significantly, the obligations and liabilities of the United States. In enacting CERCLA, Congress

not only conferred exclusive jurisdiction on the federal courts, but also explicitly intended that the federal courts would formulate principles of federal common law to establish the standards of liability under the statute – both before, and after, Congress included an express contribution provision in the statute. Finally, Congress' intent to create a PRP's right to contribution from another PRP is clear from the statutory language, the statutory structure and the legislative history. These factors combine to justify a common law right of contribution under CERCLA in the absence of a prior civil action under Section 106 or 107.

II.    **Engelhard Has A Cause of Action Against the United States Under RCRA to Obtain All Injunctive Relief Deemed Appropriate By the Court.**

Section 7002 of RCRA authorizes private citizens to bring suit against "any person, including the United States" that has "contributed" to the "past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which <u>may</u> present an imminent and substantial endangerment to health or the environment …"  42 U.S.C. § 6972 (a)(1)(B) (emphasis added).  <u>Lincoln Properties, Ltd. v. Higgins</u>, 23 Envtl. L. Rep. 20655, 20671 (E.D. Cal. 1993) (plaintiff need not show emergency, only that harm was threatened).  The waiver of sovereign immunity in Section 7002 is clear and unambiguous.  The term "contributed" is not defined under RCRA, but has been held to include parties, such as the United States, that enter into contractual relationships and toll manufacturing contracts of the type entered into between Engelhard and the United States Mint as well as the Atomic Energy Commission.  <u>See</u> <u>United States v. Aceto Agricultural Chemicals Corp.</u>, 872 F.2d 1373, 1382-1384 (8th Cir. 1989).  In <u>Aceto</u>, the toll manufacturer, Aidex, received hazardous materials from its customers in order to synthesize specialized technical grade pesticides.  The court concluded that Aidex's customers were potentially liable under Section 7002 for environmental contamination at the toll manufacturer's facility.  The

court stated:

> We find the complaint alleges sufficient facts from which a trier of fact could infer defendants "contributed to" Aidex's disposal of wastes. Defendants contracted with Aidex to formulate their technical grade pesticides; they retained ownership of the pesticide throughout the process; and inherent in the process is the generation of wastes. Defendants supplied the specifications for their commercial grade products to Aidex; it may reasonably be inferred that they had authority to control the way in which the pesticides were formulated, as well as any waste disposal.

Id. at 1383.  The fact pattern described in <u>Aceto</u> is identical in all material respects to the fact pattern established in toll manufacturing contracts between the United States and Engelhard.

The United States argues that Engelhard's cause of action under RCRA is prohibited under Section 7002(b)(2)(B) because the EPA has entered into a Consent Order with Engelhard under Section 3008 of RCRA.  However, there is no such prohibition to a RCRA citizen suit in the prohibitions found in Section 7002(b)(2)(B).

The United States further argues that Engelhard's cause of action under RCRA is prohibited because monetary penalties are not permitted.  Engelhard makes no such claim.  The district court with jurisdiction over a citizen suit under Section 7002 is permitted "to order such person [the defendant under a Section 7002 action] to take such other action as may be necessary…"  42 U.S.C. § 6972(a).  The injunctive relief available under Section 7002 must be precise and self-contained, allowing for a defendant to conduct on-site remedial action.  <u>See</u> <u>PMC</u>, <u>Inc. v. Sherwin-Williams Co.</u>, 151 F.3d 610, 618-620 (7th Cir. 1998), *cert. den.*, 525 U.S. 1104 (1998) (for example, a plaintiff may obtain an injunction requiring cleanup under Section 7002(a)(1)(B)).  As stated in its Complaint, Engelhard seeks only that equitable relief permitted under Section 7002, which specifically allows this Court to take any equitable "action as may be

necessary." (P-83-87.) The United States' argument can be further disposed of by recognizing that a challenge to the remedy available to Engelhard neither detracts from this Court's ability to fashion any appropriate injunctive relief permitted under Section 7002 nor obviates the Court's subject matter jurisdiction. 42 U.S.C. § 6972(a).

Under Section 7002(b)(2)(B), a RCRA citizen suit is prohibited if the United States has previously initiated suit under various provisions of CERCLA or under Section 7003 of RCRA. 42 U.S.C. § 6973. None of the prohibitions to a RCRA citizen suit specified in Section 7002(b)(2)(B) are found at the Plainville facility or in the facts presented in Engelhard's Complaint. Engelhard has not been subject to suit under CERCLA or Section 7003 of RCRA. The only evidence that the United States provides in support of its Motion for Partial Dismissal is attached as an Exhibit to its Motion. The United States' Exhibit is a Consent Order, dated August 9, 1993, entered into between Engelhard and the U.S. Environmental Protection Agency. The Consent Order states that the United States has authority to enter into the Consent Order under Section 3008(h) of RCRA. 42 U.S.C. § 6928(h). Neither a Consent Order under Section 3008(h) of RCRA nor any other fact presented in Engelhard's Complaint falls within the prohibitions to a RCRA citizen suit listed under Section 7002(b)(2)(B).

### III.    Engelhard Has A Cause of Action Against the United States For Declaratory Relief Under the Declaratory Judgment Act and Section 113(g)(2) of CERCLA.

The Declaratory Judgment Act states that "in a case of actual controversy within its jurisdiction, any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The "actual controversy" must be "definite and concrete, touching the legal relations of the parties having

adverse interests." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-241 (1937). See also Lady Deborah, Inc. v. Ware, 855 F.Supp. 871, 873 (E.D. Va. 1994) ("Before issuing a declaratory judgment, a district court must find that there is a case or controversy and then must find that declaratory relief is appropriate.").

In the instant litigation, the United States cannot deny that there is an "actual controversy." The United States' Motion for Partial Dismissal leaves unchallenged Engelhard's fourth cause of action, a claim of contribution against the United States under Section 113(f)(3)(B) of CERCLA. 42 U.S.C. § 9613(f)(3)(B). Since the United States has left unchallenged the fourth cause of action, Engelhard can seek relief under Section 2201(a) of the Declaratory Judgment Act to obtain any declaratory relief deemed appropriate by this Court. Moreover, Engelhard's sixth cause of action requests declaratory relief under both the Declaratory Judgment Act as well as Section 113(g)(2) of CERCLA. 42 U.S.C. 9613(g)(2). Section 113(g)(2) provides a separate cause of action whereby "[i]n any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on subsequent action or actions to recover further response costs or damages." Id. Declaratory relief is well pled in the Complaint and will become a necessary remedy when Engelhard prevails in its causes of action.

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(D), Engelhard requests oral argument before the Court to present its opposition to the United States' Motion for Partial Dismissal.

## CONCLUSION

Because Engelhard has satisfied the requirements for stating a claim for contribution under CERCLA, injunctive relief under RCRA and declaratory relief under the Declaratory Judgment Act, the Court should DENY the United States' Motion for Partial Dismissal.

Dated: November 17, 2005

BURNS & LEVINSON LLP

**David P. Rosenblatt, Esquire (BBO# 428570)**
**Paul R. Mastrocola, Esquire (BBO# 630664)**
**Burns & Levinson LLP**
**125 Summer Street**
**Boston, MA 02110**
**Telephone:  (617) 345-3000**
**Fax:  (617) 345-3299**
**drosenblatt@burnslev.com**
**pmastrocola@burnslev.com**

By:  /s/ Paul R. Mastrocola

RONALD L. KUIS, ESQUIRE

**Ronald L. Kuis, Esquire**
**12 Scenery Road**
**Pittsburgh, PA 15221**
**Telephone:  (412) 731-7246**
**Fax:  (412) 731-3970**
**rlkuis@aol.com**

By:  /s/ Ronald L. Kuis

Attorneys for Plaintiff,
Engelhard Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____ )
                                 )
**ENGELHARD CORPORATION,**       )
                                 )
          **Plaintiff,**         )
                                 )          **Civil Action No. 05-11241-JLT**
          **v.**                 )          (*Electronic filing*)
                                 )
**UNITED STATES OF AMERICA,**    )
**et al.,**                      )
                                 )
          **Defendants.**        )
_____ )

### (PROPOSED) ORDER

Upon consideration of the United States' Motion for Partial Dismissal and Engelhard Corporation's Memorandum in Opposition, the Court being fully advised of the issues raised, it is, this ____ day of _____, 2005, hereby ORDERED that the United States' Motion is DENIED.



Dated:_____          _____
                                       The Honorable Joseph L. Tauro
                                       United States District Judge

J:\Docs\27429\00000\00970613.DOC