IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENGELHARD CORPORATION,           )<br>                                                          )<br>            Plaintiff,                        )<br>                                                          )<br>      v.                                              )<br>                                                          )<br> UNITED STATES OF AMERICA, et al.,  )<br>                                                          )<br>            Defendants.                    )<br>                                                          )  | **Civil Action No. 05-11241-JLT**<br><br>(*Electronic filing*) |

**UNITED STATES' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney
        District of Massachusetts

        ANTON P. GIEDT
        Assistant U.S. Attorney
        1 Courthouse Way
        Boston, MA  02210
        Tel:  (617) 748-3309
        Fax: (617) 748-3967
        anton.giedt@usdoj.gov

        SUE ELLEN WOOLDRIDGE
        Assistant Attorney General
        United States Department of Justice
        Environment & Natural Resources Division

        STEPHEN E. CROWLEY
        United States Department of Justice
        Environmental Defense Section
        P.O. Box 23986
        Washington, D.C.  20026-3986
        Tel: (202) 514-0165
        Fax: (202) 514-8865

December 1, 2005        Stephen.Crowley@usdoj.gov

INTRODUCTION

This Court should grant the United States' Motion For Partial Dismissal in its entirety, for the following principal reasons:

*First*, Engelhard's reading of CERCLA's plain language ignores the cardinal rule that a statute is to be read as a whole. When Sections 107(a) and 113(f) are appropriately read together, they make clear that potentially responsible parties — such as Engelhard in this case — are not entitled to recover their response costs solely under Section 107(a).

*Second*, contrary to Engelhard's assertion, the First Circuit's decision in United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96 (1st Cir. 1994), did not hold that Section 107(a)(4)(B) of CERCLA contains an express or unqualified right to seek contribution. Rather, the First Circuit recognized that Congress created an express right to contribution in Section 113(f) alone, and that allowing PRPs to seek recovery of their response costs under Section 107(a)(4)(B) — much as Engelhard seeks to do here — would frustrate CERCLA's settlement scheme.

*Third*, the waiver of sovereign immunity in Section 120(a)(1) of CERCLA, 42 U.S.C. § 9620(a)(1), provides no basis to conclude that Section 107(a) contains a heretofore unrecognized right for private PRPs to recover response costs. It is nonsensical to assert that in order to ensure the availability of a freestanding action under Section 107 against a federal PRP, courts must recognize the existence of such an action against federal <u>and</u> non-federal PRPs alike.

*Fourth*, Engelhard may not recover response costs under RCRA because there is no clear and unequivocal waiver of sovereign immunity within RCRA that permits such claims against the United States.

- 1 -

ARGUMENT

I.   CERCLA'S PLAIN LANGUAGE LIMITS PRIVATE PRPs TO CONTRIBUTION ACTIONS IN ACCORDANCE WITH REQUIREMENTS AND PROCEDURES SET FORTH IN SECTION 113(f).

Engelhard argues (Br. 9-14) that its right to seek contribution arises from the plain language of Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B).  However, while Section 107(a)(4)(B) describes liable parties, and lists the elements of a claim for response costs, there is no express mention of a private PRP's right to recover costs from another PRP.  See In re Reading Co., 115 F.3d 1111, 1118 (3d Cir. 1997) (recognizing that Section 107(a)(4)(B) "lack[s] any express mechanism" by which one PRP could recoup response costs from another).  In sum, Section 107(a)(4)(B) does not by itself expressly confer a right on PRPs to bring a claim for contribution.[1]

Moreover, to read Section 107(a)(4)(B) in isolation, as Engelhard suggests, ignores entirely Section 113(f) of CERCLA, thereby violating the basic rule that a statute should be read as a whole.  See King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (congressional enactments should be construed in light of "the cardinal rule that a statute is to be read as a whole"); United Techs., 33 F.3d at 101.  Section 107(a)(4)(B) must be read in conjunction with Section 113(f).  See New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1122 (3d Cir.

---

[1] As we indicated in our opening brief (U.S. Br. 11-12), Engelhard's first cause of action seeks recovery of costs on a joint and several liability basis.  We argued that Section 107 of CERCLA does not support such a claim by a PRP such as Engelhard.  See U.S. Br. 14-15.  Engelhard now concedes that this claim is improper and unavailable under Section 107 of CERCLA.  See Br. 12 ("Settled precedent and common sense dictate that a PRP which has some liability for a response cost still cannot hold another party jointly and severally liable for 100% of the response cost the PRP has incurred . . . ."); id. at 14.  Accordingly, Engelhard's first cause of action (Compl. ¶¶ 62-71) must be dismissed for failure to state a claim.

1997). Under that approach, Section 107(a)(4)(B) sets forth the elements of liability, while Section 113(f)(1) sets forth an express right to seek contribution from "any other person who is liable or potentially liable under [Section 107(a)] . . . ." 42 U.S.C. § 9613(f)(1). Indeed, by "permitting a party to seek contribution from 'any other' party potentially liable under section 107," Section 113(f)(1)'s express language confirms that "a potentially responsible person . . . cannot obtain section 107 relief." New Castle, 111 F.3d at 1122 (emphasis added).

This conclusion is not undercut by the decisions in Key Tronic Corp. v. United States, 511 U.S. 809 (1994), or United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96 (1st Cir. 1994). Engelhard relies (Br. 10) on Justice Ginsberg's dissenting opinion in Aviall to argue that Key Tronic held that PRPs may seek response costs by suing under Section 107 alone. That argument is hardly persuasive, since according to the majority opinion in Aviall, the question of whether Section 107(a)(4)(B) alone gives PRPs a right to recover response costs was not even before the Court in Key Tronic. Aviall, 125 S. Ct. at 585. The Aviall majority also stated that the question of a stand-alone Section 107 contribution action should not be decided "on the basis of dictum in Key Tronic." Id.

Engelhard is also mistaken in arguing (Br. 10-11) that the First Circuit's decision in United Technologies recognized that PRPs may seek contribution under Section 107 of CERCLA. Engelhard relies upon the following passage in United Technologies: "Under the reading that we adopt, . . . the unqualified language 'any other necessary costs' remains as Congress wrote it, that is, without qualification." Br. 10 (quoting 33 F.3d at 102). By its express terms, the statement only recognizes that the phrase "any other necessary costs" is "without qualification." The First Circuit did not state that any language in Section 107(a) gives PRPs an

- 3 -

express or unqualified right to seek contribution.[2/]

Indeed, Engelhard's reliance on United Technologies should be rejected because it ignores the context in which that decision was made. The case involved a dispute as to which statute of limitations provision applied to a claim seeking a reimbursement of response costs. See 33 F.3d at 97-98. The plaintiffs, a group of PRPs whose claims were filed roughly five and one-half years after they accrued, argued that the six-year statute of limitations found in Section 113(g)(2), 42 U.S.C. § 9613(g)(2), pertaining to actions for "recovery of the costs referred to in section [107]," governed. Conversely, the defendants maintained that the three-year limitations provision, Section 113(g)(3), 42 U.S.C. § 9613(g)(3), pertaining to "action[s] for contribution," controlled. Thus, the question before the court was whether the action was "an action for cost recovery or one for contribution[;]" the action would be timely if the former, and time-barred if the latter. 33 F.3d at 98. Analyzing the statutory language and the legislative history of Section 113, the First Circuit concluded that "contribution" as used in Section 113 denoted a claim "by and between jointly and severally liable parties for an appropriate payment one of them has been compelled to make." Id. at 99-101. Since plaintiffs were PRPs, their claim "clearly qualifie[d] as an action for contribution under section 9613(f)(1)," and therefore subject to (and barred by) the three-year limitations provision. Id. at 101, 103.

---

[2/] Immediately following the above-quoted sentence, the First Circuit's opinion includes a footnote, which states: "As discussed above, see supra p. 100, 42 U.S.C. § 9613(f)(1) explicitly confirms the cause of action for contribution that is implicit in the language of § 9607(a)." United Techs., 33 F.3d at 102 n.10. This dictum simply echoes earlier dictum in the opinion that we identified in our opening brief, see U.S. Br. at 22 (quoting 33 F.3d at 99 n.8). We reiterate here that this dicta is itself premised on dicta found in Key Tronic, and should be disregarded for reasons given by the Aviall majority. Furthermore, as we explain in our opening brief (U.S. Br. 17-23, 25-26) and here, an implied right to contribution is not supported by the language of the statute itself, its legislative history, or the underlying structure of the statutory scheme.

As a fall-back position, however, the plaintiffs argued that Section 107(a)(4)(B)'s "broad, unqualified language to the effect that responsible parties shall be liable to 'any other person'" provided them with "an alternative avenue for the maintenance of their suit." Id. at 102.  To give some effect to the shorter statute of limitations provision, however, plaintiffs reasoned that costs incurred by a PRP indirectly, i.e., through payment to a governmental agency, would be covered by the terms of Section 113(f) (and the shorter limitations provision), while costs incurred directly would be covered by Section 107 (and the longer limitations provision). Id.

The First Circuit rejected plaintiffs' fall-back argument.  See 33 F.3d at 102.  The court found no qualification on the types of costs that were encompassed by the plain language of Section 107. Id. ("This unqualifiedly broad language comfortably accommodates all response costs incurred by a private party, not just [direct] costs.").  The court also found that Section 113 "appears to reject any distinction for the purposes of contribution between [direct] costs and reimbursed costs." 33 F.3d at 102.  Given this background, Engelhard is wrong to suggest that the United Technologies decision recognized an unqualified or unreserved right to contribution arising solely under Section 107(a).[3]

II. PRIVATE PRPs DO NOT HAVE AN IMPLIED RIGHT TO A SECTION 107(a)(4)(B) STAND- ALONE CLAIM FOR THE RECOVERY OF RESPONSE COSTS.

Engelhard contends (Br. 15-23) that Section 107(a)(4)(B) contains an implied private

---

[3] For the same reason, Engelhard is mistaken in arguing (Br. 11) that United Technologies and the numerous other circuit court decisions cited in the United States' opening brief (U.S. Br. 4 n.5) were "undercut" by the Supreme Court's recent decision in Aviall.  The plaintiffs in United Technologies were "by their own admission liable parties," and had entered into a consent decree pursuant to CERCLA with the State of Maine and the United States.  33 F.3d 97, 101. United Technologies thus did not turn upon an assumption that a Section 113(f) contribution claim could be initiated where the preconditions of Section 113(f) had not be satisfied.

right that allows it to bring a claim to recover response costs from another PRP at any time. This argument is without support in the statutory text, the case law, and legislative history.

In Aviall, 125 S. Ct. at 586, the Supreme Court called attention to the fact that it had visited the subject of implied rights of contribution before, citing Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638-47 (1981), and Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 90-99 (1981). There, the Court declined to find an implied right of contribution, remarking that pre-SARA[4] cases indicating that Section 107 created an implied right of contribution were "debatable" in light of Texas Industries and Northwest Airlines. 125 S. Ct. at 581. Accordingly, the case law does not support an implied right to contribution that exists apart from the conditions set forth in Section 113(f).

Engelhard asserts (Br. 17-19) that Congress added the savings clause to Section 113(f)(1) to make clear that contribution rights that courts had found to exist under Section 107 prior to the passage of SARA were not diminished. However, nothing in the legislative history elucidates congressional intent with respect to the meaning of this savings language.[5] And in any event,

---

[4] "SARA" is the Superfund Amendments and Reauthorization Act of 1986, 100 Stat. 1613.

[5] Engelhard suggests (Br. 17-19) that because Congress added the savings language to Section 113(f)(1) at the same time that Congress provided that contribution actions could be brought "during" Section 106 or 107 actions, this Court should infer that Congress intended to make clear that implied contribution rights that some district courts had found to exist under CERCLA prior to the passage of SARA continued to exist independent of the newly-enacted Section 113(f). In fact, savings language appeared both in versions of the bill that provided that contribution actions could be brought only after judgment or settlement and in versions that provided contribution actions could be brought during Section 106 or 107 civil actions. S. Rep. No. 99-11 at 103. Therefore, the savings language seems unrelated to the question whether contribution claims could be brought during a Section 106 or 107 action. Moreover, a change to proposed legislation that allows contribution actions to be brought "during" a Section 106 or 107 action, instead of only after settlement or judgment, hardly lends support to Engelhard's position that it can bring a contribution action in the absence of a Section 106 or 107 action. Rather, it illustrates that Congress actively considered the circumstances under which contribution actions

Engelhard's reliance on the savings clause of Section 113(f)(1) is misplaced. See U.S. Br. 21-22.

Engelhard maintains (Br. 20) that "there is no evidence to suggest, or reason to suppose, that by enacting Section 113(f)(1), Congress intended to cut back the contribution rights federal courts had recognized under CERCLA." Engelhard thus takes it as a given that Congress understood pre-SARA courts to have interpreted Section 107(a) as allowing contribution in the absence of a Section 106 or 107 civil action, and intended to ratify this form of contribution even though it departs from traditional concepts of contribution. However, although district courts were in basic agreement on the existence of a right to contribution, there was hardly a consensus among those courts as to the source of that authority or the circumstances in which a contribution action could be pursued. See U.S. Br. 17 n.18. The legislative reports refer to only two cases. They note that in United States v. Ward, 1984 WL 15710 (E.D.N.C. May 14, 1984), the court held that when joint and several liability is imposed under Section 106 or 107, a concomitant contribution right exists under CERCLA; they also note that in United States v. South Carolina Recycling & Disposal, Inc., 653 F. Supp. 984 (D.S.C. 1986), the court had recognized a right to contribution without squarely addressing the issue. See S. Rep. No. 99-11 at 45; H.R. Rep. No. 99-253(I) at 79 (1985), 1986 U.S.C.C.A.N. at 2861. Both of these cases were actions filed by the United States to recover response costs under Section 107(a)(4)(A). Moreover, in both cases, the courts had relied on traditional common law principles governing contribution. 653 F. Supp. at 995 n.8; 1984 WL 15710, at *2. As such, the legislative history does not demonstrate that Congress intended contribution to be available absent the pre-conditions set forth in Section

---

could be brought.

113(f).

Finally, Engelhard suggests (Br. 29-32) that statements in the legislative reports providing that "[a]s with joint and several liability, contribution claims will be resolved pursuant to Federal common law," authorize courts to create or imply a federal common law right of contribution that is not subject to the express pre-conditions provided by Section 113(f). To the contrary, read in context, see U.S. Br. 30 n.28, these statements indicate that equitable apportionment principles would be developed by courts on a case-by-case basis in contribution actions. These statements do not evince a legislative intent to create contribution actions in the absence of the preconditions for bringing the contribution action that Congress had expressly provided in Section 113(f).

III. THE WAIVER OF SOVEREIGN IMMUNITY WITH RESPECT TO CLAIMS ARISING UNDER CERCLA DOES NOT SUPPORT THE IMPLICATION OF A CONTRIBUTION RIGHT UNDER SECTION 107 OF CERCLA.

Engelhard argues (Br. 23-26) that the waiver of sovereign immunity in Section 120(a)(1) of CERCLA, 42 U.S.C. § 9620(a)(1), affirmatively supports the implication of a right to recover its costs from the United States pursuant to Section 107(a)(4)(B). Engelhard also theorizes that the United States will refrain from bringing CERCLA Section 107 or 106 actions at sites where there is a federal PRP to avoid triggering a right of contribution against the United States, and that an implied claim for the recovery of costs must therefore be recognized to ensure that the government will be subject to CERCLA liability in the same manner and to the same extent as private parties. Engelhard's reasoning is flawed.

In pertinent part, Section 120(a)(1) provides:

Each department, agency, and instrumentality of the United States . . . shall be subject to, and comply with, this chapter in the same manner and to the same

> extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title.

42 U.S.C. § 9620(a)(1).  As such, this waiver provision provides only that the United States is subject to claims arising under CERCLA to the same extent as private parties.  It does not define or expand the availability of claims arising under Section 107 or any other provision of the statute.  Furthermore, as discussed in the United States' opening brief (U.S. Br. 32), it is well-established that waivers of sovereign immunity are to be narrowly construed, according to their express terms.  These rules counsel against reading Section 120(a)(1) in a broad manner, so as to support the implication of a contribution right under Section 107(a).

Engelhard's argument also turns the proper analysis on its head, insofar as it suggests that in order to ensure the availability of contribution against a federal PRP, an implied contribution right must be recognized against federal <u>and</u> non-federal PRPs alike.  In addition, Engelhard's suggestion that the United States has or will refrain from initiating Section 106 or 107 actions to avoid exposure to contribution claims is entirely without factual support.  The government has not hesitated to bring suit under Section 106 or 107 at sites where there are federal PRPs, and federal PRPs are frequently parties to administrative or judicially approved settlements initiated by the United States.[6]  There is also no evidence whatsoever that in 1993, EPA entered into the RCRA interim corrective action consent order with Engelhard concerning the Plainville Facility — rather than initiate a lawsuit under Section 106 of CERCLA — in an effort to prevent Engelhard from bringing a CERCLA contribution claim against the United States.  Engelhard's

---

[6] See, e.g., 61 Fed. Reg. 54,215 (Oct. 17, 1996); 65 Fed. Reg. 32,123 (May 22, 2000); 67 Fed. Reg. 8557 (Feb. 25, 2002); 69 Fed. Reg. 51,326 (Aug. 18, 2004); 69 Fed. Reg. 67,607 (Nov. 18, 2004); 70 Fed. Reg. 8111 (Feb. 17, 2005).

allegations against the United States are simply unsupported and untenable.

Finally, a CERCLA contribution claim may be triggered by a civil action initiated by, or a settlement with, a State. Therefore, the availability of contribution is not solely dependent on federal enforcement action.

IV.    OTHER PROVISIONS OF THE STATUTE DO NOT SUPPORT FINDING AN IMPLIED RIGHT OF CONTRIBUTION.

Engelhard argues that the implication of a private right to contribution under Section 107(a)(4)(B) will not interfere with the settlement protection provided by Section 113(f)(2) because "Section 113(f)(2) is not limited by its terms to barring contribution claims under Section 113(f)(1) and 113(f)(3)(B), but applies to bar all contribution claims, including those implied from Section 107(a)(4)(B)." Br. 22. While this untested approach would solve some of the problems that we identified in our opening brief (U.S. Br. 25-26 & n.24),[7] it seems at odds with Engelhard's theory that Section 107(a)(4)(B) operates independent of Section 113(f).

Engelhard also contends (Br. 22-23) that an implied contribution right under Section 107(a)(4)(B) is not at odds with the statute of limitations set forth in Section 113(g) because there is an imperfect alignment between Section 113(g)(3), the subsection addressing statute of limitations for contribution actions, and Sections 113(f)(1) and 113(f)(3). True enough, but this statute of limitations gap exists no matter whether Section 107(a)(4)(B) authorizes a stand-alone

---

[7] It is unclear whether Section 113(f)(2) would work as Engelhard proposes. For example, in United Technologies, the PRP plaintiffs argued that, pursuant to Section 107(a)(4)(B), they should be able to recover costs that they had incurred directly. 33 F.3d at 102. In rejecting this construction, the First Circuit reasoned that Section 113(f)(2)'s contribution protection provision "then would afford very little protection," since "a nonsettling or later-settling PRP would be entitled to bring an action against a responsible party who settled at the earliest practicable moment, but paid less than his ratable share of the aggregate [direct] payments." Id. at 103.

right to contribution or not.  Accordingly, the statute of limitations provision sheds no light on the present issue.

V.   RCRA DOES NOT WAIVE SOVEREIGN IMMUNITY FROM CLAIMS THAT SEEK THE RECOVERY OF PAST OR FUTURE RESPONSE COSTS.

In an apparent attempt to sidestep the fact that sovereign immunity bars Engelhard's fifth cause of action — a claim that plainly seeks recovery of "all past and future environmental response costs" pursuant to the RCRA citizen suit provision, Compl. ¶ 87 — Engelhard now asserts that it has a valid cause of action under RCRA to obtain "all injunctive relief deemed appropriate by the Court."  Br. 32.

"[W]here a cause of action is authorized against the federal government, the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived."  Lane v. Pena, 518 U.S. 187, 197 (1996); see also Sierra Club v. Tenn. Valley Auth., ___ F.3d ___, 2005 WL 3110516, at *17-19 (11th Cir. Nov. 22, 2005) (same — construing scope of waiver in citizen suit provision of federal Clean Air Act).  Since the recovery of response costs is not a remedy for which sovereign immunity has been expressly waived under RCRA, see U.S. Br. 31-35, Engelhard's RCRA claim for response costs must be dismissed for lack of subject matter jurisdiction.[8/]

VI.   THE SIXTH CAUSE OF ACTION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AND FOR LACK OF JURISDICTION.

Lastly, Engelhard's sixth cause of action must be dismissed for failure to state a claim because the Declaratory Judgment Act does not "create[] a substantive cause of action."  Akins

---

[8/] This dismissal should be with prejudice notwithstanding Engelhard's belated attempt to re-characterize its claim through its briefing.  The Complaint, and the claim in the Complaint, speaks for itself.

v. Penobscot Nation, 130 F.3d 482, 490 n.9 (1st Cir. 1997).

In the alternative, Engelhard maintains that its sixth cause of action arises under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).  However, courts may not grant relief under this provision unless there is an actual, justiciable "case or controversy" between the parties.  See United States v. Davis, 261 F.3d 1, 47 (1st Cir. 2001).  In the context of contribution actions between PRPs, this requires the party seeking relief to demonstrate a reasonable likelihood that it will have to pay more than its fair share of the response costs.  See United States v. Davis, 31 F. Supp. 2d 45, 58 (D.R.I. 1998); United States v. Davis, 20 F. Supp. 2d 326, 338 (D.R.I. 1998).  A party may satisfy that burden by showing that it faces a presently enforceable obligation — e.g., court order or settlement with the government — to pay more response costs than it is actually responsible for.  See United States v. Davis, 31 F. Supp. 2d at 69.

In this case, Engelhard does not make even the bare legal assertion that it has or will pay more in response costs than it is actually responsible for.  As such, there is no actual, live controversy upon which this court could exercise jurisdiction.  Under these circumstances, "[a]llocating liability . . . would be a needless waste of the Court's time and the litigants' resources."  United States v. Davis, 20 F. Supp. 2d at 338.  Accordingly, Engelhard's claim for declaratory relief must be dismissed for lack of jurisdiction under Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, and those in our opening brief, the Court should grant the United States' Motion For Partial Dismissal.

                                          Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney

        District of Massachusetts

        ANTON P. GIEDT
        Assistant U.S. Attorney
        1 Courthouse Way
        Boston, MA  02210
        Tel:  (617) 748-3309
        Fax: (617) 748-3967
        anton.giedt@usdoj.gov

        SUE ELLEN WOOLDRIDGE
        Assistant Attorney General
        U.S. Department of Justice
        Environment & Natural Resources Division

Dated: December 1, 2005        /s/ Stephen E. Crowley
        STEPHEN E. CROWLEY
        U.S. Department of Justice
        Environment & Natural Resources Division
        Environmental Defense Section
        P.O. Box 23986
        Washington, D.C.  20026-3986
        Tel: (202) 514-0165
        Fax: (202) 514-8865
        Stephen.Crowley@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that I have this 1st day of December 2005, served a true and correct copy of the foregoing UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL, on Plaintiff's counsel of record by electronic filing, as follows:

      Ronald L. Kuis, Esq.
      12 Scenery Road
      Pittsburgh, PA 15221
      rlkuis@aol.com

      David P. Rosenblatt
      Paul R. Mastrocola
      Burns & Levinson, LLP
      125 Summer Street
      Boston, MA  02110
      Drosenblatt@burnslev.com

      /s/ Stephen E. Crowley
      STEPHEN E. CROWLEY
      Attorney for the Defendants