# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____  )
  )
Engelhard Corporation,  )
  )
       Plaintiff,  )
  )    **Civil Action No. 05-11241-JLT**
       v  )    (_Electronic filing_)
  )
United States of America, <u>et al.</u>,  )
  )
       Defendants.  )
_____  )

## OPPOSITION TO THE UNITED STATES' MOTION FOR JUDGMENT
## ON THE PLEADINGS ON PLAINTIFF'S FOURTH CAUSE OF ACTION

David P. Rosenblatt, Esquire
Paul R. Mastrocola, Esquire
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000
drosenblatt@burnslev.com
pmastrocola@burnslev.com

Ronald L. Kuis, Esquire
12 Scenery Road
Pittsburgh, PA 15221
(412) 731-7246
rlkuis@aol.com

Attorneys for Plaintiff,
Engelhard Corporation

September 29, 2006

## SUMMARY OF ARGUMENT

The United States' Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action, which relies on a deeply flawed reading of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), ignores the CERCLA'S pro-remediation policies, and invokes disputed material facts, must be denied.

The United States' Motion asks the Court to address two (2) issues associated with Plaintiff Engelhard Corporation's (Engelhard") Fourth Cause of Action, a claim by Engelhard for contribution against the United States under Section 113(f)(3)(B) of CERCLA. 42 U.S.C. § 9613(f)(3)(B).

First, the United States asks the Court to grant judgment on the pleadings against Engelhard's Fourth Cause of Action on the basis of failure to state a claim on which relief can be granted. Section 113(f)(3)(B) provides a right of contribution to remediating parties who have resolved their liability to either the United States or a State for some or all of a response action, in either a judicial or administrative forum. The United States' argument rests on the proposition that administrative settlements with the United States must adhere to procedural requirements that are totally absent from the statute or regulation. Despite the lack of ambiguity in the statute, the United States fails to acknowledge the plain meaning and intent of CERCLA Section 113(f)(3)(B). Section 113(f)(3)(B) simply states:

> **A person who has resolved its liability to the United States** or a State **for some or all of a response action** or for some or all of the costs of such action in **an administrative or judicially approved settlement may seek contribution** from any person who is not party to a [similar settlement]. (emphasis added).

In its continuing effort to evade responsibility for its share of environmental clean up costs, the United States asks the Court to hold that Engelhard's administrative settlement with

the Environmental Protection Agency is not sufficient to support a contribution claim under Section 113(f)(3)(B). The plain language of the statute creates a right of contribution that is expressly triggered by the amicable resolution of responsibility for "some or all of a response action." The sole textual prerequisite to a Section 113(f)(3)(B) contribution claim is entry into an "approved settlement" resolving "some or all of a response action." CERCLA provides no bright line guidance on the form or content of the "approved settlement" agreement under Section 113(f)(3)(B). Furthermore, no definition found in CERCLA provides guidance on Section 113(f)(3)(B) other than the definition of a "response" action found in Section 101(25). 42 U.S.C. § 9601(25). Engelhard contends that it has satisfied the administrative and technical prerequisites of Section 113(f)(3)(B) and therefore enjoys the right of contribution asserted in its Fourth Cause of Action.

Second, the United States' Motion also asks this Court to rule on the statute of limitations applicable to claims asserted by Engelhard under Section 113(f)(3)(B). On this issue, the United States asserts that the three-year CERCLA statute of limitations at Section 113(g)(3)(B), 42 U.S.C. § 9613(g)(3)(B), applies to Engelhard's Fourth Cause of Action and that Engelhard's claim under Section 113(f)(3)(B) is untimely. Section 113(g)(3) reads:

> (3)    Contribution
> No action for contribution for any response costs or damages may be commenced more than 3 years after –
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlement) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages. 42 U.S.C. § 9613(g)(3).

On this issue, the United States has clearly violated the first rule of statutory interpretation: Read the statute!  "It is apodictic that our first recourse must be to the statute's [CERCLA's] text and structure."  United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96, 99 (1st Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  Section 113(g)(3)(B) is specific about the types of CERCLA settlements covered by the three-year statute of limitations. Section 113(g)(3)(B) lists three events that trigger the running of the three-year statute of limitations: (1) the entry of a judicially approved settlement; (2) a CERCLA Section 9622(g) *de minimis* settlement; or (3) a CERCLA Section 9622(h) cost recovery settlement.  Despite the specificity of the statute limiting the application of Section 113(g)(3)(B) to only CERCLA settlements, the United States contends that the statute of limitations from Section 113(g)(3)(B) should also apply to administrative settlements under the Resource Conservation and Recovery Act ("RCRA").  There is no basis for such a conclusion.

Alternatively, the United States appears to argue that because Section 113(g)(3) is titled "Contribution," any contribution claim under CERCLA must fall within the three-year statute of limitations.  Here also, there is no basis for the United States' position.  There are clearly CERCLA contribution actions that are not subject to the three-year limitation period of Section 113(g)(3), e.g., Section 113(f)(1) contribution actions.  Moreover, since the Supreme Court's decision in Cooper Indus., Inc. v. Aviall Services, Inc., 543 U.S. 157, 125 S. Ct. 577, 160 L.Ed.2d 548 (2004), two Circuit Courts have held that CERCLA contribution actions are available under CERCLA Section 107.  42 U.S.C. § 9607.  See Atlantic Research Corporation v. United States of America, 2006 U.S. App. LEXIS 20557 (8th Cir. August 11, 2006); Consolidated Edison Co. V. UGI Utilities, Inc., 423 F.3d 90 (2nd Cir. 2005).  Since contribution claims have been held by the Second and Eighth Circuits to fall outside the specific triggering

events found in Section 113(g)(3), it is nonsensical to argue that only the three-year statute of limitation found in Section 113(g)(3) controls all CERCLA contribution actions.

More recently, the U.S. Court of Appeals for the Third Circuit held that a contribution claim was not available under Section 107. <u>E.I. DuPont DeNemours and Company v. United States</u>, 2006 U.S. App. LEXIS 22215, (August 29, 2006).  However, the Third Circuit's decision in <u>E.I. DuPont</u> was constrained by two earlier precedents – <u>New Castle County v. Halliburton NUS Corp.</u>, 111 F.3d 1116 (3rd Cir. 1997) and <u>Matter of Reading Co.</u>, 115 F.3d 1111 (3rd Cir. 1997) – which limited potentially responsible parties to an express cause of action for contribution under CERCLA Section 113.  Nothing in the <u>E.I. DuPont</u> decision supports the United States' Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action.  Indeed, <u>E.I. DuPont</u> supports the proposition that CERCLA contribution rights arise out of Section 113.

Finally, material facts are ignored by the United States.  The United States fails to mention the series of tolling agreements entered into between Engelhard and the United States addressing CERCLA claims raised by Engelhard in its Fourth Cause of Action.  The existence of tolling agreements addressing claims under CERCLA directly impacts the Court's review of the United States' Motion for Judgment on the Pleadings.  The failure to present these tolling agreements to the Court is fatal to the United States' Motion under the stringent standard of review for a motion for judgment on the pleadings.  <u>See</u>, <u>e.g.</u>, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  Just as importantly, the United States also ignores the environmental investigation and remediation already performed by Engelhard.  Section 113(f)(3)(B) demands that this Court determine whether remedial work performed by Engelhard encompasses **some or all of a response action** as defined by CERCLA.  <u>See</u> 42 U.S.C. § 9613(f)(3)(B).  Only a full

5

and complete evidentiary hearing can satisfy this Court regarding Engelhard's fulfillment or lack of fulfillment of this statutory requirement. Accordingly, material facts are arguably still at issue and, on this basis alone, the Court must deny the United States' Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action.

## **PERTINENT FACTS**

This case involves a suit by Plaintiff Engelhard Corporation against the United States of America, its departments and agencies, seeking contribution and cost recovery for environmental response costs under CERCLA, injunctive relief under the citizen suit provisions of Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, and declaratory relief pursuant to both CERCLA, 42 U.S.C § 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

Engelhard filed suit against the United States after it incurred some $15 million to cleanup a contaminated manufacturing facility in Plainville, Massachusetts. Manufacturing activities at the Plainville facility involved, in relevant part, the production of (1) nuclear fuel for atomic research and development purposes starting in approximately 1957 and terminating in 1962 and (2) coin blanks and other coinage material under contracts with the United States Mint from approximately 1966 through the 1980s. In all of these toll manufacturing contracts with Engelhard, the government, through its departments and agencies, owned materials that were used in processes known to the United States to create waste materials with the resultant possibility of release of contamination to the environment. Under well-established principles of "arranger" liability under CERCLA, the United States is potentially liable for environmental response costs incurred at the Plainville facility. See United States v. Aceto Agricultural Chemicals, 872 F.2d 1373 (8th Cir 1989); 42 U.S.C. § 9607(a)(3). In a CERCLA enforcement

action, the United States has advocated before the Supreme Court identical arguments for "arranger" liability for customers of toll manufacturers. See Brief for the Federal Respondents in Opposition, Crompton Co./CIE v. United States, No. 01-387, on petition for a writ of certiorari, *available at*, http://www.usdoj.gov/osg/briefs/2001/0responses/2001-0387.resp.html. In the instant matter, Engelhard asserts the same legal arguments establishing the United States' liability as an "arranger" under CERCLA that the United States asserted in its enforcement action against Crompton Co./CIE.

Since the 1980s, Engelhard has been investigating and cleaning up hazardous substances at the Plainville facility. Engelhard initially undertook investigation and cleanup activities voluntarily. Starting in 1993, Engelhard has continued with the investigation and cleanup of the Plainville facility under the Section 3008 corrective action program of RCRA. 42 U.S.C. § 6928. Under the RCRA corrective action program, Engelhard is required to investigate and remediate past releases of hazardous waste at the Plainville facility, regardless of when the releases occurred. Id. Because Engelhard has voluntarily conducted environmental response actions at the Plainville facility, and later entered into a Consent Order with the Environmental Protection Agency under the RCRA corrective action program, there has been no Section 106 or 107 civil action under CERCLA. Engelhard has alleged in the Complaint that expenditures at Plainville are "necessary costs of response . . . consistent with the national contingency plan" within the meaning of Section 107(a)(4)(B) of CERCLA. 42 U.S.C. § 9607(a)(4)(B).

This cleanup is ongoing, a final remedial plan has yet to be selected, and substantial additional costs are expected. Engelhard is conducting the cleanup of the Plainville facility pursuant to an administrative settlement with the Environmental Protection Agency. See Exhibit 1, United States' Motion for Judgment on the Pleading on Plaintiff's Fourth Cause of

Action. As the administrative settlement between Engelhard and the United States makes clear, Engelhard voluntarily began the investigation and cleanup of the Plainville site and is now continuing that cleanup pursuant to an administrative agreement with the United States.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings seeking dismissal for failure to state a claim on which relief can be granted, the court applies the same standard of review as it does to a motion to dismiss brought pursuant to Rule 12(b)(6). Mass. Candy & Tobacco Distribs., Inc. v. Golden Distribs., Ltd., 852 F.Supp. 63, 67 (D. Mass. 1994). Under the standard of Rule 12(b)(6), a complaint cannot be dismissed unless the court is certain that no set of facts can be proved that would entitle plaintiff to relief. Hishon, 467 U.S. at 73 (1984). For dismissal under Rule 12(b)(6), the court must accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiff's favor. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). A Rule 12(b)(6) motion to dismiss should be granted only if it "appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Const. Co. v. Russo, 96 F.3d 566, 569 (1st Cir. 1996).

## ARGUMENT

**A.          The Facts As Averred Do Not Permit Judgment on the Pleadings**

The United States asks the Court to grant judgment on the pleadings against Plaintiff Engelhard Corporation's Fourth Cause of Action on the basis of (i) the statute of limitations applicable to the Fourth Cause of Action and (ii) failure to state a claim on which relief can be granted. The United States, however, cannot establish that Engelhard would be unable to recover under any set of facts.

First, the United States' Motion asks this Court to rule on the statute of limitations applicable to claims asserted by Engelhard under Section 113(f)(3)(B). The United States fails to fully apprise the Court that the United States and Engelhard entered into a series of tolling agreements prior to Engelhard's filing of a Complaint in this matter. These tolling agreements stayed the statute of limitations for CERCLA claims raised by Engelhard against the United States, including CERCLA claims arising under Engelhard's Fourth Cause of Action. The first tolling agreement was entered into as of April 26, 2002, and expired on April 26, 2003. (Affidavit of Ronald L. Kuis, filed herewith, at ¶ 4.) The second tolling agreement was entered into on April 28, 2003, and expired on October 28, 2003. Id. at ¶ 5. The third tolling agreement was entered into October 29, 2003, and expired on April 30, 2004. Id. at ¶ 6. The fourth tolling agreement was entered into effective May 1, 2004, and expired on or about February 13, 2005. Id. at ¶ 7. In relevant part, the third tolling agreement states:

> The United States agrees not to assert, plead or raise any defense or avoidance based on the running of any statute of limitations that may apply during the Tolling Period, or any defense or avoidance based on laches or other principles concerning the timeliness of commencing a civil a action with respect to the CERCLA claims, based on the failure of Engelhard to file a complaint any time during the Tolling Period.

It is simply nonsensical for the United States to seek dismissal of Engelhard's Fourth Cause of Action under CERCLA Section 113(f)(3)(B) without presentment to the Court of the tolling agreements that directly address application of the CERCLA statute of limitations. Without presentment of these tolling agreements, this Court cannot fairly judge the merits of the United States' Motion for Judgment on the Pleadings and, accordingly, the United States' Motion must be denied.

Second, the United States asks the Court to grant judgment on the pleadings against Engelhard's Fourth Cause of Action on the basis of failure to state a claim on which relief can be granted. Section 113(f)(3)(B) provides a right of contribution to remediating parties who have resolved their liability to either the United States or a State for some or all of a response action, in either a judicial or administrative forum. The plain language of the statute creates a discrete right of contribution, independent of any other cause of action available under CERCLA, that is established by the amicable resolution of responsibility for "some or all of a response action." The sole textual prerequisite to a Section 113(f)(3)(B) contribution claim is entry into an "approved settlement" resolving "some or all of a response action." CERCLA provides no bright line guidance on the form, procedure, or content of the "approved settlement" agreement under Section 113(f)(3)(B). Since the statute requires only the resolution of "some or all of a response action," the issue before the Court is whether the administrative settlement between Engelhard and the Environmental Protection Agency resolves "some or all of a response action," as that term "response action" is defined under CERCLA. 42 U.S.C. § 9601(25).

Given the factual averments of Engelhard's Complaint, and all reasonable inferences to be drawn therefrom, there is no basis for the United States to argue that no set of facts can be proved that would entitle Engelhard to relief. At this stage in the proceedings, discovery has been stayed. Until discovery has been closed and relevant evidence is made available to the Court, it is impossible for the United States to argue or for the Court to determine any facts contrary to those averred. It certainly cannot be established that actions performed by Engelhard under the administrative agreement with the Environmental Protection Agency fail to resolve "some or all of a response action" at the Plainville facility. Accordingly, the United

States Motion For Judgment on the Pleadings for failure to state a claim for which relief may be granted must be denied.

**B.**        **The <u>Cooper</u> Decision and Agency Administrative Settlements**

On December 13, 2004, the Supreme Court issued its ruling in <u>Cooper Industries, Inc. v. Aviall Services, Inc.</u>, 543 U.S. 157, 125 S. Ct. 577, 160 L.Ed.2d 548 (2004). The Supreme Court's decision unsettled more than two decades of understanding among the courts, federal and state government regulators, and the regulated community that a party could bring an action for contribution under Section 113(f)(1) of CERCLA in the absence of a prior or pending civil action under Section 106 or 107. 42 U.S.C. §§ 9606, 9607. The <u>Cooper</u> decision does not, however, address or otherwise affect the right of a private party to obtain contribution under CERCLA Section 113(f)(3)(B).

Although the Supreme Court in <u>Cooper</u> declined to address whether administrative orders under CERCLA Section 104, RCRA Section 3008, or other federal or state administrative orders may serve as a basis for contribution actions because such an order was not present in the facts of that case, Aviall squarely argued the issue in a brief before the Fifth Circuit where the United States presented an *amicus curiae* brief arguing against Aviall's right of contribution. In response, Aviall reasoned that if the United States' narrow view of contribution as being only available after a Section 106 or 107 action was accepted, there could be no contribution for environmental cleanups done under Federal administrative settlements either:

> The Department [of Justice] nowhere disputes that the legal term "civil action" in section 113(f)(1) refers exclusively to judicial proceedings pursuant to sections 106 or 107, and not to administrative orders…..
> … **The only way to salvage the jewel of contribution claims connected to administrative orders is to construe section 113(f)(1) to permit Aviall's claim. Otherwise, those claims must also skid down the Department's [of Justice] "plain language slope in oblivion.**

Response of Appellant Aviall Services, Inc. to the *Amicus Curiae* Brief of the United States at 12, Aviall Servs., Inc. v. Cooper Indus., Inc., 312 F.3d 677 (5th Cir. 2002) (No. 00-10197), *available at*, 2002 WL 32099831 (emphasis added).

Despite Aviall's statement that Section 113(f)(1) represents "the only way" for contribution claims for cleanups undertaken pursuant to administrative orders to be brought, this is not necessarily so. In the alternative, a claim could possibly proceed under Section 113(f)(3)(B). The issue before the Court is whether an administrative settlement, such as the one Engelhard entered into with the Environmental Protection Agency, constitutes an "administrative settlement" under Section 113(f)(3)(B).

Although not directly addressing whether a RCRA administrative settlement is considered a CERCLA "administrative settlement," at least one pre-Cooper court allowed a CERCLA contribution claim to go forward where plaintiffs had entered in an administrative settlement with the Environmental Protection Agency. Central Illinois Pub. Serv. Co. v. Indus. Oil Tank & Line Cleaning Serv., 730 F.Supp. 1498, 1509 (W.D.Mo. 1990). Additionally, the United States' position before the Fifth Circuit suggests that where parties have entered into a "settlement," common precepts of contribution under common law dictate that CERCLA contribution claims should be allowed to proceed. Brief of the United States as *Amicus Curiae* at 7-9, Aviall Servs., Inc. v. Cooper Indus., Inc., 312 F.3d 677 (5th Cir. 2002) (No. 00-10197), *available at*, 2002 WL 32099835.

Considering the language of the statute itself, Section 113(f)(3)(B) cross-references Section 113(f)(2). 42 U.S.C. § 9613(f)(2). Section 113(f)(2) provides a considerable incentive for potentially responsible parties to enter into administrative or judicially approved settlement with the Federal government or the States. Section 113(f)(2) provides, in relevant

part: "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."  42 U.S.C. § 9613(f)(2).  Thus, "potentially responsible parties who choose to settle gain protection from contribution, enjoy potentially favorable settlement terms, and retain the ability to seek contribution from other defendants."  Bedford Affiliates v. Sills, 156 F.3d 416, 427 (2nd Cir. 1998); see also United Technologies, 33 F.3rd at 99 (noting that CERCLA is "designed to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle") (internal quotations omitted).  As a practical matter, these incentives are critical to the smooth functioning of the administrative process and the cleanup of many sites without the burdens and expenses of litigation.

CERCLA does not limit the flexibility granted to the United States or States to fashion appropriate administrative settlement agreements.  Section 122 of CERCLA, entitled "Settlements," provides the only guidance found in CERCLA on the form, procedure and content of settlements under the Act.  42 U.S.C. § 9622.  Section 122 contemplates settlements beyond those governed by Sections 122(g) and 122(h) – mentioned previously in Section 113(g)(3)(B) as triggering the running of the three-year statute of limitations – and does not explicitly identify any of them as "administrative settlements."  Indeed, subsection (d) of Section 122, titled "Enforcement," specifically includes a provision relative to agreements under CERCLA Section 104(b).  Section 122(d)(3) provides the authority under which the Environmental Protection Agency may issue orders under Section 104(b) and may establish the obligations of parties to cleanups.  Moreover, Section 122(d)(3) explicitly vests the government with the ability to enforce such orders.  Orders under Section 122(d)(3), as well as those issued under Section 122(g) and 122(h), clearly emanate from the same general settlement authority provided for in

Section 122(a).  Finally while not requiring adherence to the more rigid publication and notice and comment protocols set forth in Section 122(i), settlements under CERCLA Section 104 are statutorily required to comply with the special notice procedures of Section 122(e).

Despite the plethora of "settlement" options available under Section 122, only Sections 122(g) and 122(h) are mentioned in Section 113(g)(3)(B) as triggering the running of the three-year statute of limitations.

The flexibility found throughout Section 122, compared to the strict requirements of Section 122(i), may well reflect the more cooperative nature of "voluntary" administrative settlements, and not necessarily reflect any congressionally envisioned circumscription of rights and privileges under these settlements, such as an ability to pursue contribution actions under Section 113(f)(3)(B).

While CERCLA Section 122 provides some guidance for CERCLA settlement agreements entered by the United States, there is no equivalent guidance with respect to either State settlement agreements or RCRA settlement agreements that have the result of cleaning up contaminated sites.  Nonetheless, the administrative settlement agreement between Engelhard and the Environmental Protection Agency resolved the government's authority and Engelhard is legally responsible to take remedial actions at the Plainville facility.  As evidence of this resolution of governmental authority, it should be noted that Engelhard has conducted the cleanup of the Plainville facility continuously since 1993 under the administrative settlement agreement signed in that year with the Environmental Protection Agency.  The administrative agreement is, therefore, consistent with the terms and purposes of CERCLA generally and with CERCLA Section 113, which are: to achieve the prompt clean up of contaminated sites; to impose the cost of clean up on those responsible for the contamination; and, to maximize the

participation of responsible parties and expedite the cleanup by encouraging early settlement, thus reducing the time and expense of enforcement litigation.

Furthermore, the administrative settlement between Engelhard and the United States indisputably covers a "response action" or the "costs of such action" and provides specifically that:

> … the mutual objectives of the parties are: to further evaluate the nature and extent of Releases of Hazardous Waste and/or Hazardous Constituents from AOCs [Areas of Concern] at the Facility; to complete a RCRA Facility Investigation; to implement specified measures identified in the Consent Order to stabilize Releases of Hazardous Wastes and/or Hazardous Constituents to the environment; to conduct Interim Measures, if necessary; and to gather data to support a future Corrective Measures Study in anticipation that such a study is deemed necessary.  Exhibit I, Pages 5-6.

The work contemplated under the administrative settlement between Engelhard and the Environmental Protection Agency constituents a "response action" as defined by Sections 101(23) and 101(25) of CERCLA.  42 U.S.C. §§ 9601(23) and (25).  Section 101(25) defines "response" as follows:

> The terms "respond" or "response" means remove, removal, remedy and remedial actions, all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto.

By reference, the definition of "response" incorporates the definition of "remove" or "removal."  Section 101(25) defines  "remove" or "removal" in pertinent part as follows:

> The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary to be taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

Because the administrative settlement agreement between Engelhard and the Environmental Protection Agency is consistent with the statutory requirements of CERCLA, it is sufficient to support a Section 113(f)(3)(B) contribution action.

**C.        In <u>Cooper v. Aviall</u>, the Supreme Court did not directly or indirectly address the issues raised by the United States in its Motion**

The <u>Cooper</u> case arose when Aviall Services, Inc., filed a contribution action under Section 113 of CERCLA against the previous owner of a piece of property, Cooper Industries, Inc. ("Cooper").  After purchasing the property, Aviall discovered that it was contaminated with hazardous substances.  Aviall submitted a notification of contamination to the Texas Natural Resource Conservation Commission, which requested that Aviall clean up the site, and threatened enforcement action if Aviall refused.  Aviall cleaned up the property under the State's supervision and incurred costs of approximately $5 million.  At no point in this process did the Commission or the Environmental Protection Agency take judicial or administrative measures to compel Aviall to undertake the cleanup.

Cooper argued that Aviall could not bring an action for contribution because it had voluntarily cleaned up the site and its contribution action was not "during or following any civil action under section 9606 of this title or under section 9607(a) of this title…"  42 U.S.C. § 9613(f)(1).  The Supreme Court agreed with Cooper and held that "section 113(f)(1) … authorizes contribution claims only 'during or following' a civil action under § 106 or § 107(a), and it is undisputed that Aviall has never been subject to such an action.  Aviall therefore has no § 113(f)(1) claim."  <u>Cooper</u>, 543 U.S. at 560.

The Supreme Court was careful not to address any of the following in its <u>Cooper</u> opinion: (1) whether costs incurred pursuant to an administrative order issued under Section 106

of CERCLA are subject to recovery under Section 113(f)(1); (2) whether Section 107(a)(4)(B) of CERCLA expressly authorizes a potentially responsible party to recover its costs; (3) whether a potentially responsible party has an implied right of contribution under Section 107; or (4) whether a particular statute of limitations applied to Aviall's CERCLA claims.  Therefore, the only issue decided by <u>Cooper</u> was that a party does not have a claim for contribution under § 113(f)(1) when it undertakes a voluntary cleanup.

While much has yet to decided by the Supreme Court in determining the contours of CERCLA, the Court has clearly established that a right of contribution exists under Section 113.  In <u>Key Tronic Corp. v. United States</u>, 511 U.S. 809 (1994), the Supreme Court concluded that, after Section 113 was added by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 ("SARA"), "the statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107." <u>Key Tronic</u>, 511 U.S. at 816.  Justice Thomas confirmed this interpretation of the statute: "As noted above, § 113 provides two express avenues for contribution: § 113(f)(1) ("during or following" specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State)." <u>Cooper</u>, 543 U.S. at 560.

Nothing in either <u>Key Tronic</u> or <u>Cooper</u> provides support for the United States' Motion seeking to dismiss Engelhard's Fourth Cause of Action on the basis of either running of the statute of limitations or failure to state a justiciable claim.

**D.      Dismissal of Engelhard's Fourth Cause of Action would discourage voluntary clean ups and is against public policy**

If the Court were to determine that Engelhard is not entitled to bring a Section 113(f)(3)(B) claim because its settlement with the Environmental Protection Agency does not

qualify as an administrative settlement, then <u>Cooper</u> leaves a potentially responsible party with no mechanism for recovering response costs until CERCLA enforcement proceedings are brought against it. This clearly would discourage potentially responsible parties from voluntarily initiating cleanup at a site in need of removal or remedial action, contrary to the spirit of CERCLA and all protective environmental laws, for that matter. If this Court determines that a potentially responsible party may not assert either a Section 107 contribution claim, a Section 113(f)(3)(B) contribution claim, or a Federal common law claim, a cooperative, willing and responsible party will lose incentive to clean up its surrounding environment because potentially responsible parties will refuse to cooperate in the cleanup. In fact, the result of such a decision would be that a potentially responsible party who voluntarily remediates a facility, faces a reduced likelihood that it will be sued under Section 106 or 107(a), and thereby jeopardizes its opportunity to seek contribution under Section 113(f) from other potentially responsible parties. The United States' position, if left unchallenged, would create a perverse incentive to potentially responsible parties to wait until they are sued before incurring response costs.

        An important objective of CERCLA is to encourage parties to undertake cleanups voluntarily, without the need for government compulsion or intervention. <u>See</u> H.R. Rep. No. 96-1016, pt. 1, at 17 (1980), *reprinted in,* 1980 U.S.C.C.A.N. 6119 ("The legislation would establish a Federal cause of action in strict liability to enable the [EPA] Administrator to pursue rapid recovery of the costs incurred for the costs of such [cleanup] actions undertaken by him from persons liable therefor and **to induce such persons voluntarily** to pursue appropriate environmental response actions with respect to inactive hazardous waste sites.") (emphasis added). Federal courts have consistently acknowledged this purpose. <u>See</u> <u>Bethlehem Steel Corp.</u> <u>v. Bush</u>, 918 F.2d 1323, 1326 (7th Cir. 1990) (describing CERCLA's "manifest legislative intent

to encourage voluntary private cleanup action"); <u>United States v. New Castle County</u>, 642 F.Supp. 1258, 1264 (D.Del. 1986) ("A review of CERCLA's legislative history shows one of the Act's principle [sic] goals to be the achievement of expeditious response to environmental hazards through **voluntary compliance** by responsible parties.") (emphasis in original).

If adopted by this Court, the United States' position with respect to Section 113(f)(3)(B) would have the obvious effect of removing a significant incentive to voluntary cleanup. Under the United States' view, potentially responsible parties who undertake voluntary cleanups would have no mechanism under CERCLA for seeking a fair share of costs from other responsible parties. But, the consequences of the United States' position go further than that. Its reading of the statute would actually erect affirmative disincentives to voluntary action. In order to obtain a right of contribution under CERCLA, potentially responsible parties must avoid voluntary cleanups and instead provoke federal involvement. If a potentially responsible party did not want to absorb the entire cost of a cleanup for which it was only partly responsible, it would have no choice but to wait to receive an administrative order rather than proceeding voluntarily – and then violate that order to provoke federal judicial enforcement. Alternatively, potentially responsible parties would be encouraged to wait for a government cleanup of the property and then a government suit to recover its costs. Nothing in the language or history of CERCLA warrants a construction that increases the need for federal involvement and discourages voluntary cleanups.

It is undisputed that a key purpose of CERCLA is not only to ensure the proper cleanup of contaminated property, but also "to hold responsible parties liable for the costs of these cleanups." H.R. Rep. No. 99-253, pt. 3, at 15 (1985). In other words, those parties who are responsible for a release of hazardous substances should bear their fair share of the cost of

cleanup of those hazardous substances.  See Pennsylvania v. Union Gas Co., 491 U.S. 1, 7

(1989), *overruled on other grounds by,* Seminole Tribe of Fla. V. Florida, 517 U.S. 44 (1996);

Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454 (9th Cir. 1986).

Under the United States' reading, however, recalcitrant potentially responsible

parties are essentially immune from liability if another potentially responsible party has cleaned

up property either voluntarily or in response to a government order.  In such a case, the United

States argues, the potentially responsible party who cleans up the property has no cause of action

against other potentially responsible parties – who are thus freed from any obligation to pay their

fair share of costs.  The potentially responsible party who accepts responsibility for the cleanup,

or who is singled out for a government order, bears the entire cost of the cleanup, while other

jointly and severally liable parties remain free from responsibility or liability.  That outcome runs

directly counter to a basic purpose of CERCLA.  Restricting the right of contribution as urged by

the United States would mean that a site owner performing a cleanup under RCRA has no ability

to seek equitable contribution from others toward the costs of cleanup.  This is because neither a

RCRA permit nor a RCRA administrative order on consent qualifies as "civil action" brought

under Section 106 or 107 of CERCLA.  Restricting the right of contribution under Section

113(f)(3)(B) would encourage many site owners to resist, delay, and foot-drag in the

implementation of RCRA corrective action.  This unfair and illogical result benefits no one – not

the community in which the facility is located, not the state agency overseeing the cleanup, and

not the site owner.

Moreover, to deny Engelhard the opportunity to seek contribution from the United

States after Engelhard has cooperated with the Environmental Protection Agency, entered into an

administrative settlement agreement with the Federal government, and paid substantial response

costs, while the United States has refused to participate in the remediation efforts or in funding of response costs in any way, would be both inequitable and contrary to the legislative intent of CERCLA.

**E.        Dismissal of the Fourth Cause of Action unjustly punishes Government Contractors**

It is clear that Congress intended for the United States to share its fair share of CERCLA liability.  Section 120(a)(1) of CERCLA, 42 U.S.C. § 9620(a)(1), contains a broad waiver of the United States' sovereign immunity, providing that "[e]ach department, agency, and instrumentality of the United States" is subject to CERCLA's provisions "in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 [Section 107 of CERCLA] of this title."  See FMC Corp. v. U.S. Department of Commerce, 29 F.3d 833, 840 (3rd Cir. 1994) (*en banc*) ("When the government engages in activities that would make a private party liable [under CERCLA] if the private party engaged in those types of activities, then the government is also liable.  This is true even if no private party could in fact engage in those specific activities."  (emphases omitted)).

The United States now attempts to avoid an explicit directive of Congress. Restricting the right of contribution would produce an unjust result at the Plainville facility and at many thousands of sites similarly contaminated by the departments and agencies of the Untied States itself.  These sites include not just the sites actually owned and operated by the United States, but also the many private sites to which the United States contributed waste.  57 Fed. Reg. 31,758 (July 17, 1992) (list of 1,709 Federal facilities potentially subject to environmental investigation and cleanup under CERCLA).

The docket of contaminated sites owned and operated by the Federal government is staggering.  According to the most recent government estimate, a total of 60,425 potentially

contaminated sites are present on land owned by the Departments of Agriculture, Defense, Energy, and Interior.  See Improving Federal Facilities Cleanup, Federal Facilities Policy Group (October 1995).  Among these many sites are former nuclear weapons production facilities, military bases, abandoned mines, landfills, and underground storage tanks.

Somewhat smaller, and somewhat harder to quantify, is the docket of privately owned sites with contamination resulting in whole or in part from the activities of the Federal government.  These sites include waste oil recycling facilities that primarily served military bases, nuclear fuel processing plants that helped support the Cold War weapons production programs, and disposal sites that accepted large volumes of waste from the government.  See, e.g., Westinghouse Electric Co. v. United States, No. 4:03CV00861 SNL (E.D. Mo., filed June 26, 2003) (CERCLA complaint seeking contribution for cleanup of radioactive and hazardous contamination at former Hematite nuclear fuel processing plant in Festus, Missouri); Bridgeport Rental and Oil Service Superfund site in Logan Township, New Jersey, contaminated with PCBs from the Philadelphia Naval Shipyard; Stringfellow Superfund site, used for disposal of waste by numerous military installations.

The Environmental Protection Agency is typically prevented from suing other Federal agencies because the Department of Justice views such cases as conflicts with the Executive Branch that present no justiciable case or controversy under Article III of the Constitution.  See generally, Michael W. Steinberg, Can EPA Sue Other Federal Agencies?, 17 Ecology L.Q. 317, 325-27 (1990).  States are prevented from suing the United States unless Congress specifically grants a waiver of sovereign immunity.

But if the right of CERCLA contribution were now restricted, as argued for by the United States, then parties voluntarily cleaning up sites polluted by the United States would

typically have no right of contribution.  As a result, parties would be far less willing in the future to agree to perform such cleanups either voluntarily or subject to RCRA settlement agreements.

Because the Environmental Protection Agency and its state agency counterparts cannot sue Federal agencies to compel them to cleanup these sites, they will face a Hobson's choice.  Either the Environmental Protection Agency or the states will have to sue private companies at these sites, and those parties will then sue the United States for contribution, thereby burdening the courts with needless claims, or else the cleanups will be delayed indefinitely.  Neither result can be squared with central purpose of CERCLA.

Finally, the development of nuclear fuels by Engelhard was a particularly important program in the overall national defense program.  As such it is inequitable that Engelhard should solely bear the burden of cleanup costs that are part of a truly national program.  The court in FMC recognized that the United States was at least partly responsible under CERCLA for shouldering these national defense costs.  "[A]t bottom our result simply places a cost of the war on the United States, and thus on society as a whole, a result which is neither untoward nor inconsistent with the policy underlying CERCLA."  FMC, 29 F.3d at 846.

F.        **Determining the Appropriate Statute of Limitations**

The United States' Motion asks this Court to rule on the statute of limitations applicable to claims asserted under Section 113(f)(3)(B).  On this issue, the United States asserts that the three-year CERCLA statute of limitations at Section 113(g)(3), 42 U.S.C. § 9613(g)(3), applies to Engelhard's Fourth Cause of Action and that Engelhard's claim under Section 113(f)(3)(B) is untimely.  Section 113(g)(3) reads, in full:

> (3) Contribution
> No action for contribution for any response costs or damages may be commenced more than 3 years after –

(A)   the date of judgment in any action under this chapter for recovery of such costs or damages, or

(B)   the date of an administrative order under section 9622(g) of this title (relating to de minimis settlement) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.  42 U.S.C. § 9613(g)(3).

At the outset, it should be pointed out that no Circuit Court has accepted the United States' argument that the three-year CERCLA statute of limitation in Section 113(g)(3) is triggered with the execution of a RCRA settlement agreement.  In fact, the Circuit Courts that have examined the issue have rejected the application of such a restricted limitations period.  See Sun Co. v. Browning Ferris, Inc., 124 F.3d 1187, 1191 (10th Cir. 1997) ("Thus PRPs [potentially responsible parties] who, like Plaintiffs here, incur cleanup costs pursuant to a unilateral administrative order (or a consent decree, or in some cases, voluntarily) potentially have an unlimited time in which to bring their contribution claims."); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1305 (9th Cir. 1997).

Some courts that have dealt with the issue have applied Section 113(g)(3) strictly and determined that, in such cases, no statute of limitations applies.  For example, in Ekotek Site PRP Committee v. Self, 881 F.Supp 1516, 1523-24 (D.Utah 1995), vacated, Sun Co., 124 F.3d at 1191, the court determined that because the consent agreement for the cleanup in that case was issued to the PRP Committee pursuant to CERCLA Section 106 and not CERCLA Section 122, the agreement did not trigger the three-year statute of limitations.  The Ekotek court further rejected the proposition that, in the alternative, the six-year statute of limitations that pertains to CERCLA Section 107 actions should apply.  Id. at 1522 n.2.  While the Tenth Circuit has abrogated this case, additional courts have also determined that the language of Section

113(g)(3) is to be strictly applied, suggesting an unlimited time in which to bring claims.  See,

e.g., City of Fresno v. NL Indus., Inc. 25 Envtl. Law Rep. 21465 (E.D.Cal. 1995).

       Other courts, however, have found that in situations where the triggering events of

Section 113(g)(3) will never occur, the statute of limitations for costs referred to in CERCLA

Section 107 should be applied.   In reaching this conclusion, the Tenth Circuit in Sun Co.

determined that the statute of limitations set out in Section 113(g)(2) covers parties potentially

seeking contribution where the triggering events of Section 113(g)(3) will not occur.  Sun Co.,

124 F.3d at 1192.  Section 113(g)(2) provides, in relevant part:

> An initial action for recovery of the costs referred to in [CERCLA
> Section 107] must be commenced –
> (A)    for a removal action, within 3 years after completion of the
>        removal action, except that such cost recovery action must
>        be brought within 6 years after a determination to grant a
>        waiver under [CERCLA Section 104(c)(1)(C)] for
>        continued response action; and
> (B)    for a remedial action, within 6 years after initiation of
>        physical on-site construction of the remedial action, except
>        that, if the remedial action is initiated within 3 years after
>        the completion of the removal action costs incurred in the
>        removal action may be recovered in the cost recovery
>        action brought under this subparagraph.   42 U.S.C. §
>        9613(g)(2).

In addition to cost recovery actions and contribution, Section 113(g) covers such things as

actions for natural resource damages, actions by minors and incompetents, subrogation actions

and indemnification actions.

       The Tenth Circuit first found that "because § 113(f) incorporates the liability

provisions of § 107 … a § 113 action for contribution **is** an action under § 107."  Sun Co., 124

F.3d at 1191 (quoting Bancamerica Commercial Corp. Mosher Steel of Kansas, Inc., 100 F.3d

792, 801 (10th Cir.), as amended, 103 F.3d 80 (1996)).  Thus, by definition, an action under

Section 113(f) for contribution is an "action for recovery of costs referred to" in Section 107.

Moreover, where no previous actions under either Sections 106 or 107 have been filed with respect to the site in question, a plaintiff's "contribution action – while governed by the equitable principles of § 113(f) – is the '**initial action**' for recovery of such costs," as required by Section 113(g)(2). Id. at 1192 (emphasis in original). Thus, in situations where the events set forth in Section 113(g)(3) will not occur, a plaintiff's Section 113(f) "contribution action is the 'initial action for recovery of the costs referred to in [CERCLA Section 107]' and must be commenced" according to the requirements of CERCLA Section 113(g)(2). Id. (quoting 42 U.S.C. § 9613(g)(2)(B)). Consequently, depending on the cleanup action taken – (i) a completed removal action or (ii) physical on-site construction in a remedial action – either the three-year statute of limitations for a removal action according to Section 113(g)(2)(A) or the six-year statute of limitations for a remedial action according to subsection (B) will apply. Additionally, in cases where the remedial action is initiated within three years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action for the remedial action. 42 U.S.C. § 9613(g)(2)(B). The length of the limitations period thus depends on whether activity at a facility is considered a removal or a remedial action.

Federal courts have found that a potentially responsible party that settles its liability administratively may bring a contribution action pursuant to Section 113(f)(3)(B). In none of these cases, however, has the court applied that statute of limitation found at Section 113(g)(3)(B) as argued by the United States. See, e.g., Sherwin-Williams Co. v. ARTRA Group, Inc., 125 F.Supp.2d 739 (D.Md. 2001) (applying statutes of limitation provided by Section 113(g)(2)); W.R. Grace & Co. v. Zotos Int'l, Inc., No. 98-CV-838S(F), 2000 U.S. Dist. LEXIS 18901 (W.D.N.Y. Nov. 2, 2000) (applying no statute of limitations where none of the triggering events of Section 113(g)(3) were present); Reichold Chems., Inc. v. Textron, Inc., 888 F.Supp.

1116 (N.D. Fla. 1995) (same).  In other instances, too, federal courts have held that a right to contribution lies even when CERCLA provides no express period of limitations to govern the action.  See, e.g., City of Wichita v. Aero Holdings, Inc., 177 F.Supp.2d 1153 (D.Kan. 2000); Advanced Micro Devices, Inc. v. National Semiconductor Corp., 38 F.Supp.2d 802 (N.D. Cal. 1999); Kaufman & Broad-South Bay v. Unisys Corp., 868 F.Supp 1212 (N.D. Cal. 1994).

        In the instant matter, whether the limitations period has begun to run for the Plaintiff Engelhard depends on whether this Court concludes that the administrative settlement between Engelhard and the Environmental Protection Agency mandates the performance of a removal or a remedial action.  The differing limitation periods will be triggered if the removal action has been completed and/or whether the physical on-site construction of the remedial action has begun.  Alternatively, this Court may decide that no limitation period applies to a voluntary cleanup, as indicated in the settlement agreement.  Only an evidentiary hearing will allow the Court to rule on this factual issue.

**G.        Omission of a Limitations Period in Federal Statutes is not Uncommon**

        Contrary to the suggestion of the United States, the fact that Section 113(g)(3) expressly provides a period of limitations for bringing a contribution claim in certain situations should not be interpreted to mean that in any instance where CERCLA fails to establish a period of limitations, a right to contribution does not exist.  As originally enacted in 1980, CERCLA contained no statute of limitations.  The SARA amendments of 1986 cured this deficiency and provided for specific and differing limitations periods.  However, where CERCLA grants a right to contribution, the presence or absence of limitations period in Section 113(g)(3) establishes nothing more than a Congressional omission, intentional or otherwise.  Indeed, although the statute fails to provide a period of limitations in Section 113(g)(3) for contribution actions

brought by a potentially responsible party who resolves its liability to the State by way of an administrative agreement, Section 113(f)(3)(B) expressly establishes a right to such contribution. Unless one is prepared to ignore the express language of Section 113(f)(3)(B), the absence of a limitations period alone cannot preclude a potentially responsible party who settles administratively with a State from bringing a contribution action pursuant to CERCLA.

To be sure, when CERCLA was enacted in 1980 and amended in 1986, it was far from unusual for Congress to create a cause of action but fail to provide a pertinent period of limitation, thereby leaving it to the courts to "borrow" an appropriate applicable period from other sources of law. See North Star Steel Co. v. Thomas, 515 U.S. 29, 33 (1995) (noting that "[a] look at this Court's docket in recent years" demonstrates the frequency of that circumstance); Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 355 (1991) ("Congress ordinarily intends" for such borrowing "by its silence"); Reed v. United Trans. Union, 488 U.S. 319, 323 (1989) ("Congress not infrequently fails to supply an express statute of limitations when its creates a federal cause of action.")

Congress has addressed the issue of a limitations period in situations where the federal cause of action is silent. December 1, 1990 is the effective date of 28 U.S.C. § 1658(a) "which supplies a general, 4-year limitations period for any federal statute subsequently enacted without one of its own." North Star, 515 U.S. at 34 n. *.  Although Congress has eliminated the need to borrow periods of limitations for statutes enacted after December 1, 1990, CERCLA was enacted and amended prior to that date.

The fact that Congress frequently omits express periods of limitation, therefore, weighs against any attempt by the United States to vest Section 113(g)(3)'s silence with undue significance.  The Court thus should refrain from adopting any argument that may have the

unintended effect of undermining the incentive to cleanup contaminated property provided by Section 113(f)(3)(B) for potentially responsible parties who enter into administrative settlement agreements with either the State or Federal environmental authorities. See United Technologies, 33 F.3d at 103.

## **CONCLUSION**

At the Plainville facility, along with many other privately owned facilities across the country, the United States has consistently sought to undo Congress' waiver of sovereign immunity and thereby evade CERCLA liability. By utilizing its administrative authority under RCRA at the Plainville facility, the United States now seeks to circumvent Congress' express intention that the Federal government should bear its fair share of CERCLA cleanup liability. The Eighth Circuit summarized the effect of the United States' dual role as both a potentially liable party under CERCLA and environmental enforcement agency:

> A contrary ruling, barring Atlantic [or private parties like Engelhard and other government contractors] from recovering a portion of its costs, is not only contrary to CERCLA's purpose, but results in an absurd and unjust outcome. Consider in this, of all cases, the United States is a liable party (who else has rocket motors to clean?). It is, simultaneously, CERCLA's primary enforcer at this, among other Superfund sites.

> If we adopted the Government's reading of § 107, the government could insulate itself from responsibility for its own pollution simply by declining to bring a CERCLA cleanup action or refusing a liable party's offer to settle. This bizarre outcome would eviscerate CERCLA whenever the government, itself, was partially responsible for a site's contamination.

> Congress understood the United States' dual role. When it enacted SARA, it explicitly waived sovereign immunity. CERCLA § 120(a). This waiver is part and parcel of CERCLA's regulatory scheme. It shows Congress had no intention of making private parties shoulder the government's share of liability.

Here, Atlantic assisted the United States by helping modernize its defenses. Atlantic, recognizing the deleterious environmental consequences, remediated the environment without compulsion. Its choice to do so, especially where the ultimate compulsory authority lay with the United States-corporate, will not be held to its detriment. The United States, under CERCLA, is liable for its share of the burden.

The Court, then, concludes Congress resolved the question of the United States' liability 20 years ago. It did not create a loophole by which the Republic could escape its own CERCLA liability by perversely abandoning its CERCLA enforcement power. Congress put the publics right to a clean and safe environment ahead of the sovereign's traditional immunities. Atlantic Research at 26-27. (citations omitted).

This Court, much like the Eighth Circuit, could reasonably ask: Who else during the 1950s and 1960s had the special nuclear materials needed to fabricate reactor fuel? Who else entered into contracts for the manufacture of domestic coinstock? The answer is clear: Only the United States could enter into the type of contracts performed at the Plainville facility. Notwithstanding Congress' unequivocal waiver of sovereign immunity, the United States seeks to create a loophole to avoid the government's CERCLA liability. This Court should not accept the United States' tortuous and self-serving analysis of CERCLA to allow such a result.

Therefore, for the foregoing reasons, the United States' Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action should be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Engelhard requests oral argument before the Court to present its arguments in opposition to the United States' Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action.

PLAINTIFF
ENGELHARD CORPORATION
By its attorneys


/s/ Paul R. Mastrocola
David P. Rosenblatt, Esquire (BBO # 428570)
Paul R. Mastrocola, Esquire (BBO #630664)
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: 617.345-3000
Facsimile: 617.345.3299
Email: drosenblatt@burnslev.com
Email: pmastrocola@burnslev.com

Dated: September 29, 2006

/s/ Ronald L. Kuis
Ronald L. Kuis, Esq.
12 Scenery Road
Pittsburgh, PA 15221
Telephone: (412) 731-7246
Fax: (412) 731-3970
Email: rlkuis@aol.com

Dated: September 29, 2006        Admitted *Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
                                          )
Engelhard Corporation,                    )
                                          )
            Plaintiff,                    )
                                          )        **Civil Action No. 05-11241-JLT**
      v                                   )        (*Electronic filing*)
                                          )
United States of America, <u>et al.</u>,  )
                                          )
            Defendants.                   )
_____ )

## (PROPOSED) ORDER

Upon consideration of (1) the United States' Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action and (2) Opposition to the United States' Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action, the Court being fully advised of the issues raised, it is, hereby ORDERED that the United States' Motion is DENIED.

Dated:_____            _____
                                         The Honorable Joseph L. Tauro
                                         United States District Judge

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 29th day of September 2006, served a true and correct copy of the foregoing,

1) OPPOSITION TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FOURTH CAUSE OF ACTION, and

2) PROPOSED ORDER

on Defendant's counsel of record by electronic filing, as follows:

Stephen E. Crowley, Esquire
U.S. Department of Justice
Environmental Defense Section
P. O. Box 23986
Washington, DC 20026-3986
Tele: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

/s/ Paul R. Mastrocola
Paul R. Mastrocola
Attorney for the Plaintiff,
Engelhard Corporation

J:\Docs\27429\00000\01060165.DOC