# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
ENGELHARD CORPORATION,                )
                                                    )
            Plaintiff,                              )
                                                    )
            v.                                       )          **Civil Action No. 05-11241-JLT**
                                                    )
UNITED STATES OF AMERICA, et al.,    )          (*Electronic filing*)
                                                    )
            Defendants.                           )
_____)

## UNITED STATES' MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR DECLARATORY AND SUMMARY JUDGMENT

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

STEPHEN E. CROWLEY
U.S. Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, D.C.  20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

ANTON P. GIEDT
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA  02210
Tel:  (617) 748-3309
Fax: (617) 748-3967
anton.giedt@usdoj.gov

Dated: September 29, 2006            *Attorneys for the United States*

## INTRODUCTION

In this case concerning hazardous waste contamination at a former industrial manufacturing facility in Plainville, Massachusetts, the Plaintiff, Engelhard Corporation, seeks summary and declaratory judgment on two issues relating to its Fourth Cause of Action.  See Dkt. Nos. 26 & 27 (filed Aug. 4, 2006).  Engelhard's Fourth Cause of Action is a claim for contribution from the United States under Section 113(f)(3)(B) of CERCLA, a provision that allows a potentially responsible party "who has resolved its liability to the United States or a State for some or all of a response action or some or all of the costs of such action in an administrative or judicially approved settlement" to seek contribution from another potentially responsible party.  42 U.S.C. § 9613(f)(3)(B).  First, Engelhard seeks summary judgment that the 1993 Administrative Order on Consent ("Order") that it entered into with EPA pursuant to Section 3008(h) of RCRA constitutes an "administrative settlement" that gives rise to its claim for contribution under CERCLA Section 113(f)(3)(B).  Second, Engelhard seeks summary judgment that the three-year statute of limitations set forth in Section 113(g)(3) of CERCLA, 42 U.S.C. § 9613(g)(3), does not apply to Engelhard's Fourth Cause of Action.

Engelhard's motion should be denied on both issues.  First, the Administrative Order is not an "administrative settlement" under Section 113(f)(3)(B) because it does not resolve Engelhard's liability to EPA for any response actions or response costs.  Second, even assuming the Order resolves Engelhard's liability for response costs or response actions, the Order does not resolve a common or joint liability, shared by the United States, for the performance of corrective action at Engelhard's Plainville Facility.  Third, Engelhard's Fourth Cause of Action

-1-

is governed by the three-year statute of limitations set forth in CERCLA Section 113(g)(3)(B),

42 U.S.C. § 9613(g)(3)(B).[1/]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) permits a court to enter summary judgment

whenever the pleadings, depositions, answers to interrogatories, affidavits and admissions on file

show that "there is no genuine issue as to any material fact and that the moving party is entitled

to summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

see Gaskell v. Harvard Coop Soc'y., 3 F.3d 495, 497-98 (1st Cir. 1993); Goldman v. First Nat'l

Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993). Here, the lone "undisputed material fact"

cited by Engelhard in support of its motion is the 1993 Administrative Order. See Br. 9. We do

not take issue with the existence or contents of the Order, but for reasons we demonstrate below,

Engelhard is not entitled to summary or declaratory judgment as a matter of law.[2/]

---

[1/] The pertinent statutory, regulatory, and factual background is set forth in the United States' August 4, 2006 memorandum in support of its motion for judgment on the pleadings on Plaintiff's Fourth Cause of Action (Dkt. No. 29). Relatedly, Exhibit 1 to the United States' August 4 memorandum contains pertinent sections of the 1993 Administrative Order, which we cite to as "Ex. 1." We generally refer throughout this memorandum to sections of CERCLA and RCRA, rather than to sections of the U.S. Code. All relevant statutory provisions are reproduced in full in Exhibit 2 to the United States' August 4, 2006 memorandum.

[2/] Engelhard's motion should be decided based on the contents of the corrective action Order. If the Court should determine that there are facts outside the Order that are material to the resolution of Engelhard's motion, then the United States should be given an opportunity pursuant to Federal Rule 56(f) to obtain discovery regarding such facts before any decision is made on Engelhard's motion.

-2-

<u>ARGUMENT</u>

I.    **ENGELHARD CANNOT SEEK CONTRIBUTION UNDER SECTION 113(f)(3)(B)
OF CERCLA BECAUSE ENGELHARD HAS NOT RESOLVED ITS LIABILITY
TO EPA FOR ANY RESPONSE COSTS OR RESPONSE ACTIONS.**

   A.    **The RCRA Administrative Order Does Not Resolve Engelhard's Liability To
EPA For Any Response Costs Or Response Actions.**

Engelhard's Fourth Cause of Action is brought pursuant to Section 113(f)(3)(B) of

CERCLA, 42 U.S.C. § 9613(f)(3)(B).  That provision states, in full:

> A person who has resolved its liability to the United States or a State for some or
> all of a response action or some or all of the costs of such action in an
> administrative or judicially approved settlement may seek contribution from any
> person who is not party to a settlement referred to in [CERCLA Section 113(f)(2),
> 42 U.S.C. § 9613(f)(2)].

42 U.S.C. § 9613(f)(3)(B).  Engelhard contends (Br. 7-8, 13-17) that the 1993 Administrative

Order that it entered into with EPA under Section 3008(h) of RCRA constitutes an

"administrative settlement" under Section 113(f)(3)(B) of CERCLA, and that the Order

"resolved the EPA's authority to compel Engelhard to take remedial action at the Plainville

facility."  These contentions are meritless.

Whether a particular written instrument reflects an "administrative or judicially approved

settlement" in which a person "has resolved its liability to the United States or a State for some

or all of a response action or for some or all of the costs of such action" requires case-specific

analysis.  Here, a number of considerations indicate that the Order does not resolve any liability

to EPA for response actions or response costs.

First, the Order expressly <u>reserves</u> EPA's right to seek response costs and response

actions, including requiring Engelhard to perform or reimburse EPA for the very actions required

under the Order.  The Order provides that:

> EPA reserves the right to perform any portion of the work agreed to herein or any
> additional Site characterization, or any response/corrective actions it deems
> necessary to protect human health or the environment.  EPA reserves the right to
> seek reimbursement from Engelhard for such additional costs incurred by the
> United States.  <u>Notwithstanding compliance with the terms of this Consent Order,
> Engelhard is not released from any liability for the costs of any response actions
> taken by EPA.</u>

Ex. 1, at 108-09 (emphasis added).  The Order further provides that:

> EPA reserves the right * * * to require further study or action under Section
> 3008(h) of RCRA, as necessary, to respond to any Releases from the Facility,
> including those addressed in this Consent Order, to protect human health and the
> environment * * *.

Ex. 1, at 108.  Thus, contrary to Engelhard's assertions, EPA retains the right under the very

same legal authority upon which the Order is founded — Section 3008(h) of RCRA — to require

Engelhard to take corrective actions to address the very same releases of hazardous wastes that

are the subject of the Order itself.  In addition, the Order expressly reserves EPA's right —

through an administrative order or a request for judicial relief under "RCRA Section 7003 and/or

CERCLA Section 106" — to compel Engelhard to undertake response actions at the Facility.

Ex. 1, at 108.  Thus, Engelhard's liability to EPA for the performance of response actions at the

Facility was expressly reserved, not resolved.[3]

---

[3] Notably, Engelhard's opening brief neglects to mention, much less address the meaning or
effect of the express and specific reservation of rights provisions in the Order.  In fact, the only
provisions of the Order that Engelhard relies upon are found in the "Statement of Purpose"
section of the Order.  <u>See</u> Engelhard Br. 13 (citing Ex. 1, at 5-6).

Second, the Order contains no covenant not to sue, release, waiver, or substantially similar provision that purports to resolve, discharge, extinguish, compromise, or waive Engelhard's liability to EPA for any response costs or response actions at the Facility.

Third, the Order contains no other indicia of an intent to resolve any liability for response actions or response costs by Engelhard's agreement to perform the required RCRA corrective action. Engelhard points out (Br. 13) that the "mutual objectives" of EPA and Engelhard under the Order are to ensure the performance of certain RCRA corrective actions at the Plainville Facility, and argues that the Order thereby resolves Engelhard's liability. Engelhard is mistaken. In fact, the "mutual objectives" of EPA and Engelhard are set forth in the section of the Order entitled "Statement of Purpose," and nothing in that entire section indicates that the parties intended to resolve or settle Engelhard's liability to EPA. See Ex. 1 at 5-6. If anything, the fact that this section of the Order addresses the parties' mutual objectives and fails to indicate that a resolution of Engelhard's liability for response actions was among those objectives, undercuts Engelhard's position. In any event, the more general Statement of Purpose provisions should not be read to supercede or undermine the much more specific provisions noted above, which expressly reserve Engelhard's liability to EPA for response costs and response actions. See, e.g., Sinclair Oil Corp. v. Scherer, 7 F.3d 191, 195 (10th Cir. 1993) (rejecting argument that RCRA administrative penalties were resolved by earlier consent decree) ("there is no merit to the argument that the expressly reserved rights were settled by the general statement of purpose").[4]

---

[4] Another section of the Order, not cited by Engelhard, contains a single sentence that provides that "EPA and Engelhard have agreed to enter into this Consent Order in settlement of this matter without adjudication of any issue of law or fact." Ex. 1, at 17. However, "this matter" plainly refers to Engelhard's interim status corrective action obligations under the Order. That

(continued...)

-5-

Fourth, the Order concerns corrective action under RCRA at an interim status facility. While we do not take the position here that one can never resolve liability for response actions in a corrective action order, one would expect that if a resolution of response action liability was intended, there would be an explicit expression of that intent.  The absence of any such language in the Order, coupled with the absence of any other indicia of an intent to resolve liability and the extensive, broad reservations of liability discussed above, leads to the conclusion that there was no resolution of liability for response actions here.

Indeed, these factors distinguish the instant case from Seneca Meadows, Inc. v. ECI Liquidating, Inc., 427 F. Supp. 2d 279 (W.D.N.Y. 2006), the lone case cited in Engelhard's brief (Br. 15) that found that a party may seek contribution under Section 113(f)(3)(B).  In reaching its conclusion, the court in Seneca Meadows relied on the fact that the consent order at issue expressly provided that

> "[t]o the extent authorized under 42 U.S.C. Section 9613(f)(3)(B), by entering into this administrative settlement of liability, if any, for some or all of the response action and/or for some or all of the costs of such action, [the would-be contribution plaintiff, SMI] is entitled to seek contribution from any person except those who are entitled to contribution protection under 42 U.S.C. § Section 9613(f)(2)."

427 F. Supp. 2d at 286 (quoting consent order).  By contrast, the Order between Engelhard and EPA contains no such language.  The district court in Seneca Meadows also relied on a clause in the consent order that provides that "upon [the State's] acceptance of a final report [by the would-be contribution plaintiff] evidencing that no further remedial action (other than

---

<sup>4/</sup>(...continued)
lone sentence does not negate the specific and express provisions within the Order that reserve Engelhard's liability to EPA for response actions at the Plainville Facility.

monitoring) is needed, 'such acceptance shall constitute <u>a release and covenant not to sue</u> for each and every claim * * * which the Department has or may have pursuant to * * * <u>any other provision of statutory or common law</u> * * *.'" <u>Id.</u> (quoting consent order; second ellipsis inserted; second emphasis in original). Here, the Order between Engelhard and EPA contains no such release and covenant not to sue, and instead reserves Engelhard's liability "to respond to any Releases [of hazardous wastes or constituents] from the Facility, including those [Releases] addressed in [the] Order * * * ." Ex. 1, at 108.

Citing <u>United States v. Rohm & Haas Company</u>, 2 F.3d 1265, 1275 (3d Cir.1993),[5/] Engelhard maintains (Br. 17-18) that because United States may bring actions for the recovery of costs under Section 107(a)(4)(A) of CERCLA to recover costs that EPA incurs when it oversees corrective actions performed by private parties at an interim status facilities, Engelhard should be allowed to seek contribution at the Plainville Facility under Section 113(f)(3)(B) of CERCLA. Engelhard's assertions are mistaken, and its reliance on <u>Rohm & Haas</u> is misplaced.

"CERCLA differentiates between [1] actions for recovery of costs and [2] actions for contribution." <u>United Technologies Corp. v. Browning-Ferris Indus., Inc.</u>, 33 F.3d 96, 99 (1st Cir. 1994) (internal quotation marks and other punctuation omitted). Actions for recovery of costs are "actions brought by innocent parties that have undertaken cleanups (say, the federal, state or local government)." <u>Id.</u> at 99. Such actions arise solely under CERCLA Section 107(a), 42 U.S.C. § 9607(a), and "are distinct and do not overlap" with actions for contribution that arise under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f). <u>Id.</u> at 100; <u>see id.</u> at 103; <u>Cooper Indus.</u>,

---

[5/] <u>Rohm & Haas</u> was recently overruled on grounds that are unrelated to Engelhard's arguments. <u>See</u> <u>United States v. E.I. DuPont de Nemours & Co. Inc.</u>, 423 F.3d 161 (3d Cir. 2005) (en banc).

Inc. v. Aviall Servs., Inc., 543 U.S. 157, 163 n.3 (2004) ("Aviall") (stating that the two remedies are "clearly distinct").  Indeed, by contrast, the right to contribution under Section 113(f) of CERCLA is "a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.'"  United Technologies, 33 F.3d at 99 (quoting Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994)).[6]

These distinctions are significant.  Rohm & Haas was not a CERCLA contribution case and did not address the circumstances under which a private party may seek contribution under Section 113(f)(3)(B) of CERCLA.  The Third Circuit framed the question before it concisely:

> We are asked to decide whether costs incurred by the government in overseeing a hazardous waste cleanup performed and paid for by a private party pursuant to the Resource Conservation and Recovery Act ("RCRA") are recoverable under CERCLA's liability provision [42 U.S.C. § 9607(a)(4)(A)] which provides for recovery of all costs of removal and remedial action incurred by the United States.

2 F.3d at 1267.  Thus, while the private party in Rohm & Haas — much like Engelhard here — performed the corrective actions at an interim status facility pursuant to an administrative order on consent issued under RCRA Section 3008(h), the question before the Third Circuit was not whether that order resolved the private party's liability to EPA for response costs or response actions so as to trigger a right to contribution under CERCLA Section 113(f)(3)(B).  Instead, the question was whether EPA, having incurred costs of its own as a result of overseeing the private party's corrective actions, could recover such costs by bringing an action for recovery of costs under CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A).  See 2 F.3d at 1274-75.

---

[6] The general liability scheme for both types of actions is set forth under CERCLA Section 107(a), 42 U.S.C. § 9607(a).  See Acushnet Co. v. Mohasco Corp., 191 F.3d 69, 75 (1st Cir. 1999).

Significantly, the answer to that distinct question does not control whether a private party such as Engelhard has satisfied the conditions needed in order to bring a contribution claim under Section 113(f)(3)(B) of CERCLA. Unlike Section 107(a), Section 113(f)(3)(B) expressly requires the would-be contribution plaintiff to have resolved its liability to the United States or a State for response costs or response actions in an administrative or judicially approved settlement. 42 U.S.C. § 9613(f)(3)(B); <u>Aviall</u>, 543 U.S. at 167 ("to assert a contribution claim under § 113(f), a party must satisfy the conditions of either § 113(f)(1) or § 113(f)(3)(B)"). This express requirement must be satisfied by the would-be Section 113(f)(3)(B) plaintiff, apart from the scope or requirements of Section 107(a). Accordingly, the fact that the United States may recover costs under CERCLA Section 107(a)(4)(A) that were incurred in overseeing a RCRA corrective action does not obviate the need for the express requirements of Section 113(f)(3)(B) to have been satisfied before the would-be contribution plaintiff, such as Engelhard, may bring its contribution claims pursuant that provision.[7]

_____

[7] Engelhard's attempt to equate the issue presented in <u>Rohm & Haas</u> with the issue presented here also ignores the fact that CERCLA itself makes the United States responsible for enforcing CERCLA and recovering response costs on behalf of the Hazardous Substance Superfund, <u>i.e.</u>, on behalf of the public. While private parties play an important role in cleaning up hazardous waste sites, and are afforded the right under CERCLA to recoup all or some of their incurred cleanup costs, the statute does not afford them the same role as the United States. The government's right to bring actions for the recovery of public funds under CERCLA Section 107(a)(4)(A) is thus no basis to broaden (or narrow, for that matter) the circumstances under which private parties may seek contribution under CERCLA Section 113(f)(3)(B), regardless of the fact that the United States may be a potential defendant in the private party contribution action. <u>Cf.</u> <u>United States v. Kramer</u>, 757 F. Supp. 397, 414, 417 (D.N.J. 1991) ("[R]eimbursing the Government for its entire response costs in a section 107 action — <u>whatever its own liability as a PRP</u> — serves the important public policy of maintaining Superfund reserves for response costs at other sites.") (emphasis added); <u>United States v. Friedland</u>, 152 F. Supp. 2d 1234, 1249 (D. Colo. 2001) (same) ("'the government's role in the enforcement of CERCLA is greater than that of a mere private party'") (quoting <u>United States v. Hunter</u>, 70 F. Supp. 2d 1100, 1108 (C.D. (continued...)

To be clear, our argument is not that a party can never resolve liability for response actions in a RCRA corrective action order, or that a party can never seek contribution pursuant to Section 113(f)(3)(B) of CERCLA for costs incurred as a result of performing actions required by a RCRA Section 3008(h) order.  Rather, Engelhard's claim fails because the Administrative Order at issue <u>in this case</u> fails to resolve Engelhard's liability to EPA for response costs or response actions, as required by Section 113(f)(3)(B).[9]

Alternatively, Engelhard observes that the Order expressly requires Engelhard to undertake specific corrective actions at its Plainville Facility, and contends (Br. 24) that "'some or all' aspects of a 'response' action under CERCLA are resolved by the actions contemplated

---

[7](...continued)
Cal. 1999)).

[9] Since <u>Aviall</u> was decided by the Supreme Court in December 2004, a number of courts have held that settlements must resolve a potentially responsible party's <u>CERCLA</u> liability in order to qualify under Section 113(f)(3)(B).  <u>See, e.g.</u>, <u>Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.</u>, 423 F.3d 90, 95-96 (2d Cir. 2005); <u>ITT Indus., Inc. v. Borgwarner, Inc.</u>, No. 1:05-CV-674, 2006 WL 2460793, at **7-8 (W.D. Mich. Aug. 23, 2006); <u>Niagara Mohawk Power Corp. v. Consol. Rail Corp.</u>, 436 F. Supp. 2d 398, 402 (N.D.N.Y. 2006); <u>Seneca Meadows, Inc. v. ECI Liquidating, Inc.</u>, 427 F. Supp. 2d 279, 286-87 (W.D.N.Y. 2006); <u>ASARCO, Inc. v. Union Pac. R.R. Co.</u>, No. CV-4-2144, 2006 WL 173662, at **6-7 (D. Ariz. Jan. 24, 2006); <u>City of Waukesha v. Viacom Int'l, Inc.</u>, 404 F. Supp. 2d 1112, 1117 (E.D. Wis. 2005); <u>Ferguson v. Arcata Redwood Co., LLC</u>, No. C03-056325I, 2005 WL 1869445, at *4 (N.D. Cal. Aug. 5, 2005); <u>Cadlerock Props. Joint Venture, L.P. v. Schilberg</u>, No. 3:01CV896, 2005 WL 1683494, at *4 n.3 (D. Conn. July 19, 2005); <u>W.R. Grace & Co. – Conn. v. Zotos Int'l, Inc.</u>, No. 98-CV-838S(F), 2005 WL 1076117, at **4-5, 7 (W.D.N.Y. May 3, 2005); <u>Elementis Chems., Inc. v. T.H. Agric. & Nutrition LLC</u>, 373 F. Supp. 2d 257, 265 (S.D.N.Y. 2005).  If the Court finds that the Order constitutes a settlement that resolves liability for response actions or response costs, then it would have to address whether a settlement must resolve <u>CERCLA</u> liability in order to trigger a right to contribution under CERCLA Section 113(f)(3)(B).  This issue is not presented in Engelhard's motion, which does <u>not</u> contend that a purported settlement needs to resolve CERCLA liability in order to trigger a right to contribution under CERCLA Section 113(f)(3)(B).  The United States expressly reserves the right to litigate this issue at a later date if that should become necessary.

by" the Order. Relatedly, Engelhard asserts (Br 5, 13) that EPA has taken no administrative enforcement actions against Engelhard since the Order was issued in 1993. In effect, Engelhard seems to contend that even if the Order itself does not evince an intent to resolve Engelhard's liability for response actions, Engelhard's performance of the corrective actions specified in the Order, coupled with EPA's failure to object or require additional actions from Engelhard, effectively resolves Engelhard's liability for purposes of triggering the right to contribution under Section 113(f)(3)(B). Engelhard is mistaken.[9/]

Engelhard's theory is at odds with Section 113(f)(3)(B)'s plain language, which requires the would-be contribution plaintiff to have "resolved its liability to the United States * * * in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B) (emphasis added). As Engelhard itself explains (Br. 5), this Court should "look to the four corners of the [Order] to determine whether it falls within the intent and meaning of Section 113(f)(3)(B)." While the totality of the purported settlement as a whole must be considered, the Order itself must evince an intent to resolve liability. If it does not, then mere performance of the work required by the Order does not resolve liability. Here, the Order did not evince an intent to resolve liability. The Order contains no explicit expression, or even any indicia, of such intent. Because the Order concerns corrective action under RCRA at an interim status facility, one would expect that if a resolution of response action liability was intended, there would be an explicit expression of that

---

[9/] As a threshold matter, the factual assertions that form the basis of Engelhard's alternative theory under Section 113(f)(3)(B) are not properly before this Court. Specifically, Engelhard's assertions that it has performed corrective actions at the Plainville Facility, and that EPA has taken no administrative enforcement actions against Engelhard at the Facility since the Order was issued, are not supported by the contents of the Order itself, or by an affidavit required by Federal Rule of Civil Procedure 56(e). Accordingly, the Court should disregard these factual assertions.

intent. To the contrary, the Order contains extensive, broad reservations of Engelhard's liability to EPA, under RCRA and CERCLA. In short, Engelhard has not "resolved its liability" for response actions or response costs "in an administrative or judicially approved settlement," as required by CERCLA Section 113(f)(3)(B), and Engelhard's performance of corrective actions at the Plainville Facility does not change this fact.

Indeed, while Engelhard repeatedly emphasizes (Br. 8, 13, 15) that the relief it seeks here should be allowed because it is consistent with CERCLA's "objectives," the Supreme Court has recently clarified in the context of construing the scope of CERCLA Section 113(f)(1) that "'it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.'" Aviall, 543 U.S. at 167-68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998)). See also E.I. DuPont de Nemours & Co. v. United States, 460 F.3d 515, 543 (3d Cir. 2006) ("Congress sets policy. We steer clear of such matters, as our function is to interpret the statutes Congress enacts to reflect its policy choices.") (finding no implied right to contribution for private potentially responsible parties under CERCLA Section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B)) (citing Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 646 (1981)).

### B. The Administrative Order Does Not Resolve A Common Or Joint Liability, Shared By The United States.

Congress enacted Section 113(f)(3)(B) against a "venerable common-law backdrop," United States v. Bestfoods, 524 U.S. 51, 62 (1998), which Congress intended the courts to use in CERCLA cases.[10] Statutes are not to be construed as making an innovation upon that common

---

[10] See United Technologies, 33 F.3d at 99 n.7, 101; In re Bell Petroleum Servs., Inc., 3 F.3d 889,

(continued...)

law backdrop unless Congress' intent to do so is fairly expressed. <u>Robert C. Herd & Co. v.</u>

<u>Krawill Mach. Corp.</u>, 359 U.S. 297, 304-05 (1959).[11]  Here, the plain language of CERCLA

Section 113(f)(3)(B) is consistent with the traditional common law concept that the right to

contribution depends on the resolution of an underlying common or joint liability to a third party.

    In <u>United Technologies</u>, the First Circuit performed an exhaustive examination of

CERCLA Section 113's text, structure, and legislative history, and concluded that in Section

113(f) Congress "used the word 'contribution' in the conventional sense, and fully intended

courts to give the word its customary meaning."  33 F.3d at 101; <u>accord</u> <u>E.I. DuPont de Nemours</u>

<u>& Co. v. United States</u>, 297 F. Supp. 2d 740, 749-50 (D.N.J. 2003) (a CERCLA "contribution

action still must have all the indicia of a common law contribution action").  Accordingly,

contribution under CERCLA Section 113(f) is "a right 'of one who has discharged a <u>common</u>

<u>liability</u> to recover of another also liable, the aliquot portion which he ought to pay or bear.'"

<u>United Technologies</u>, 33 F.3d at 99 (quoting <u>Black's Law Dictionary</u> 399 (6th ed. 1990))

---

[10]/(...continued)
895 (5th Cir. 1993); <u>O'Neil v. Picillo</u>, 883 F.2d 176, 178-79 (1st Cir. 1989); H.R. Rep. No. 99-253(I), at 74, 80 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2856, 2862.

[11]/ <u>See also</u> <u>United Technologies</u>, 33 F.3d at 99 ("Under accepted canons of construction, legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal meaning.  This precept has special force when, as now, there is no persuasive evidence that Congress aspired to use a particular legal term in some unusual or unorthodox sense.") (internal citations omitted); <u>Field v. Mans</u>, 516 U.S. 59, 69 (1995) ("[C]ommon-law terms * * * [used in a statute] imply elements that the common law has defined them to include. Congress could have enumerated their elements, but Congress's contrary drafting choice did not deprive them of a significance richer than the bare statement of their terms.") (internal citations omitted).

(emphasis added).[12]  Therefore, Engelhard's Section 113(f)(3)(B) contribution claim in this case must be based on resolution of a common or joint liability to EPA, shared by the United States.

Here, Engelhard's CERCLA Section 113(f)(3)(B) claim is based on its legal obligations to perform the corrective action requirements contained in the RCRA Section 3008(h) Order that was issued by EPA.  Such legal obligations are not shared by the United States.  The Order requires Engelhard alone to perform corrective actions, and does not compel the United States to perform any corrective actions.  Hence, the Order does not create a liability or a legal obligation to EPA for the performance of corrective action that is shared by both Engelhard and the United States.[13]

---

[12] See also United States v. Davis, 20 F. Supp. 2d 326, 337 (D.R.I. 1998) ("Contribution [under CERCLA] * * * requires a showing that the party seeking contribution already has paid more than its fair share of the common liability.") (emphasis added) (citing United Technologies, 33 F.3d at 100), aff'd in relevant part, 261 F.3d 1 (1st Cir. 2001); Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 350-51 (6th Cir. 1998) (a "primary requisite[] of the equitable right to contribution * * * and of the corresponding right and obligation at law, [is] * * * a situation wherein the parties are * * * under some common obligation or burden) (citing 18 Am. Jur. 2d Contribution § 9) (emphasis added).  Cf. Med. Prof'l Mut. Ins. Co. v. Breon Labs., Inc., 966 F. Supp. 120, 123 (D. Mass. 1997) ("[T]he plain language of Mass. Gen. L. ch. 231B, section 3(d) requires the Plaintiffs to discharge the common liability before they may seek contribution.  It is the failure to establish this critical element that renders the Plaintiffs' contribution claim insufficient.") (emphasis added), vacated on other grounds in unpubl. op. 181 F.3d 80 (1st Cir. 1999).

[13] Engelhard maintains (Br. 5, 20, 23) that its performance of corrective actions at the Facility have been voluntary.  We dispute that legal characterization of Engelhard's actions.  However, assuming arguendo that Engelhard's legal assertions are correct, they demonstrate that Engelhard lacks a right to contribution.  Traditionally, one who makes a voluntary payment cannot seek reimbursement from others by way of contribution.  Restatement (Second) of Torts § 886A, cmt. e (1979) (equity rule provides that contribution "will not be allowed in favor of a volunteer"); 18 Am. Jur. 2d Contribution § 10 (1985) (same).  Contribution at common law is a derivative cause of action which requires that the contribution plaintiff, in order to obtain a judgment for contribution, discharge a common liability of itself and the contribution defendants to the original plaintiff.  Only by doing so can it assure the contribution defendant that it will not face

(continued...)

Moreover, while Section 3008(h)(1) of RCRA authorizes EPA to issue and enforce corrective action orders at interim status facilities against parties who receive them, that provision does not by itself make parties liable to EPA to perform corrective action.  Section 3008(h)(1) of RCRA provides, in pertinent part:

> Whenever on the basis of any information [EPA] determines that there is or has been a release of hazardous waste into the environment from a[n interim status] facility * * * [EPA] may issue an order requiring corrective action or such other response measure as [EPA] deems necessary to protect human health or the environment[.]

42 U.S.C. § 6928(h)(1).  The very statutory provision authorizing EPA to issue corrective action orders at interim status facilities is not predicated on, or triggered by, any past or ongoing violation of any law or regulation, much less any conduct at all by the order recipient.  See USG Corp. v. Brown, No. 89 C 2874, 1994 WL 654488, at *5 (N.D. Ill. Nov. 17, 1994) ("Nowhere does the statute say that a corrective action order is predicated on a previous violation of environmental law.").[14]  As such, the legal obligation or liability to perform corrective action at interim status facilities flows not from RCRA Section 3008(h)(1) itself, but from EPA's issuance of an administrative order pursuant to that provision.  Apart from EPA's issuance of such an order, there is no liability or legal obligation to perform corrective action at interim status facilities.  Here, only Engelhard has been issued such an order.

---

[13](...continued)
double liability.

[14] In fact, EPA may issue such orders upon the finding that there is or has been a release of hazardous waste into the environment.

-15-

Consequently, the Administrative Order has not resolved a common or joint liability, shared by the United States, to perform corrective action at the Facility. Accordingly, Engelhard's motion for summary judgment must be denied.

## II.    ENGELHARD'S FOURTH CAUSE OF ACTION IS GOVERNED BY THE THREE-YEAR STATUTE OF LIMITATIONS SET FORTH IN SECTION 113(g)(3)(B) OF CERCLA.

Even assuming the Order resolves Engelhard's liability for response costs or response actions, and that the United States shares a common liability with Engelhard for the performance of corrective actions, Engelhard's claim is governed by the three-year statute of limitations set forth in CERCLA Section 113(g)(3)(B), 42 U.S.C. § 9613(g)(3)(B). Thus, Engelhard's motion for summary judgment on this issue must be denied.

Section 113(g)(3) of CERCLA reads, in full:

**(3)    Contribution**

No action for contribution for any response costs or damages may be commenced more than 3 years after—

**(A)** the date of judgment in any action under this chapter for recovery of such costs or damages, or

**(B)** the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3). As the First Circuit has recognized, this provision's express reference to "action[s] for contribution" indicates that it provides the applicable statute of limitations for contribution claims brought under Section 113(f) of CERCLA. See United Technologies, 33 F.3d at 99-100. Indeed, there are two other subsections within Section 113(g) of CERCLA that contain statutes of limitation — Sections 113(g)(1) and 113(g)(2) — and neither of those provisions refers to actions for contribution. See 42 U.S.C. §§ 9613(g)(1), (g)(2). Based on

-16-

these distinctions in the statutory language, as well as an exhaustive analysis of CERCLA legislative history and purpose, the First Circuit has held that Section 113(g)(2) does <u>not</u> provide the statute of limitations for contribution claims brought pursuant to Section 113(f).  <u>See</u> <u>United Technologies</u>, 33 F.3d at 99-103.  In fact, the First Circuit held that Section 113(g)(2) exclusively provides the statute of limitations for "action[s] for recovery of costs," and that those types of claims "are distinct and do no overlap" with actions for contribution brought under Section 113(f).  <u>Id.</u> at 99-100.

Engelhard asserts (Br. 19, 24) that because the issuance of a RCRA Section 3008(h) order is not listed as one of the "triggering" events under Section 113(g)(3)(B), no statute of limitations applies to its Section 113(f)(3)(B) claim.  Engelhard chiefly argues (Br. 22) that the Supreme Court's decision in <u>Aviall</u> recognized the absence of any statute of limitations period for purely voluntary cleanups, and that the Court's decision "creates some uncertainty regarding the appropriate statute of limitations to be applied for contribution claims that fall outside the specific instances described in Section 113(g)(3)."  Engelhard misreads <u>Aviall</u>, and its reading of Section 113(g)(3)(B) is contrary to congressional intent and the well-established rules that govern the applicability of statutes of limitation for express federal causes of action.

The question presented in <u>Aviall</u> was whether a private responsible party that had not been sued under Section 106 or 107 of CERCLA to undertake or pay for a cleanup of hazardous wastes could nevertheless seek contribution under Section 113(f)(1) of CERCLA from other liable parties.  543 U.S. at 160-61.  In concluding that Section 113(f)(1) contribution claims could not be brought except "during or following" a Section 106 or 107 civil action, <u>see id.</u> at 166-68, the Court noted that its "conclusion follows not simply from § 113(f)(1) itself, but also

-17-

from the whole of § 113." 543 U.S. at 167. The Court explained that CERCLA contains "two express avenues for contribution" — Section 113(f)(1) and Section 113(f)(3)(B) — and "two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, § 113(g)(3)(B)." Id. (emphasis added). This parallel structure had significant implications:

> Notably absent from § 113(g)(3) is any provision for starting the limitations period if a judgment or settlement never occurs, as is the case with a purely voluntary cleanup. The lack of such a provision supports the conclusion that, to assert a contribution claim under § 113(f), a party must satisfy the conditions of either § 113(f)(1) or § 113(f)(3)(B).

Id. Thus, Section 113(g)(3)'s structure as compared to that of Sections 113(f)(1) and 113(f)(3)(B) suggested that no contribution claim could be brought under Section 113(f) at all unless the requirements of either Section 113(f)(1) or (f)(3)(B) had been satisfied.

Critical to the statute of limitations issue presented in this case, however, is that the Court's analysis started with the premise that all contribution claims that arise under Section 113(f) are governed by some statute of limitation set forth in CERCLA — specifically, by either Section 113(g)(3)(A) or Section 113(g)(3)(B). The Court did not hold or suggest that there is a category of Section 113(f) claims that are not governed any statute of limitations provision. Accordingly, Section 113(g)(3)(B)'s three-year limitations period governs Engelhard's contribution claim under Section 113(f)(3)(B). The contrary interpretation — that no limitations period should govern contribution claims brought under Section 113(f)(3)(B) if such claims are

-18-

based on settlements other than the types specified in Section 113(g)(3)(B) — is plainly at odds with <u>Aviall</u>'s analysis of CERCLA Section 113's structure.[15]

Engelhard mistakenly argues that the First Circuit's decision in <u>American Cyanamid Co. v. Capuano</u>, 381 F.3d 6 (1st Cir. 2004), provides a basis to construe Section 113(g)(3)(B) narrowly, so as to preclude its application to Section 113(f)(3)(B) claims that are not based on one of the types of settlements specified under Section 113(g)(3)(B).  In fact, <u>Capuano</u> held that Section 113(g)(3)<u>(A)</u>'s three-year limitations period did not begin to run against a contribution claim for groundwater-related response costs on the date that an earlier judgment was reached in a Section 107(a) governmental enforcement action relating to the recovery of soil-related response costs at the same site.  <u>See</u> 381 F.3d at 12-15.  The court emphasized the fact that the groundwater-related response costs had not even been contemplated, much less incurred, at the time of the original judgment in the governmental enforcement action.  <u>Id.</u>  Thus, <u>Capuano</u> did not narrowly construe Section 113(g)(3)<u>(B)</u>, or provide a basis for doing so.  Indeed, <u>Capuano</u> recognized that Congress enacted CERCLA's statute of limitations provisions to "'assure that evidence concerning liability and response costs is fresh and to provide a measure of finality to affected responsible parties.'"  <u>Id.</u> (quoting H.R. Rep. No. 99-253(I), at 15 (1985)).  Under Engelhard's theory — applying <u>no</u> statute of limitations to its claim — these Congressional goals recognized by the First Circuit would be frustrated.

Furthermore, Engelhard's argument in favor of a narrow, or strict construction of Section 113(g)(3) cannot be squared with the general body of law pertaining to federal statutes of

---

[15] We do not contend that actions for contribution under CERCLA Section 113(f)(3)(B) may be based only on the three types of settlements specified in CERCLA Section 113(g)(3)(B).

limitations, which "do[es] not ordinarily assume that Congress intended that there be no time

limit on actions at all" for express federal causes of action.  Agency Holding Corp. v. Malley-

Duff & Assocs., Inc., 483 U.S. 143, 146-47 (1987); see DelCostello v. Int'l Bhd. of Teamsters,

462 U.S. 151, 158-59 (1983); Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946).  Indeed, the

Supreme Court has repeatedly emphasized that because Congress often fails to provide a statute

of limitations provision for express causes of action, the judicial task is to borrow statutes of

limitations from closely analogous sources of law, not conclude that no statute of limitations

governs such claims.  See North Star Steel Co. v. Thomas, 515 U.S. 29, 33 (1995) ("A look at

this Court's docket in recent years will show how often federal statutes fail to provide any

limitations period for federal causes of action they create, leaving courts to borrow a period,

generally from state law, to limit these claims."); DelCostello, 462 U.S. at 158 ("As is often the

case in federal civil law, there is no federal statute of limitations expressly applicable to this suit.

* * * [O]ur task is to 'borrow' the most suitable statute or other rule of timeliness from some

other source").  This rule of construction for statutes of limitations — borrowing from other

sources — is thus different than, but does not conflict with, the rule of construction that applies

when construing the requirements that must be met in order to bring an express federal cause of

action.  See, e.g., Aviall, 543 U.S. at 167-68 (concluding that Section 113(f)(1) of CERCLA is

properly construed according to its express terms).  The two rules can be easily reconciled, given

Congress's frequent failure to provide statutes of limitations provisions for express causes of

action.

       Section 113(g)(3)(B) clearly provides the most closely analogous statute of limitation for

Section 113(f)(3)(B) contribution claims.  Section 113(g)(3)(B) specifically addresses

contribution claims under Section 113(f)(3)(B) of CERCLA, including those based on administrative orders issued by EPA to potentially responsible parties.  Section 113(g)(3)(B) is actually designed to balance interests identical to those at issue in <u>any</u> action for contribution arising under Section 113(f)(3)(B) of CERCLA, whether or not the action is based on a settlement expressly identified in Section 113(g)(3)(B).

The only other possible statute of limitation, which is set forth in CERCLA Section 113(g)(2), is not applicable to CERCLA Section 113(f) contribution claims, <u>see</u> <u>United Technologies</u>, 33 F.3d at 99-103, much less <u>more analogous</u> to such claims than the limitations provision in Section 113(g)(3)(B).  Section 113(g)(2) provides, in relevant part:

> **(2)  Actions for recovery of costs**
>
> <u>An initial action for recovery of the costs referred to in section 9607 of this title</u> [42 U.S.C. § 9607] must be commenced—
> **(A)** for a removal action, within 3 years after completion of the removal action, * * *; and
> **(B)** for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

42 U.S.C. § 113(g)(2) (emphasis added).  The First Circuit, in <u>United Technologies</u>, held that Section 113(g)(2) governs actions for the recovery of costs brought under Section 107, and that such actions "are distinct and do not overlap" with actions for contribution filed under Section 113(f).  <u>See</u> 33 F.3d at 99-101; <u>see also</u> <u>id.</u> at 103 ("CERCLA's text indicates that contribution and cost recovery actions are distinct, non-overlapping anodynes"); <u>Aviall</u>, 543 U.S. at 163 n.3 (explaining that the two remedies are "clearly distinct").  The First Circuit also held that Section 113(g)(3) provides the exclusive statute of limitation for actions brought by potentially

responsible parties under Section 113(f)(1).  United Technologies, 33 F.3d at 101-03.  In

addition, the Supreme Court in Aviall characterized Section 113(g)(3)(B) as the limitation

provision which "correspond[s]" to Section 113(f)(3)(B) actions.  543 U.S. at 167.  Together, the

analyses by the First Circuit and the Supreme Court indicate that Section 113(g)(3)(B), not

Section 113(g)(2), fits more closely with Section 113(f)(3)(B) contribution claims.

A direct comparison of the language of Sections 113(g)(2) and 113(g)(3)(B) also shows

that Section 113(g)(3)(B) is the most closely analogous provision for any contribution claim

filed under Section 113(f)(3)(B).  Section 113(g)(3) is specifically entitled "Contribution" and its

text states that "[n]o action for contribution" may be commenced more than three years after the

events listed in that Section.  42 U.S.C. § 9613(g)(3) (emphasis added).  Section 113(g)(2), by

contrast, is entitled "Actions for recovery of costs" and makes no reference at all to contribution

actions.  Id. § 9613(g)(2); see United Technologies, 33 F.3d at 100 (Section 113(g)(2)'s

reference to actions for "'recovery of the costs'" is "reiterative of the subsection heading

'Actions for recovery of costs'"); H.R. Conf. Rep. No. 99-962, at 223 (1986), reprinted in 1986

U.S.C.C.A.N. 3276, 3316 (stating that "section 113(g)(2) of CERCLA" is "the statute of

limitations for civil actions for the recovery of response costs").  As such, Section 113(g)(2), by

its terms, does not even apply to contribution claims arising under CERCLA, much less offer the

most closely analogous provision for contribution claims arising under Section 113(f)(3)(B).

Therefore, Engelhard's CERCLA contribution claim is governed by the three-year statute

of limitations set forth in CERCLA Section 113(g)(3)(B), 42 U.S.C. § 9613(g)(3)(B).

Consequently, Engelhard's motion for summary judgment on the issue of the governing statute

of limitations must be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Engelhard's motion for declaratory and summary judgment.  A proposed order is attached hereto.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division


Dated: September 29, 2006

/s/ Stephen E. Crowley
STEPHEN E. CROWLEY
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C.  20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

ANTON P. GIEDT
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA  02210
Tel:  (617) 748-3309
Fax: (617) 748-3967
anton.giedt@usdoj.gov

*Attorneys for the United States*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____ )
                                        )
ENGELHARD CORPORATION,                  )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        **Civil Action No. 05-11241-JLT**
                                        )
UNITED STATES OF AMERICA, <u>et al.</u>,    )        (*Electronic filing*)
                                        )
            Defendants.                 )
                                        )
_____)

### <u>[PROPOSED]</u> **ORDER**

Upon consideration of the Plaintiff's Motion For Declaratory and Summary Judgment and Defendants' opposition thereto, the Court being fully advised in the grounds for Plaintiff's Motion, it is hereby ORDERED that said Motion be DENIED.


Dated: _____                    _____
                                                The Honorable Joseph L. Tauro
                                                United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 29th day of September 2006, served a true and correct copy of the foregoing

1)      UNITED STATES'MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR DECLARATORY AND SUMMARY JUDGMENT, and

2)      PROPOSED ORDER,

on Plaintiff's counsel of record by electronic filing, as follows:

Ronald L. Kuis, Esq.
12 Scenery Road
Pittsburgh, PA 15221
rlkuis@aol.com

David P. Rosenblatt
Paul R. Mastrocola
Burns & Levinson, LLP
125 Summer Street
Boston, MA  02110
Pmastrocola@burnslev.com
Drosenblatt@burnslev.com

/s/ Stephen E. Crowley
STEPHEN E. CROWLEY
Attorney for the United States