# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ENGELHARD CORPORATION, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **Civil Action No. 05-11241-JLT** |
| UNITED STATES OF AMERICA, <u>et al.</u>, | ) ) | (*Electronic filing*) |
| Defendants. | ) ) ) | |

### UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FOURTH CAUSE OF ACTION

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

STEPHEN E. CROWLEY
U.S. Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, D.C.  20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

ANTON P. GIEDT
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA  02210
Tel:  (617) 748-3309
Fax: (617) 748-3967
anton.giedt@usdoj.gov

Dated: October 13, 2006                *Attorneys for the United States*

## ARGUMENT

I. **THE RIGHT TO CONTRIBUTION UNDER SECTION 113(f)(3)(B) OF CERCLA DEPENDS UPON A RESOLUTION OF A COMMON OR JOINT LIABILITY TO A THIRD PARTY.**

In our opening brief in support of our motion for judgment on the pleadings, we demonstrated (U.S. Br. 12-15) that Engelhard's Section 113(f)(3)(B) contribution claim must be dismissed because Engelhard has not resolved a common or joint liability, shared by the United States, to perform corrective action at Engelhard's Plainville Facility.  In response, Engelhard fails to dispute the absence of a common liability between the United States and Engelhard to perform corrective action at the Facility.  Instead, Engelhard contends (Opp'n Br. 3) that there is no requirement in Section 113(f)(3)(B) to resolve a common liability, on the theory that "no definition found in CERCLA provides guidance on Section 113(f)(3)(B) other than the definition of a 'response' action found in Section 101(25)."  Engelhard is wrong.

The First Circuit has held that in Section 113(f) of CERCLA Congress "used the word 'contribution' in the conventional sense, and fully intended courts to give the word its customary meaning." United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 101 (1st Cir. 1994).  See also United States v. Bestfoods, 524 U.S 51, 62 (1998) (CERCLA was enacted against a "venerable common-law backdrop").  Accordingly, after examining the common law, the First Circuit held that contribution under Section 113(f) is "a right of one who has discharged a <u>common liability</u> to recover of another also liable, the aliquot portion which he ought to pay or bear." United Techs., 33 F.3d at 99 (emphasis added; internal quotation marks omitted).  Therefore, the Court should dismiss Engelhard's Section 113(f)(3)(B) contribution claim because Engelhard has not resolved a common or joint liability to perform corrective actions at

-1-

the Facility.

## II. THE 1993 ADMINISTRATIVE ORDER IS NOT AN ADMINISTRATIVE SETTLEMENT THAT RESOLVES LIABILITY FOR RESPONSE COSTS OR RESPONSE ACTIONS, AS EXPRESSLY REQUIRED BY SECTION 113(f)(3)(B).

In our opening brief, we demonstrated that a number of factors, including several express provisions within the 1993 RCRA Administrative Order on Consent ("1993 Order"), compel the conclusion that the 1993 Order is not an administrative settlement that resolves liability for response costs or response actions, triggering contribution rights under CERCLA Section 113(f)(3)(B). See U.S. Br. 15-18. In response, Engelhard side-steps the plain statutory language and express terms of the 1993 Order, arguing that performance of corrective actions by the would-be contribution plaintiff, standing alone, satisfies the requirements for a claim under Section 113(f)(3)(B). See Opp'n Br. 5-6, 10. Engelhard's argument should be rejected.

Section 113(f)(3)(B)'s plain language requires the party suing under that provision to have "resolved its liability to the United States . . . for some or all of a response action or some or all of the costs of such action in an administrative or judicially approved settlement[.]" 42 U.S.C. § 9613(f)(3)(B). Thus, in this case, the 1993 Order must evince an intent to resolve liability for response costs or response actions. If it does not, then mere performance of the work required by the 1993 Order does not resolve such liability. Here, the 1993 Order does not evince an intent to resolve such liability. Indeed, the 1993 Order for RCRA corrective action contains extensive, broad reservations of Engelhard's liability under both RCRA and CERCLA for both response costs and response actions,[1] contains no covenant not to sue or substantially similar

---

[1] Notably, Engelhard's brief in opposition completely fails to mention the express reservations of liability for response actions and response costs.

provision, and lacks any other indicia of an intent to resolve liability. Accordingly, Engelhard has not "resolved its liability" for response actions or response costs, as expressly required by CERCLA Section 113(f)(3)(B), and Engelhard's performance of corrective actions at its Facility does not change this fact.[2]

For this same reason, Engelhard is mistaken in arguing (Opp'n Br. 10) that discovery or presentation of evidence is needed for the Court to determine whether the "actions performed by Engelhard under the [1993 Order] . . . resolve 'some or all of a response action' at the Plainville facility." The actions that have been or will be undertaken by Engelhard at its Facility are beside the point, because those actions were or will be undertaken pursuant to the 1993 Order, and the 1993 Order does not evince an intent to resolve Engelhard's liability for any response actions.[3] Indeed, the United States seeks judgment on the pleadings for failure to state a claim, and thus,

---

[2] Fundamentally, whether a particular written instrument reflects an "administrative or judicially approved settlement" in which a person "has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action" requires case-specific analysis. Thus, while Engelhard cites Central Illinois Public Service Co. v. Industrial Oil Tank & Line Cleaning Service, 730 F. Supp. 1498, 1509 (W.D. Mo. 1990), to argue that courts have "allowed a CERCLA contribution claim to go forward where plaintiffs had entered into an administrative settlement with [EPA]," Opp'n Br. 12, Central Illinois is of little precedential value here. There the court found that an administrative consent order was a settlement that resolved the plaintiffs' liability to EPA under CERCLA because, inter alia, the order "include[d] a covenant not to sue." 730 F. Supp. at 1503. By contrast, the 1993 Order between EPA and Engelhard does not contain a covenant not to sue, or similar provision, or any other indicia of an intent to resolve liability for response costs or response actions.

[3] Thus, while Engelhard asserts (Opp'n Br. 15) that the 1993 Order requires Engelhard to perform work that constitutes a "response action" within the meaning of Sections 101(23) and 101(25) of CERCLA, that assertion misses the point. Indeed, for purposes of the present motion, the United States does not dispute that the work undertaken by Engelhard pursuant to the 1993 Order constitutes a "response action" under CERCLA. We instead contend that the 1993 Order does not resolve Engelhard's liability to the United States for any response costs or response actions.

the Court accepts as true all of the well-pled factual allegations in Engelhard's Complaint. As such, the instant motion presents a purely legal issue that is fully ripe for adjudication under Rule 12: Whether Engelhard has resolved its liability for response costs or response actions to the United States in an administrative settlement, so as to give rise to contribution under CERCLA Section 113(f)(3)(B). The Court can and should decide that purely legal question today, based the pleadings and the contents of the 1993 Order,[4] and dismiss Engelhard's Fourth Cause of Action for failure to state a claim.

### III. POLICY CONSIDERATIONS CANNOT SERVE TO AUTHORIZE SECTION 113(f)(3)(B) CONTRIBUTION CLAIMS THAT DO NOT MEET THE REQUIREMENTS OF SECTION 113(f)(3)(B).

Engelhard asserts (Opp'n Br. 18) that it has a right to contribution under Section 113(f)(3)(B) because to hold otherwise "would discourage potentially responsible parties from voluntarily initiating cleanup at a site in need of removal or remedial action, contrary to the spirit of CERCLA and all protective environmental laws." Similar pleas were made before the Supreme Court in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004), by a party that sought contribution pursuant to Section 113(f)(1) of CERCLA, even though the party had not satisfied the express requirements of Section 113(f)(1) because it had not been sued under CERCLA Sections 106 or 107. The Supreme Court held that the party could not seek contribution under Section 113(f)(1), see 543 U.S. at 166-68, emphasizing that "'it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.'" Id. at 167-68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79

---

[4] In deciding a Rule 12(c) motion, the Court may accept as true all matters that are integral to the pleadings, such as the 1993 Order. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993); Compl. ¶¶ 56-57, 80-82 (relying on terms and existence of 1993 Order as the basis for claims).

(1998)).  See also E.I. DuPont de Nemours & Co. v. United States, 460 F.3d 515, 543 (3d Cir. 2006) ("Congress sets policy.  We steer clear of such matters, as our function is to interpret the statutes Congress enacts to reflect its policy choices.").  Accordingly, Engelhard's "policy considerations" cannot serve to authorize contribution actions under Section 113(f)(3)(B) unless the express requirements of that provision have been satisfied.

Furthermore, even if policy considerations were somehow relevant, they do not support Engelhard's position.  As the Third Circuit has recently explained, the legislative history and structure of CERCLA show that the dominant congressional intent was to encourage settlements with the government, rather than allow parties that had not been sued by or settled with the government to seek contribution for their voluntary response costs.  See DuPont, 460 F.3d at 536-37.  Thus, the statute was crafted with incentives for entering into and resolving liability through settlements with the government, and there is no basis to conclude that Congress intended for private parties to sue for contribution where they had not been sued by the government, or settled their liability with the government.[5]

A particularly egregious example of overreaching to achieve a desired policy result is Engelhard's suggestion (Opp'n Br. 21-23) that its claim should be allowed because otherwise EPA might exercise its enforcement discretion to benefit federal agencies that are potentially

---

[5] Contrary to Engelhard's assertions (Opp'n Br. 21-22), the interpretation urged by the United States will not create a broad exemption from liability under CERCLA in favor of the United States.  The United States has been and will continue to be subject to contribution actions under CERCLA whenever contribution plaintiffs satisfy the requirements set forth under Sections 113(f)(1) or (f)(3)(B).  Indeed, the likely outcome of courts adopting the United States' interpretation is that parties will be encouraged to enter into settlements, with States or the United States, that meet the requirements of Section 113(f)(3)(B) — a goal that was sought by Congress.

responsible parties ("PRPs") under CERCLA, and such agencies might thereby escape paying their equitable share of liability. Engelhard turns the proper analysis on its head, by suggesting that in order to ensure the availability of contribution against a federal PRP, a contribution action must be recognized under Section 113(f)(3)(B) against federal <u>and</u> non-federal PRPs alike, regardless of whether the requirements of Section 113(f)(3)(B) have been satisfied. Further, the assumption that the United States has or will refrain from bringing lawsuits or settling with private parties — in hopes of avoiding the government's exposure to contribution claims — is utterly without factual support. The government has not hesitated to bring suit under Sections 106 or 107, or to enter into administrative or judicial settlements, at sites where there are federal PRPs.[6]

Relatedly, Engelhard erroneously argues (Opp'n Br. 21) that the waiver of sovereign immunity from CERCLA liability in Section 120(a)(1), 42 U.S.C. § 9620(a)(1), affirmatively supports the right to contribution under Section 113(f)(3)(B). In pertinent part, Section 120(a)(1) provides:

> Each department, agency, and instrumentality of the United States . . . shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title.

42 U.S.C. § 9620(a)(1). This waiver of immunity provides only that the United States is subject to claims arising under CERCLA to the same extent as private parties. It does not define or

---

[6] See, e.g., 61 Fed. Reg. 54,215 (Oct. 17, 1996); 65 Fed. Reg. 32,123 (May 22, 2000); 67 Fed. Reg. 8557 (Feb. 25, 2002); 69 Fed. Reg. 51,326 (Aug. 18, 2004); 69 Fed. Reg. 67,607 (Nov. 18, 2004); 70 Fed. Reg. 8111 (Feb. 17, 2005). In addition, a CERCLA contribution claim may be triggered by a qualifying civil action initiated by, or a qualifying settlement with, a State. Therefore, the availability of contribution is not solely dependent on federal enforcement action.

expand the availability of claims arising under Section 113(f)(3)(B) or any other provision of the statute.  Furthermore, it is well-established that waivers of sovereign immunity are to be narrowly construed, according to their express terms.  See Marina Bay Realty Trust LLC v. United States, 407 F.3d 418, 422 (1st Cir. 2005).  This rule counsels against interpreting the waiver of immunity under Section 120(a)(1) in a broad manner, so as to support finding a right to contribution that does not meet the requirements of  Section 113(f)(3)(B).[7]

### IV.     THE TOLLING AGREEMENTS ON STATUTE OF LIMITATIONS ARE IMMATERIAL TO THE RESOLUTION OF THE UNITED STATES' MOTION.

In arguing that Engelhard's Fourth Cause of Action is subject to, and barred by, the three-year statute of limitations set forth under CERCLA Section 113(g)(3), we pointed out (U.S. Br. 18 n.18) that the United States had entered into several tolling agreements with Engelhard during 2002-04, and that such agreements did not save Engelhard's Fourth Cause of Action.  Engelhard now contends (Opp'n Br. 5, 9) that our failure to actually present copies of the agreements to the Court requires denial of the United States motion.  Engelhard is mistaken.

First, the tolling agreements are not referred to in the Complaint, and for purposes of

---

[7] Engelhard suggests (Opp'n Br. 23) that because the nuclear fuels production work that it performed at the Facility — pursuant to federal contracts that it actively sought from the government during the 1950s — was "important . . . in the overall national defense program," and benefitted the public as a whole, Engelhard should be able to seek contribution regardless of whether the express requirements of Section 113(f)(3)(B) have been met.  Engelhard's policy argument should be directed to Congress, not to this Court.  In the future, Congress may well decide to amend CERCLA, by expanding the right for federal contractors such as Engelhard to seek contribution from the United States or other parties, but that is no basis for this Court to ignore the express preconditions for contribution that Congress has currently provided under Section 113(f)(3)(B).  Moreover, the problem with Engelhard's theory is that it provides no limit on the scope of contribution rights under CERCLA, since presumably every defense-related contract is "important" to the government's national defense program, and benefits the public as a whole.

seeking dismissal under Rule 12, the United States is not required to present copies of the tolling agreements to the Court.[8]  Of course, Engelhard is free to present the tolling agreements in an effort to defeat the United States' motion; but the United States' failure to present copies of the agreements is no basis to deny the United States' motion.  Second, the time periods covered by the agreements, when added together, only toll the statute of limitations from April 2002 through February 2005, and the agreements each expressly provide that "the United States reserves the right to assert, plead, or otherwise raise any defense based on the running of any applicable statute of limitations prior to the Tolling Period[s]."  See Exs. A-D, at ¶ 3, to Affidavit Of Ronald L. Kuis dated Sept. 29, 2006 (Dkt. Nos. 34-1, 2).  In short, the tolling agreements are immaterial because they do not bar statute of limitations defenses, such as the one advanced here, that are based on the running of the limitations prior to the 2002-05 time period.[9]

V.  **THE FOURTH CAUSE OF ACTION IS GOVERNED BY SECTION 113(g)(3)(B)'s THREE-YEAR LIMITATIONS PERIOD.**

Engelhard observes (Opp'n Br. 24, 26) that no court has held that Section 113(g)(3)(B)'s limitations period is triggered by the issuance of an administrative settlement that is not one of the types of administrative settlements expressly identified in Section 113(g)(3)(B).  However,

---

[8] We acknowledge that our opening brief failed to indicate the existence of the fourth and final tolling agreement, which ran from May 1, 2004, to February 13, 2005.  See Ex. D to Aff. Of Ronald L. Kuis (09/29/06) (Dkt. Nos. 34-1, 2).  That agreement only covers nine and one-half months, however, and does not change the outcome of the United States' motion.  Undersigned counsel for the United States inadvertently failed to identify it in the United States' opening brief because he did not locate a copy of the agreement in his case files, and was otherwise unaware of it because it was negotiated and signed by the United States' previous counsel of record.

[9] In any event, the cumulative length of the tolling periods covered by the agreements — approximately two years and ten months — still leaves Engelhard's claim late by several years, since Engelhard only had until September 9, 1996, to file a timely claim.

-8-

we are unaware of any decision since the Supreme Court's decision in Aviall that has addressed this issue, much less any post-Aviall holding that no limitations period applies to a Section 113(f)(3)(B) contribution claim that is based on a type of settlement other than those expressly identified in Section 113(g)(3)(B). This distinction is significant. As we explained in our opening brief (U.S. Br. 21-22), in reaching its holding in Aviall, the Supreme Court presumed that for contribution actions arising under Sections 113(f)(1) and 113(f)(3)(B), there are, respectively, two "corresponding" statute of limitations provisions — Sections 113(g)(3)(A) and 113(g)(3)(B). Thus, the pre-Aviall decisions concerning statutes of limitation, insofar as they held that no statute of limitations period governs certain Section 113(f)(3)(B) claims, should no longer be followed.[10] Indeed, even without the Aviall Court's analysis of Section 113, the conclusion by some courts — that no limitations period governs Section 113(f)(3)(B) claims that are based on settlements that are not expressly identified in Section 113(g)(3)(B) — ignores the well-recognized fact that Congress "often" fails to provide statute of limitation provisions that are expressly applicable to express federal causes of action, and that consequently the judicial task is to "borrow" a limitations period from the most closely analogous statute of limitations provision, rather than conclude that no limitation period applies at all. North Star Steel Co. v. Thomas, 515 U.S. 29, 33-34 (1995).

In the alternative, Engelhard mistakenly relies (Opp'n Br. 25-27) on Sun Company, Inc. (R & M) v. Browning-Ferris, Inc., 124 F.3d 1187, 1192-94 (10th Cir. 1997), which held that all

---

[10] Aviall did not explicitly or implicitly overrule, or call into question, the decisions by a number of circuit courts of appeal that held that Sections 113(f)(1) and (f)(3)(B) provide the exclusive avenues under which PRPs may seek contribution. See DuPont, 460 F.3d at 532. In other words, nothing in Aviall calls into question the reasoning of the numerous pre-Aviall courts of appeal decisions that limited PRPs to contribution claims under Section 113(f).

Section 113(f) contribution claims arise under Section 107, and are thus in the nature of "initial actions for the recovery of . . . costs," and therefore governed by Section 113(g)(2)'s longer limitation periods.

Sun Company rests on an assumption that is contrary to the law of this Circuit and the Supreme Court's decision in Aviall. In United Technologies, the First Circuit held that initial actions for the recovery of costs arise under Section 107 alone, and that such claims "are distinct and do not overlap" with Section 113(f) contribution claims. 33 F.3d at 100. See also Aviall, 543 U.S. at 163 n.3 (noting that the two claims are "clearly distinct"). The First Circuit explained that Section 107 provides a cause of action to governments or "innocent parties" for "full recovery" of response costs, while Section 113 governs actions by a "non-innocent party" for contribution. United Techs., 33 F.3d at 99-100. The court reasoned that "the two statutes of limitations [provided by Sections 113(g)(2) and (g)(3)] complement each other and together exhaust the types of actions that might be brought to recoup response costs." Id. at 99. The "shorter prescriptive period" provided by Section 113(g)(3) governs actions brought by "liable parties," while the longer statute of limitations of Section 113(g)(2) applies to actions brought by "innocent parties that have undertaken cleanups (say, the federal, state or local government)." Id. Accordingly, there is no basis in this Circuit to contend that a Section 113(f) contribution claim is governed by Section 113(g)(2)'s longer limitations period.

## CONCLUSION

For the foregoing reasons, as well as those set forth in our opening brief, Engelhard's Fourth Cause of Action should be dismissed for failure to state a claim.

Respectfully submitted,

                                      SUE ELLEN WOOLDRIDGE  
                                      Assistant Attorney General  
                                      Environment & Natural Resources Division

Dated: October 13, 2006         /s/ Stephen E. Crowley  
                                      STEPHEN E. CROWLEY  
                                      U.S. Department of Justice  
                                      Environment & Natural Resources Division  
                                      Environmental Defense Section  
                                      P.O. Box 23986  
                                      Washington, D.C.  20026-3986  
                                      Tel: (202) 514-0165  
                                      Fax: (202) 514-8865  
                                      Stephen.Crowley@usdoj.gov

                                      MICHAEL J. SULLIVAN  
                                      United States Attorney  
                                      District of Massachusetts

                                      ANTON P. GIEDT  
                                      Assistant U.S. Attorney  
                                      1 Courthouse Way  
                                      Boston, MA  02210  
                                      Tel:  (617) 748-3309  
                                      Fax: (617) 748-3967  
                                      anton.giedt@usdoj.gov

                                      *Attorneys for the United States*

## CERTIFICATE OF SERVICE

      I hereby certify that I have this 13th day of October 2006, served a true and correct copy of the foregoing UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FOURTH CAUSE OF ACTION, on Plaintiff's counsel of record by electronic filing, as follows:

      Ronald L. Kuis, Esq.
      12 Scenery Road
      Pittsburgh, PA 15221
      rlkuis@aol.com

      David P. Rosenblatt
      Paul R. Mastrocola
      Burns & Levinson, LLP
      125 Summer Street
      Boston, MA  02110
      Pmastrocola@burnslev.com
      Drosenblatt@burnslev.com

                                          /s/ Stephen E. Crowley
                                          STEPHEN E. CROWLEY
                                          Attorney for the United States