# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| BASF CATALYSTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-11241-JLT** |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | (*Electronic filing*) |
| | ) | |
| Defendants. | ) | |
| _____) | | |

## UNITED STATES' MOTION FOR LEAVE TO
## FILE NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants United States of America, et al. ("United States") hereby respectfully move the Court for an order granting leave to file a notice of supplemental authority pertaining to motions filed previously by the United States and Plaintiff BASF Catalysts LLC concerning BASF's Fourth Cause of Action.  In support of this motion, the United States offers the following:

1.      BASF's Fourth Cause of Action is a claim for contribution under Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).  The United States seeks dismissal of that claim on the grounds that, inter alia, the claim is subject to, and barred by, the three-year statute of limitations set forth under Section 113(g)(3)(B) of CERCLA, 42 U.S.C. § 91613(g)(3)(B).  See Mem. In Supp. Of United States' Mot. For Judgment On The Pleadings On Pl.'s Fourth Cause of Action (Dkt. No. 29), at 18-31; United States' Reply Mem. (Dkt. No. 37), at 8-10.

2.      By contrast, Plaintiff BASF seeks summary judgment that its Fourth Cause of

Action is not governed by Section 113(g)(3)(B)'s three-year statute of limitation period.  See Pl.'s Mem. In Supp. Of Mot. For Summ. & Decl. J. (Dkt. No. 27), at 18-24.

    3.      On September 30, 2006, the court in Carrier Corp. v. Piper, ___ F. Supp. 2d ___, No. 05-2307 MI/V, 2006 WL 3025842 (W.D. Tenn. Sept. 30, 2006) (attached hereto as Exhibit 2), held that a contribution claim under Section 113(f)(3)(B) of CERCLA that is based on an administrative settlement other than the types of administrative settlements identified in Section 113(g)(3)(B) of CERCLA, is subject to the three-year statute of limitations period set forth under Section 113(g)(3)(B).  See 2006 WL 3025842, at **11-12 & n.16.

    4.      Undersigned counsel has conferred with counsel for BASF regarding this motion, and BASF will not oppose this motion.  However, BASF's lack of opposition to the United States' Motion For Leave To File Notice of Supplemental Authority should not be taken to indicate that BASF agrees with the United States' views of the Carrier Corp. decision.  BASF does not agree that the holding in Carrier Corp. is applicable to the facts of the instant matter or with the United States' characterization of that holding, in Paragraph 3 herein.

    5.      For the reasons stated above, the Court should grant leave for the United States to file a notice of supplemental authority.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

Dated: January 12, 2007

/s/ Stephen E. Crowley
STEPHEN E. CROWLEY
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section

P.O. Box 23986
Washington, D.C.  20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

ANTON P. GIEDT
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA  02210
Tel:  (617) 748-3309
Fax: (617) 748-3967
anton.giedt@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 12th day of January 2007, served a true and correct copy of the foregoing MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY, and the attached Notice of Supplemental Authority and decision, on Plaintiff's counsel of record by electronic filing, as follows:

Ronald L. Kuis, Esq.
12 Scenery Road
Pittsburgh, PA 15221
rlkuis@aol.com

David P. Rosenblatt
Paul R. Mastrocola
Burns & Levinson, LLP
125 Summer Street
Boston, MA  02110
Pmastrocola@burnslev.com
Drosenblatt@burnslev.com

/s/ Stephen E. Crowley
STEPHEN E. CROWLEY

- 3 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                        )
BASF CATALYSTS LLC,                     )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        **Civil Action No. 05-11241-JLT**
                                        )
UNITED STATES OF AMERICA, et al.,       )        (*Electronic filing*)
                                        )
            Defendants.                 )
_____)

## UNITED STATES' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants United States of America, et al. ("United States") hereby notify the Court of

pertinent supplemental authority resulting from a recent decision by the United States District

Court for the Western District of Tennessee.  On September 30, 2006, the court in Carrier Corp.

v. Piper, ___ F. Supp. 2d ___, No. 05-2307 MI/V, 2006 WL 3025842 (W.D. Tenn. Sept. 30,

2006) (copy attached hereto), held that a claim for contribution under Section 113(f)(3)(B) of

CERCLA, 42 U.S.C. § 9613(f)(3)(B), that is based on an administrative settlement other than the

types of administrative settlements identified in Section 113(g)(3)(B) of CERCLA, 42 U.S.C.

§ 9613(g)(3)(B), is subject to the three-year statute of limitations period set forth under Section

113(g)(3)(B).  See 2006 WL 3025842, at **11-12 & n.16.  This decision is relevant to the

United States' argument in support its motion for judgment on the pleadings, that Plaintiff

BASF's Section 113(f)(3)(B) claim for contribution is subject to Section 113(g)(3)'s three-year

statute of limitations period.  See Mem. In Supp. Of United States' Mot. For Judgment On The

Pleadings On Pl.'s Fourth Cause of Action (Dkt. No. 29), at 18-31.  The Carrier Corp. decision is

also relevant to BASF's argument that no court has adopted the position advanced by the United

States.  <u>See</u> Pl.'s Opp'n (Dkt. No. 33), at 24-27; Pl.'s Mem. In Supp. Of Mot. For Summ. &

Decl. J. (Dkt. No. 27), at 22.

<div style="margin-left: 40%;">

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

</div>

Dated: January 12, 2007

<div style="margin-left: 40%;">

/s/ Stephen E. Crowley
STEPHEN E. CROWLEY
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C.  20026-3986
Tel: (202) 514-0165
Fax: (202) 514-8865
Stephen.Crowley@usdoj.gov

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

ANTON P. GIEDT
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA  02210
Tel:  (617) 748-3309
Fax: (617) 748-3967
anton.giedt@usdoj.gov

*Attorneys for the United States*

</div>

Westlaw.

--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
**(Cite as: --- F.Supp.2d ----)**

**H**
Briefs and Other Related Documents
Carrier Corp. v. PiperW.D.Tenn.,2006.Only the
Westlaw citation is currently available.
United States District Court,W.D. Tennessee,Western
Division.
CARRIER CORPORATION, Plaintiff,
v.
Paul P. PIPER, Jr., et al., Defendants.
**No. 05-2307 Ml/V.**

Sept. 30, 2006.

**Background:** Current owner of a facility from which
there was a release of a hazardous substance, brought
action against former facility owner and current oper-
ator to recover past and future response costs, dam-
ages, and other relief. Former owner defendants filed
motions to dismiss and current operator filed motion
for summary judgment.

**Holdings:** The District Court, Jon P. Mccalla J., held
that:

(1) court would not divide contaminated property into
separate facilities for Comprehensive Environmental
Response, Compensation, and Liability Act
(CERCLA) purposes;

(2) if current owner of a facility from which it re-
leased trichloroethylene (TCE), could show that chro-
mium released and the resulting damages were
caused solely by former owner, then it could escape
potentially responsible party (PRP) status as an
"innocent party" and could proceed against former
owner under CERCLA's cost recovery scheme;

(3) statute of limitations barred contribution claim;
and

(4) genuine issue of material fact existed with respect
to current operator's contribution to the chromium
contamination at the site.

Former owner defendants' motions granted in part
and denied in part; current operator's motion denied.

**[1] Environmental Law 149E ☞445(3)**

149E Environmental Law
   149EIX Hazardous Waste or Materials
     149Ek436 Response and Cleanup; Liability
      149Ek445 Persons Responsible
       149Ek445(3) k. Joint and Several Liabil-
ity; Divisibility. Most Cited Cases
Liability under cost recovery provision of Compre-
hensive Environmental Response, Compensation, and
Liability Act (CERCLA) is joint and several. Com-
prehensive Environmental Response, Compensation,
and Liability Act of 1980, § 107(a), 42 U.S.C.A. §
9607(a).

**[2] Environmental Law 149E ☞445(1)**

149E Environmental Law
   149EIX Hazardous Waste or Materials
     149Ek436 Response and Cleanup; Liability
      149Ek445 Persons Responsible
       149Ek445(1) k. In General. Most Cited
Cases
A "potentially responsible party" (PRP) is a party
who, if sued, would be liable under cost recovery
provision of Comprehensive Environmental Re-
sponse, Compensation, and Liability Act (CERCLA).
Comprehensive Environmental Response, Compens-
ation, and Liability Act of 1980, § 107(a), 42
U.S.C.A. § 9607(a).

**[3] Environmental Law 149E ☞441**

149E Environmental Law
   149EIX Hazardous Waste or Materials
     149Ek436 Response and Cleanup; Liability
      149Ek441 k. Release and Disposal in Gen-
eral. Most Cited Cases

**Environmental Law 149E ☞445(1)**

149E Environmental Law
   149EIX Hazardous Waste or Materials
     149Ek436 Response and Cleanup; Liability
      149Ek445 Persons Responsible
       149Ek445(1) k. In General. Most Cited
Cases

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
**(Cite as: --- F.Supp.2d ----)**

There is no requirement under cost recovery provision of Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) that the substance deposited by the individual held liable is the substance that actually is released or causes the contamination. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 107(a), 42 U.S.C.A. § 9607(a).

**[4] Environmental Law 149E ⬚445(1)**

149E Environmental Law
  149EIX Hazardous Waste or Materials
    149Ek436 Response and Cleanup; Liability
      149Ek445 Persons Responsible
        149Ek445(1) k. In General. Most Cited Cases
Under cost recovery provision of Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), courts generally will not divide widely contaminated properties into separate facilities in response to a party's claim to be responsible for contamination in only certain parts of the property. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 107(a), 42 U.S.C.A. § 9607(a).

**[5] Environmental Law 149E ⬚445(1)**

149E Environmental Law
  149EIX Hazardous Waste or Materials
    149Ek436 Response and Cleanup; Liability
      149Ek445 Persons Responsible
        149Ek445(1) k. In General. Most Cited Cases
If current owner of a facility from which it released trichloroethylene (TCE), could show that chromium released and the resulting damages were caused solely by former owner, then it could escape potentially responsible party (PRP) status as an "innocent party" and could proceed against former owner under Comprehensive Environmental Response, Compensation, and Liability Act's (CERCLA) cost recovery scheme. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 107(a), (b)(3), 42 U.S.C.A. § 9607(a), (b)(3).

**[6] Environmental Law 149E ⬚447**

149E Environmental Law
  149EIX Hazardous Waste or Materials
    149Ek436 Response and Cleanup; Liability
      149Ek447 k. Contribution and Indemnity; Allocation of Liability. Most Cited Cases
Under Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), liability for contribution is several, and allocation of response costs is based on equitable principles. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 113(f)(1), 42 U.S.C.A. § 9613(f)(1).

**[7] Environmental Law 149E ⬚447**

149E Environmental Law
  149EIX Hazardous Waste or Materials
    149Ek436 Response and Cleanup; Liability
      149Ek447 k. Contribution and Indemnity; Allocation of Liability. Most Cited Cases
Administrative order that current facility owner was issued under Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) was a "civil action" within meaning of CERCLA's contribution provision. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 113(f)(1), 42 U.S.C.A. § 9613(f)(1).

**[8] Environmental Law 149E ⬚670**

149E Environmental Law
  149EXIII Judicial Review or Intervention
    149Ek668 Time for Proceedings
      149Ek670 k. Periods Applicable. Most Cited Cases
Even if administrative order on consent (AOC) qualifies as "an administratively or judicially approved settlement" under Comprehensive Environmental Response, Compensation, and Liability Act's (CERCLA) contribution provision, CERCLA's three year statute of limitations applied to current owner's contribution claim against former facility owner. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 113(f)(3)(B), (g)(3), 42 U.S.C.A. § 9613(f)(3)(B), (g)(3).

**[9] Corporations 101 ⬚445.1**

101 Corporations

101XI Corporate Powers and Liabilities
   101XI(C) Property and Conveyances
      101k441 Conveyances by Corporations
         101k445.1 k. Assumption of Transferor's Liabilities. Most Cited Cases

When a successor company becomes a new "owner or operator" of a facility within meaning of Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), it becomes directly liable and successor liability doctrine is not needed. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 101 et seq., 42 U.S.C.A. § 9601 et seq.

**[10] Corporations 101 ⟳445.1**

101 Corporations
   101XI Corporate Powers and Liabilities
      101XI(C) Property and Conveyances
         101k441 Conveyances by Corporations
            101k445.1 k. Assumption of Transferor's Liabilities. Most Cited Cases

Under Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), a successor corporation may be held liable for its predecessor's liabilities; a plaintiff must first show that a transfer of assets has taken place, and then allege a state law exception to the general rule regarding successor liability. Comprehensive Environmental Response, Compensation, and Liability Act § 101 et seq., 42 U.S.C.A. § 9601 et seq.

**[11] Corporations 101 ⟳445.1**

101 Corporations
   101XI Corporate Powers and Liabilities
      101XI(C) Property and Conveyances
         101k441 Conveyances by Corporations
            101k445.1 k. Assumption of Transferor's Liabilities. Most Cited Cases

For purposes of current facility owner's claim against former owner under CERCLA, current owner sufficiently pled successor liability under Tennessee's de facto merger doctrine, despite absence of asset-for-stock exchange; former owner acquired substantially all of the assets of predecessor, including, without limitation, trade names/trade marks, technology/know-how, patents and other intellectual prop-

erty, and certain obligations and liabilities of predecessor. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 101 et seq., 42 U.S.C.A. § 9601 et seq.

**[12] Environmental Law 149E ⟳673**

149E Environmental Law
   149EXIII Judicial Review or Intervention
      149Ek673 k. Pleading, Petition, or Application. Most Cited Cases

Current facility owner, which sought to recover from former owner response costs which current owner voluntarily paid for remediation of Superfund site, sufficiently pled "true injury" and that the costs it claimed to have incurred were "necessary" under CERCLA; current owner alleged that it had incurred and would continue to incur substantial costs in researching and implanting options for treating contaminated water caused by chromium releases by former owner. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, § 107(a)(4)(B), 42 U.S.C.A. § 9607(a)(4)(B).

**[13] Negligence 272 ⟳1610**

272 Negligence
   272XVIII Actions
      272XVIII(C) Evidence
         272XVIII(C)3 Res Ipsa Loquitur
            272k1610 k. In General. Most Cited Cases

In Tennessee, doctrine of res ipsa loquitur is a rule of evidence, not a rule of substantive law.

**[14] Federal Civil Procedure 170A ⟳1831**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
         170Ak1827 Determination
            170Ak1831 k. Fact Issues. Most Cited Cases

Whether res ipsa loquitur is applicable in civil case is not a question to be resolved at the motion to dismiss stage.

**[15] Federal Civil Procedure 170A ⟳2498.3**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[170A](#) Federal Civil Procedure
   [170AXVII](#) Judgment
      [170AXVII(C)](#) Summary Judgment
         [170AXVII(C)2](#) Particular Cases
            [170Ak2498.3](#) k. Environmental Law,
Cases Involving. [Most Cited Cases](#)

**Federal Civil Procedure 170A** &#8734;**2515**

[170A](#) Federal Civil Procedure
   [170AXVII](#) Judgment
      [170AXVII(C)](#) Summary Judgment
         [170AXVII(C)2](#) Particular Cases
            [170Ak2515](#) k. Tort Cases in General.
[Most Cited Cases](#)
Genuine issue of material fact existed with respect to
current operator's contribution to the chromium con-
tamination at the Superfund site, precluding summary
judgment in favor of current operator on current facil-
ity owner's CERCLA claim for response costs, and
its negligence claim. Comprehensive Environmental
Response, Compensation, and Liability Act of 1980,
§ 107(a)(1), [42 U.S.C.A. § 9607(a)(1)](#).

Joey Miranda, Robinson & Cole LLP, Hartford, CT,
John A. Poakeart, Pamela Elkow, Robinson & Cole,
LLP, Stamford, CT, Michael E. Keeney, Cheryl R.
Estes, Thomason Hendrix Harvey Johnson &
Mitchell, Memphis, TN, for Plaintiff.
David C. Wade, Adam Calhoun Simpson, Martin
Tate Morrow & Marston, Allen T. Malone, Burch
Porter & Johnson, Charles C. Harrell, Charles F.
Morrow, Michael D. Fitzgerald, Butler Snow O'Mara
Stevens & Canada, PLLC, Memphis, TN, for De-
fendants.

**ORDER DENYING IN PART AND GRANTING
IN PART DEFENDANT QUANEX'S MOTION
TO DISMISS; ORDER DENYING IN PART
AND GRANTING IN PART PIPER DEFEND-
ANTS' MOTION TO DISMISS; AND ORDER
DENYING DEFENDANT LUND'S MOTION
FOR SUMMARY JUDGMENT**

McCALLA, District Judge.
**\*1** Before the Court is Defendant Quanex Corpora-
tion's ("Quanex") Motion to Dismiss Amended Com-
plaint, filed September 13, 2005. Plaintiff Carrier
Corporation ("Plaintiff" or "Carrier") responded on

October 13, 2005, and Quanex filed reply briefs on
September 20, 2005, and November 8, 2005. Also
before the Court is the Motion to Dismiss Plaintiff
Carrier's First Amended Complaint, filed by the Piper
Defendants on November 23, 2005.[FN1] Plaintiff re-
sponded in opposition on December 23, 2005, and
the Piper Defendants filed their reply on January 10,
2006. The final motion before the Court is Defendant
Lund Coating Technologies, Inc.'s ("Lund") Motion
for Summary Judgment, filed November 7, 2005.
Plaintiff filed its opposition on December 14, 2005,
and Lund filed its reply on December 30, 2005. For
the following reasons, the Court (1) DENIES IN
PART AND GRANTS IN PART Quanex's Motion to
Dismiss Amended Complaint; (2) DENIES IN PART
AND GRANTS IN PART the Piper Defendants' Mo-
tion to Dismiss Plaintiff Carrier's First Amended
Complaint; and (3) DENIES Lund's Motion for Sum-
mary Judgment.

## I. BACKGROUND

The instant lawsuit arises out of Plaintiff's asserted
need to remediate chromium discovered at the Town
of Collierville's ("Town's") municipal water wells,
Water Plant 2 ("Water Plant 2"), that Carrier alleges
has impacted its own trichloroethylene ("TCE") re-
mediation operations.[FN2] Plaintiff seeks to recover
past and future response costs, damages, and other re-
lief "relating to the deposition, release and disposal of
chemical liquids or solid, semi-solid or liquid wastes
or hazardous wastes or 'hazardous substances' ... at,
on or under certain property located at or near 719
Piper Street, Collierville, Tennessee (the
'Smalley-Piper Site')." (First Am. Compl. ¶ 1.) Ac-
cording to Carrier, each of the Defendants is a current
or past owner and/or operator of industrial manufac-
turing or other business operations at the Smalley-
Piper Site. (*Id.* ¶ 37.)

Carrier has been manufacturing heating and air con-
ditioning equipment at its property located at 97 By-
halia Road, Collierville, Tennessee (the "Carrier
Property") since the late 1960s. (*Id.* ¶¶ 34-35.) In July
1986, TCE was discovered in Water Plant 2. Water
Plant 2 is located adjacent to Carrier Property. (*Id.* ¶
41.) In response to the discovery of the TCE release,
the United States Environmental Protection Agency

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)

**(Cite as: --- F.Supp.2d ----)**

("USEPA") issued a Record of Decision ("ROD") on September 2, 1992 *(Id.* ¶ 43) and on February 11, 1993, the USEPA issued a Unilateral Administrative Order for Remedial Design and Remedial Action ("UAO") to Carrier. *(Id.* ¶ 42). Pursuant to the UAO, Carrier has implemented investigative and remedial steps in order to address the TCE contamination in the soil and groundwater at Water Plant 2 and Carrier Property, and, according to Carrier, it will have to complete additional work related to TCE contamination in the future. *(Id.* ¶ 43.) In particular, under the ROD, Carrier must maintain control over the TCE contamination in the groundwater by pumping and treating the groundwater through Water Plant 2. *(Id.* ¶ 44.) Under an agreement entered in April 1996 between Carrier and the Town of Collierville ("Town"), once Carrier treats the TCE, the treated water would be introduced into the Town's potable water supply. *(Id.* ¶ 45.)

*2 In April 2003, the Town informed Carrier that it had found chromium in Water Plant 2. *(Id.* ¶ 46.) As a result of the presence of unacceptable levels of chromium, the Town shut down Water Plant 2 in December 2003. *(Id.* ¶ 47.) Since then, the Town and Carrier have entered into an Interim Agreement whereby Carrier would discharge treated groundwater from Water Plant 2 into the Town's publicly owned treatment works ("POTW"). *(Id.* ¶ 48.) Carrier claims that it is required to treat the groundwater for chromium in order to discharge to the POTW *(Id.* ¶ 48) and that it has incurred substantial costs in the discharging of treated water from Water Plant 2 to the POTW, and in researching and implementing options for treating the chromium in the water at Water Plant 2. *(Id.* ¶ 50-51.)

On September 23, 2005, the USEPA proposed listing the Smalley-Piper Site on the National Priorities List ("NPL") for chromium contamination. The Smalley-Piper Site was listed on the NPL on April 27, 2005. *(Id.* ¶ 52.) Also, chromium has been identified as a substance historically used by Defendants and/or third parties in the course of business operations at the Smalley-Piper Site. *(Id.* ¶ 53.) According to Carrier, it is the chromium originating at the Smalley-Piper Site which has migrated to Water Plant 2 and surrounding properties. *(Id.* ¶ 55.) Further, according

to Carrier, neither chromium nor any similar substance was ever disposed, discharged, spilled, or released at the Carrier Property. *(Id.* ¶ 56.) Finally, Carrier believes that it is or may be required by the USEPA and/or the Tennessee Department of Environmental Conservation to investigate and remediate the chromium. *(Id.* ¶ 57.)

Carrier brings this action primarily under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended by The Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9601 *et seq.* It seeks to recover the costs it has and will incur related to its investigation and remediation of chromium. Carrier pleads eight causes of action: (1) cost recovery pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a); (2) contribution pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f); (3) declaration of Defendant's obligation to reimburse Carrier "for response costs already incurred and to be incurred ... for which Defendants are liable" under Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 9613(g)(2); (4) negligence; (5) negligence per se pursuant to the Tennessee Safe Drinking Water Act, Tenn.Code Ann. § 68-221-711(4); (6) negligence per se pursuant to the Tennessee Hazardous Waste Management Act, Tenn.Code Ann. § 68-212-105(1); (7) public nuisance; and (8) res ipsa loquitur.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true. *Saylor v. Parker Seal Co., 975 F.2d 252, 254 (6th Cir.1992).* Furthermore, the court must construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).* "A court may dismiss a complaint [under Rule 12(b)(6)] only if it is clear that no relief could be granted under any

--- F.Supp.2d
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
**(Cite as: --- F.Supp.2d ----)**

set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).*

### A. Summary Judgment

**\*3** Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).* So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex, 477 U.S. at 323, 106 S.Ct. 2548,* and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir.1989).* In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).*

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir.1998).* A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).* In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id. at 251-52, 106 S.Ct. 2505.*

### III. ANALYSIS

### A. Motion to Dismiss Amended Complaint by De-

**fendant Quanex**

Defendant Quanex moves to dismiss Carrier's suit with respect to each count. In its Motion to Dismiss Amended Complaint, Quanex asserts that because Carrier is itself a Potentially Responsible Party ("PRP"), it cannot pursue an action for joint and several liability under § 107 of CERCLA, 42 U.S.C. § 9607. It also contends that because Carrier has not been subject to a "civil action" under CERCLA § 107(a) or § 106, it cannot pursue contribution under § 113(f). Next, assuming that Carrier's substantive CERCLA actions are dismissed, Quanex moves for the dismissal of Carrier's request for declaratory judgment under CERCLA. Also, assuming that Carrier's federal causes of action are dismissed, applying 28 U.S.C. § 1367(c)(3), Carrier's state law causes of action should also be dismissed. And finally, Quanex moves to dismiss for failure to allege facts sufficient to prove that Quanex bears liability as a successor. (Mot. Dismiss. Am. Compl. and Mem. Supp. Thereof, Sept. 13, 2005, Doc. 46, at 1-2.)

### 1. Cost Recovery under CERCLA § 107(a)

[1] Section 107(a) is the cost recovery provision of CERCLA. 42 U.S.C. § 9607(a). Liability under § 107(a) is joint and several. Section 107(a)(4)(B) expressly creates a private cause of action to recover response costs. The Sixth Circuit, in *Centerior Serv. Co. v. Acme Scrap & Metal Corp.,* summarized the requirements to proceed under § 107(a):

**\*4** In order to establish a prima facie case for cost recovery under § 107(a), a plaintiff must prove four elements: (1) the site is a "facility"; (2) a release or threatened release of hazardous substance has occurred; (3) the release has caused the plaintiff to incur "necessary costs of response"; and (4) the defendant falls within one of the four categories of PRPs.[FN3]

*Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 347-48 (6th Cir.1998)*(citing *Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 668 (5th Cir.1989); 3550 Stevens Creek Assocs. v. Barclays Bank, 915 F.2d 1355, 1358 (9th Cir.1990)).* A PRP is a private party who if sued would be liable under § 107(a).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
**(Cite as: --- F.Supp.2d ----)**

Although not made explicit in the statute, the Sixth Circuit, along with other circuits, has determined that a PRP, itself, cannot bring an action under § 107(a), but rather must resort to suing for contribution under § 113(f). *Centerior, 153 F.3d at 356; see also Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 530 (8th Cir.2003)*(citing to other circuits agreeing that a PRP cannot pursue cost recovery claim); *New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1121 (3d Cir.1997); Pinal Creek Group v. Newmont Min. Corp., 118 F.3d 1298, 1306 (9th Cir.1997); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir.1996); United States v. Colo. & E. R.R. Co., 50 F.3d 1530, 1536 (10th Cir.1995); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764-65 (7th Cir.1994).*[FN4]

Quanex asserts that because Carrier is, itself, responsible for the release of hazardous substances (namely, TCE), it is a PRP, and thus cannot pursue an action under § 107. Carrier counters that it is entitled to cost recovery under § 107 because (1) it meets requirements of innocent party defense under 107(b)(3); and (2) it is not the source of chromium contamination at Water Plant 2. (Obj. Carrier Corp. to Def. Quanex Corp.'s Mot. Dismiss Am. Compl. ("Obj. to Quanex"), Oct. 13, 2005, Doc. 51, at 2.)

**a. Is Carrier a PRP?**

[2] As discussed previously, Carrier's eligibility to sue under § 107(a) is dependent on whether it is considered a PRP under CERCLA. A PRP is a party who, if sued, would be liable under § 107(a).

Because the EPA, in its Unilateral Administrative Order ("UAO"), dated February 11, 1993, determined that Carrier is a PRP, Quanex asserts that Carrier is a PRP and thus its claim under § 107 must be dismissed. Quanex points to additional support for this proposition by referencing Carrier's identification in the USEPA's 1992 ROD as a PRP with respect to both the Carrier Property and Water Plant 2. (Mem. Supp. Mot. Dismiss, July 14, 2005, Doc. 19, incorporated by reference into Doc. 46, at 5-7.) Carrier disputes Quanex's claim that it cannot bring an action under § 107(a), asserting that it that it is an innocent party under § 107(b)(3) and that it was not the source

of chromium contamination at Water Plant 2. The Court will examine each of Carrier's claims individually.

**\*5** The Court must decide whether Carrier can state a claim under § 107(a) having already conceded that it is a PRP with respect to TCE. That is, whether a PRP for one purpose remains a PRP for all purposes-and specifically chromium contamination not attributable to Carrier.

[3] Liability under § 107(a) is strict. Under § 107(a), a plaintiff must only "prove 'that the defendant's hazardous substances were deposited at the site from which there was a release and that the *release* caused the incurrence of response costs.' " *Kalamazoo River Study Group v. Menasha Corp., 228 F.3d 648, 655 (6th Cir.2000)*(quoting *United States v. Alcan Aluminum Corp., 964 F.2d 252, 266 (3d Cir.1992)*).[FN5] There is no requirement that the substance deposited by the individual held liable is the substance that actually is released or causes the contamination. *Kalamazoo, 228 F.3d at 655* (citing *United States v. Twp. of Brighton, 153 F.3d 307, 329 (6th Cir.1998)*)("It is clear from the text, structure, and legislative history of § 107 that the provision does not require a plaintiff to show that a particular defendant caused either the release or the incurrence of response costs in order to prove liability."); *see also Twp. of Brighton, 153 F.3d at 329*(Moore, J., concurring in the result)("CERCLA imposes liability on a generator of hazardous waste at a particular facility even though that generator's acts may not directly have caused or contributed to the contamination, or even where their waste may have comprised only a small portion of the waste present at the site.")(internal citations omitted); *Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 327 (2d Cir.2000)*( "Potentially responsible parties are not limited to parties who were the cause in fact of the contamination.")(citing *New York v. Shore Realty Corp., 759 F.2d 1032, 1044 (2d Cir.1985)*) ("[ S] ection 9607(a)(1) unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation."). The Sixth Circuit has, thus, rejected imposing a causation requirement "between a specific defendant's release and the incurrence of response costs." *Kalamazoo, 228 F.3d at 656*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

n. 5.[FN6]

Thus, under § 107(a), as interpreted by *Kalamazoo,* it does not matter if the substance the defendant is responsible for depositing is different than the one that has caused the release and ensuing contamination. Applying the elements of § 107(a), Carrier is a current owner of a facility (the Carrier Property), from which there was a release of a hazardous substance (TCE), which caused the incurrence of response costs. Furthermore, Carrier was responsible for depositing a hazardous substance (TCE) at the facility. Thus, under § 107(a), Carrier appears to be a PRP.

Carrier asserts that the proper analysis requires the Court to look to the source of the contamination, and not the areas that may be affected by the contamination. Because Carrier Property is not the source of chromium contamination at Water Plant 2, it claims that it can maintain a cost recovery action under § 107(a). (Obj. to Quanex, Doc. 51, at 10-11.) For this proposition, Carrier cites to an unpublished opinion of the Eastern District of California, *Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.,* 1995 U.S. Dist. LEXIS 20627, at *11-13 (E.D.Cal. Nov. 15, 1995)(finding that essential issue for determining liability is who owned or operated the "facility" that caused need for remediation). Apart from being an unpublished decision from a court whose decisions are not binding on this Court, this analysis is incorrect-in determining PRP status, we are required to look to the facility from which the release or threatened release occurred, not to who or what caused the release.

**6** However, Carrier, in citing to *Atchison, Topeka & Santa Fe Ry. Co.,* appears to suggest that because it did not cause the chromium contamination, it therefore should not be considered a PRP under § 107(a). This is essentially an argument under § 107(b)(3), which gives a complete defense to a party who can show that third parties are solely responsible for the release of hazardous materials. The application of this defense will be discussed *infra.*

Carrier also appears to suggest that it is not a PRP because it owns the wrong facility-it owns Carrier Property, which according to Carrier is not the source of

the chromium contamination. Therefore, it argues, it cannot be found to be a PRP with respect to the chromium contamination.

This argument is not persuasive. Carrier Property and Water Plant 2 are part of the same facility. The facility is defined in the UAO. The UAO states: "The Carrier Air Conditioning Superfund Site is a 'facility' as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9)." UAO ¶ V(A).[FN7] According to the definition of the Carrier Air Conditioning Superfund Site earlier in the UAO, the Site includes Water Plant 2. UAO ¶ III(U). The ROD, as cited by Quanex, also includes both Water Plant 2 and Carrier Property as part of the same facility. (Mem. Supp. Mot. Dismiss, Doc. 19, at 3 (citing ROD § 2.2).)

Furthermore, Carrier is an owner or operator of a facility. Although Carrier does not own Water Plant 2, it is an owner of Carrier Property-which is part of the same facility. Thus, it falls under § 107(a)(1), the first type of PRP-"the owner and operator of a vessel or facility."

[4] Carrier may argue that under some case law the facility ought to be divided into separate facilities, with Water Plant 2 as a separate facility from Carrier Property, and thus once divided, Carrier cannot be said to be the "owner and operator" of the Water Plant 2 facility. Some courts have divided a property into multiple parts when it can be reasonably or naturally divided. *See United States v. 150 Acres of Land,* 204 F.3d 698, 709 (6th Cir.2000)(citing *Twp. of Brighton,* 153 F.3d at 313). Just because a facility can be divided, however, does not mean that it must be divided. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.,* 191 F.3d 409, 418 (4th Cir.1999) ( "[ T] he mere possibility of such division does not in itself require consideration of the site's different parts as separate facilities or make consideration of the property as a single facility impermissible."). Also, courts generally will not divide widely contaminated properties: "Courts have uniformly refused to divide widely contaminated properties like the one at issue here into separate facilities in response to a party's claim to be responsible for contamination in only certain parts of the property." *Axel Johnson, Inc.,* 191 F.3d at 418.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)

**(Cite as: --- F.Supp.2d ----)**

Similarly, even though it may be possible to divide the Carrier Air Conditioning Superfund Site into more than one facility, such a division would be ill-advised in this case.

### b. Is Carrier an "Innocent Party"?

**\*7** [5] Carrier is thus a PRP, and must resort to a claim for contribution under § 113(f) unless it can qualify under one of the defenses under § 107(b). Carrier asserts that it is an "innocent party" under § 107(b)(3). Although Quanex alleges that because Carrier is a PRP it cannot assert the "innocent party" defense, Quanex is reversing the inquiry-if Carrier successfully asserts the "innocent party" defense, it is actually not a PRP and can thus proceed under § 107(a). *See, e.g., New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1120 (3d Cir.1997).*

Section § 107(b)(3) allows a party to escape PRP status under the following circumstances:
There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that *the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by* ... (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions....

42 U.S.C. § 9607(b)(emphasis added).

According to Quanex, Carrier is not an "innocent party" under § 107(b)(3) "because it cannot prove that all hazardous substance releases at Water Plant 2

were caused solely by another party." *150 Acres of Land, 204 F.3d at 705*(requiring proof that all "leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing" was caused solely by acts or omissions of third parties). Also, according to Quanex, Carrier "fail[ed] ... to allege that it 'exercised due care with respect to the hazardous substance concerned,' and 'took precautions against foreseeable acts or omissions' of third parties"-two requirements for qualifying for innocent party status under § 107(b)(3). (Mem. Supp. Mot. Dismiss, Doc. 19, at 8 n. 3.) Carrier responds that it is entitled to the defense under § 107(b)(3) because it satisfies its requirements with respect to chromium contamination.

It is under § 107(b)(3) where causation is a factor in the § 107 cost recovery scheme. It provides for a complete defense to liability where "the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by" a third party. This subsection, unlike § 107(a), looks to the cause of a particular release and the damages resulting from that release.FN8 Although Quanex argues that Carrier cannot qualify as an "innocent party" under § 107(b)(3) because it has generated hazardous substances in the past, namely TCE, that is not the case. (Reply Mem. Supp. Mot. Dismiss, Sept. 20, 2005, Doc. 49, at 6.)

**\*8** If Carrier can show that the chromium released and the resulting damages were caused "solely by" a third party, then it is not a PRP and can proceed under § 107(a)'s cost recovery scheme.

In *Akzo Coatings, Inc.,* the Seventh Circuit refused to apply the "innocent party" defense: "Akzo has experienced no injury of the kind that would typically give rise to a direct claim under section 107(a)-it is not, for example, a landowner forced to clean up hazardous materials that a third party spilled onto its property or that migrated there from adjacent lands." *Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir.1994).* Carrier is asserted to be a party confronted with payment for clean-up of a hazardous substance with which it has no connection whatsoever. Thus, Carrier is entitled to put forward the innocent party defense.FN9

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
(Cite as: --- F.Supp.2d ----)

Page 10

Quanex, in a footnote, briefly states that Carrier did not allege that it "exercised due care with respect to hazardous substances concerned," and "took precautions against foreseeable acts or omissions" of third parties, two requirements under § 107(b)(3). However, it does not assert this omission as a reason to dismiss Carrier's claim as to § 107(a). Furthermore, although, Carrier may not have used these exact phrases in its First Amended Complaint, it has alleged facts that, if true, support a conclusion that it "exercised due care" and "took precautions" pursuant to § 107(b)(3). (First Am. Compl. ¶¶ 46-49.) For example, Carrier alleges that it notified the Town of chromium contamination in April 2003; that in June of 2004 the Town and Carrier entered into an agreement whereby Carrier would treat the groundwater for chromium; and that it has agreed to explore and implement alternatives. Also, Carrier in its Objection, asserts that it, in fact, fulfilled the "due care" and "precautions" requirements. (Obj. Carrier Corp. to Def. Quanex's Mot. Dismiss ("Obj. to Quanex"), Aug. 26, 2005, Doc. 35, incorporated by reference into Doc. 51, at 8 citing *State of N.Y. v. Lashins Arcade Co.,* 91 F.3d 353, 361 (2d Cir.1996)).

Finally, there is a question of fact as to the § 107(b)(3) defense. Quanex has put forward evidence that Carrier has disposed of some chromium compounds on its property. (Reply Mem. Supp. Mot. Dismiss, Doc. 49, Ex. A, USEPA Envirofacts Report). However, Carrier alleges that "[n]either chromium nor any other similar substance or chemical was ever used, deposited, disposed, discharged, spilled or released at the Carrier Property." (First Am. Compl. ¶ 56.)[FN10] Furthermore, the Court agrees with Carrier that it should not resolve a motion to dismiss "on extraneous information" or facts outside the pleadings. Treating all allegations in the Complaint as true, it appears that Carrier may prevail on its defense that the release and damages were caused solely by an act or omission of a third party under 42 U.S.C. § 9607(b)(3). Thus, because there is a set of facts under which relief could be granted, Carrier has stated a claim with respect to § 107(a), and Quanex's Motion to Dismiss with respect to Count 1 is DENIED.

## 2. Contribution under CERCLA

*9 [6] Under CERCLA, even if a party is a PRP, it can still sue other PRPs for contribution under § 113(f). Section 113(f)(1) states as follows:

Any person may seek *contribution* from any other person who is liable or potentially liable under *section 9607(a)* of this title, *during or following any civil action* under section 9606 of this title or under *section 9607(a)* of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or under section 9607 of this title.

42 U.S.C.A. § 9613(f)(1)(emphasis added). Parties seeking contribution under § 113 must look to § 107 for the basis and elements of liability. *Centerior,* 153 F.3d at 350.FN11 Under section § 113(f), liability is several, and allocation of response costs is based on equitable principles. *Carter-Jones Lumber Co. v. Dixie Distrib. Co.,* 166 F.3d 840, 847 (6th Cir.1999).FN12

Carrier asserts that if the Court determines it is a PRP (with respect to chromium contamination at Water Plant 2), that it is nevertheless entitled to relief by a contribution action. Carrier states that (1) it meets the necessary conditions for bringing a contribution action under § 113(f)(1); (2) it can also recover under § 113(f)(3)(B) which provides for contribution after an administrative or judicially approved settlement, *see Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 168, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004); FN13 and (3) it is not limited to § 113, and can prevail by resort to an implied right of contribution. (Obj. to Quanex, Doc. 51, at 4.)

Quanex states that because Carrier is not subject to a "civil action" pursuant to § 107(a) or § 106, it cannot bring an action for contribution under CERCLA § 113(f)(1). In particular, it claims that a UAO is not a civil action. It also asserts that Carrier may not proceed under § 113(f)(3)(B) because the relevant **statute** of **limitations** has expired. Quanex also states

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-11241-JLT          Document 40-3          Filed 01/12/2007          Page 11 of 24

that all CERCLA contribution claims must proceed under § 113, and therefore Carrier cannot state a claim under a so-called "implied right of contribution."

Although the Court has determined that Carrier has stated a claim with respect to § 107, it must also examine whether Carrier has stated a claim with respect to a contribution action.

### a. § 113(f)(1)-Civil Action

[7] In *Aviall,* the Supreme Court found that "contribution may only be sought subject to the specified conditions [in 113(f)(1)], namely, 'during or following' a specified civil action." *Aviall,* 543 U.S. at 166, 125 S.Ct. 577. However the Court did not decide whether an administrative order, such as a UAO, would qualify as a civil action under the subsection. *Aviall,* 543 U.S. at 168 n. 5, 125 S.Ct. 577 ("Neither has **Aviall** been subject to an administrative order under § 106; thus, we need not decide whether such an order would qualify as a 'civil action under **section** 9606 ... or under **section** 9607' of CERCLA."). Also, the factual situation in *Aviall* is distinguishable from the instant case because in *Aviall,* the EPA had not taken "judicial or administrative measures to compel cleanup." *Aviall,* 543 U.S. at 164, 125 S.Ct. 577.

*10 Quanex contends that a UAO is not a "civil action" within the meaning of § 113(f)(1), and thus Carrier may not bring a claim under § 113(f)(1). The Defendants point to *Blue Tee Corp. v. ASARCO, Inc.,* 2005 WL 1532955, **3-4, 2005 U.S. Dist. LEXIS 15360, at *9-*12 (W.D.Mo. Jun. 27, 2005),* in support of their contentions. *Blue Tee Corp.* is an unpublished opinion which simply listed the reasoning of both parties and included little reasoning on the part of the district court. Accordingly, this Court declines to adopt the conclusion in *Blue Tee Corp.*

For the following reasons, the Court finds that the UAO that Carrier was issued under § 106 is a "civil action" under § 113(f)(1). Significantly, the Sixth Circuit in *Centerior* has suggested that the issuance of an administrative order under § 106 satisfies the requirement in § 113(f)(1). *Centerior,* 153 F.3d at 351-52. In *Centerior,* the Sixth Circuit found that

PRPs could not bring claims for cost recovery under § 107(a), but rather, were restricted to contribution claims under § 113(f). Moreover, the *Centerior* Court found that the common law of contribution-which required only "that plaintiff act under some compulsion or legal obligation to an injured party"-was codified in the savings clause in § 113(f)(1). [FN14] The circuit court further held that "[c]ontribution ... under ... § 113(f)(1) applies in claims such as these where a potentially responsible party has been compelled to pay for response costs for which others are also liable, and who seeks reimbursement for such costs." [FN15] *Centerior,* 153 F.3d at 351-52.

In terms of the burden it places on a party, a UAO is similar to a judgment issued pursuant to a court proceeding. As the Seventh Circuit observed in *Akzo:* "A Party served with a unilateral order under section 106 has little choice but to comply." *Akzo,* F.3d at 769. Under a UAO, there is a penalty for noncompliance of up to $25,000 "for each day in which such violation occurs or such failure to comply continues." 42 U.S.C. § 9606(b)(1). In addition, under 42 U.S.C. § 9607(c)(3), failure to comply with the UAO can result in the imposition of punitive damages, "in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action." 42 U.S.C. § 9607(c)(3). For these reasons, the Court finds that a UAO falls within the requirement of a "civil action" under § 113(f)(1), and therefore, Quanex's Motion to Dismiss with respect to Count 2 is DENIED.

### b. § 113(f)(3)(B)-Settlement

In its Objection, Carrier states that if this Court were to find that a UAO was not a "civil action," that it could nonetheless pursue contribution under § 113(f)(3)(B). Section § 113(f)(3)(B) provides in relevant part:
A person who has *resolved its liability* to the United States ... for some or all of a response action or for some or all of the costs of such action in an *administrative or judicially approved settlement* may seek contribution from any person who is not party to a settlement....

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
(Cite as: --- F.Supp.2d ----)

Case 1:05-cv-11241-JLT   Document 40-3   Filed 01/12/2007   Page 12 of 24   Page 12

*11 42 U.S.C. § 9613(f)(3)(B)(emphasis added). This Court has has found that a UAO qualifies as a "civil action," and thus analysis of this issue is not determinative with respect to Carrier's right to contribution. Furthermore, Carrier, in its First Amended Complaint, has not alleged facts to support a claim under § 113(f)(3)(B). Carrier never mentioned that it had entered into an administrative order on consent ("AOC"), which it asserts qualifies as a settlement under § 113(f)(3)(B), until it filed its Objection to Defendant's Quanex Corporation's Motion to Dismiss. Nevertheless, this Court finds it useful to provide a brief analysis of the issue because Carrier's claim under § 113(f)(3)(B), even if properly pleaded, is time-barred.

[8] Quanex claims that even if an AOC qualifies as "an administratively or judicially approved settlement" under § 113(f)(3)(B), that Carrier is barred from bringing an action under § 113(f)(3)(B) by CERCLA's **statute** of **limitations** under **§ 113(g)(3)**. According to Quanex, application of **§ 113(g)(3)** requires that any action for contribution must commence no " 'more than three years after ... the date of an administrative order ... or entry of a judicially approved settlement....' " (Reply Mem. Supp. Mot. Dismiss, Doc. 49, at 3)(citing 42 U.S.C. § 9613(g)(3)). The AOC was entered into on September 28, 1989, more than fifteen years before the filing of the present contribution action on April 27, 2005, and thus, according to Quanex, Carrier's claim under § 113(f)(3)(B) is time barred.

Carrier addresses both the issue of whether the AOC qualifies as a settlement for the purposes of § 113(f)(3)(B), as well as the proper statute of limitations to apply. According to Carrier, although *Aviall* did not decide the issue of whether an AOC qualifies as a settlement under CERCLA, and the Sixth Circuit has not yet addressed the issue, an AOC is a settlement under § 113(f)(3)(B). For support for the proposition that an AOC is a settlement under § 113(f)(3)(B), Carrier cites to *Durham Mfg. Co. v. Merriam Mfg. Co., 294 F.Supp.2d 251 (D.Conn.2003)*. Carrier also references a Memorandum from Susan Bromm to support its claim. Memorandum from Susan E. Bromm, USEPA to USEPA Regional Directors, Regional Counsel and USDOJ Deputy Chiefs, dated Aug. 3, 2005 ("USEPA Memo"). According to Carrier, by entering into an AOC, the USEPA and United States Department of Justice "intend to settle the respondent's liability" under § 113(f)(3)(B). Furthermore, with respect to its claim, Carrier asserts that Carrier and USEPA "entered into an AOC for a remedial investigation/feasibility study ('RI/FS') of the TCE contamination at the Carrier Property and Water Plant 2...." (Obj. to Quanex, Doc. 35, at 15.) According to Carrier, the AOC "explicitly states that it was entered "by consent" pursuant to CERCLA § 122." *Id.* Thus, Carrier claims that by "agree[ing] 'by consent' to undertake certain activities related to TCE contamination[, it] thereby resolved its liability with USEPA 'within the meaning of CERCLA § 113(f)(3)(B).' " *Id.*

*12 With respect to the **statute** of **limitations** issue, Carrier claims § 113(g)(2), rather than **§ 113(g)(3)**, may apply to Carrier's contribution claims. According to Carrier, § 113(g)(2) "provides a six year limitations period measured from initiation of physical onsite construction of the remediation action" and that the Sixth Circuit in *Centerior* "acknowledged that if a party entered into a settlement with the ... EPA, that party's later contribution action 'with respect to such costs or damages' could be an 'initial action' to which the statute of limitations in CERCLA § 113(g)(2) would apply." *Centerior, 153 F.3d at 355-56.* The Court finds that the reasoning in *Centerior* does not apply to Carrier's claim for contribution under § 113(f)(3)(B).

In dicta, the court in *Centerior* does suggest that the Sixth Circuit might follow the analysis in *Sun Co. v. Browning-Ferris, Inc., 124 F.3d 1187, 1190 (10th Cir.1997)*, cert. denied, 522 U.S. 1113, 118 S.Ct. 1045, 140 L.Ed.2d 110 (1998), in applying a six year statute of limitations to some contribution claims. *Centerior, 153 F.3d at 355.* However the analysis in *Sun Co.* was limited to the situation where a party was bringing a § 113(f) action pursuant to the issuance of a UAO, and the party in the case had argued that, unless the court applied § 113(g)(2), there would be no statute of limitations to apply. Because it did not address the statute of limitations applicable to contribution claims brought under § 113(f)(3)(B), the analysis with respect to statute of limitations in *Cen-*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*terior* and *Sun Co.* does not apply in the instant case. *See also GenCorp, Inc. v. Olin Corp.,* 390 F.3d 433 (6th Cir.2004); *Geraghty and Miller, Inc. v. Conoco Inc.,* 234 F.3d 917 (5th Cir.2001).[FN16]

Quanex is correct that the proper **statute** of **limitations** to apply to a contribution action pursuant to **§ 113(f)(3)(B)** is **§ 113(g)(3)** which provides for no more than a three year period "after ... (B) the date of an administrative order under ... 122(h) (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3)(B). In the instant case, the statute of limitations with respect to a contribution action under § 113(f)(3)(B) began to run at the date of the consent decree. *See e.g., New Castle County,* 111 F.3d at 1124. Again, the AOC was entered into on September 28, 1989, more than fifteen years before the filing of the present contribution action on April 27, 2005. Thus, Carrier claim under § 113(f)(3)(B) is time barred. Accordingly, this Court will not address the merits of Carrier's claim under § 113(f)(3)(B).

### c. Implied Right to Contribution under § 107(a)

Assuming that the Court would dismiss Carrier's action for contribution under § 113(f), Quanex further contends that any claim of contribution apart from § 113(f) must fail as well. This Court has denied Quanex's Motion to Dismiss with respect to Count 2. Thus, Carrier has stated a claim for contribution under § 113(f) and need not resort to a claim for contribution outside of § 113(f). In any case, no implied right to contribution exists under the law of this Circuit, and, thus, Carrier's claim must proceed pursuant to § 113(f).

**\*13** Before SARA added § 113(f)(1) in 1986, some courts had found that CERCLA allowed implied rights to contribution under § 107(a). Since the addition of § 113(f)(1) in 1986 and after the Supreme Court's decision in *Aviall,* several courts have examined the issue, and have come out on either side.[FN17] The Sixth Circuit, in *Centerior,* although not directly addressing the issue of a possible implied right to contribution, appears to have limited a PRPs cause of action against another PRP to § 113(f):

"Claims by PRPs ... seeking costs from other PRPs are necessarily actions for contribution, and are therefore governed by mechanisms set forth in § 113(f)." *Centerior,* 153 F.3d at 350. Sixth Circuit law, as defined in *Centerior,* thus requires that all actions for contribution be brought under § 113(f).

Since *Centerior,* the Supreme Court, in *Aviall,* has clarified certain prerequisites for bringing a cause of action for contribution. However, despite what Carrier suggests, *Aviall* did not address the question of whether an implied right to contribution exists,[FN18] but rather remanded to the district court for consideration of the argument. *Aviall,* 543 U.S. at 170, 125 S.Ct. 577 ("[W]e decline to decide whether Aviall has an implied right to contribution under § 107."). Furthermore, in dicta, the Court hints that if faced with the issue, it may not find an implied right of contribution under § 107(a). *Aviall,* at 543 U.S. at 586, 125 S.Ct. 1183 (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), *Nw. Airlines, Inc. v. Transp. Workers,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981))(noting that the Court has "visited the subject of implied rights of contribution before" and citing cases in other areas where the Court found no implied right). *Aviall* has not modified the law of this Circuit to permit rights to contribution under § 107(a). Given that *Centerior* is still binding law in this circuit, and that its holding with respect to CERCLA contribution actions has not been reexamined, this Court accordingly finds that Carrier may not bring a claim for contribution under § 107(a). Carrier's sole method for pursuing an action for contribution lies in § 113(f).

### 3. Request for Declaratory Judgment

Quanex states briefly that Carrier's request for declaratory judgment should be dismissed "because both of Carrier's substantive claims under CERCLA fail as a matter of law." (Mem. Supp. Mot. Dismiss, Doc. 19, at 17.) This Court has denied Quanex's motion with respect to the CERCLA causes of action. Accordingly, Quanex's Motion to Dismiss with respect to Count 3 is DENIED.

### 4. State Law Claims

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-11241-JLT    Document 40-3    Filed 01/12/2007    Page 14 of 24    Page 14

Similarly, Quanex asserts that "in the event that the Court finds 12(b)(6) dismissal of Carrier's CERCLA causes of action appropriate, Carrier's state law causes of action should be dismissed as well." (Mem. Supp. Mot. Dismiss, Doc. 19, at 17-18.)(applying 28 U.S.C. § 1367(c)(3) to argue that once the CERCLA causes of action are dismissed, there is no justification for the exercise of supplemental jurisdiction over Carrier's state law claims). Again, this Court has denied Quanex's motion with respect to the CERCLA causes of action. Accordingly, Quanex's Motion to Dismiss with respect to the state law causes of action, Counts 4 through 8, is DENIED.

### 5. Quanex's Successor Liability

*14 Quanex next contends that Carrier's claims should be dismissed for failure to allege facts (even in its First Amended Complaint) sufficient to prove Quanex bears liability as a successor. According to Quanex, Carrier has not alleged that Quanex is the successor to any owner or operator of the Smalley-Piper site,FN19 and thus as a result, the First Amended Complaint should be dismissed as to Quanex.FN20 (Mem. Supp. Mot. Dismiss, Doc. 19, at 18-19.)

[9] Carrier responds that it has sufficiently pled successor liability and also that, even if Quanex were correct, Carrier has also named Quanex individually.FN21 Thus, according to Carrier, the claims against Quanex should not be dismissed.

[10] Under CERCLA, a successor corporation may be held liable for its predecessor's liabilities. *Anspec Co., Inc. v. Johnson Controls, Inc.,* 922 F.2d 1240, 1245 (6th Cir.1991). However, liability is not automatic. State law is applied to determine whether one corporation is the successor of another. *Id. at 1248.*

In *Signature Combs, Inc. v. United States,* applying Tennessee law, the court explained when successor liability may attach:
The general rule is that a corporation that purchases the assets of another corporation is not automatically liable for the obligations of the seller. This rule is subject to four exceptions in which liability will attach: (1) where the purchasing corporation expressly or implicitly agrees to assume the selling corporation's liabilities; (2) where the transaction amounts to a consolidation or merger of the two corporations (a de facto merger); (3) where the purchasing corporation is a mere continuation of the selling corporation; and (4) where the transaction is entered into fraudulently, in order to escape liability for the obligations of the selling corporation.

*Signature Combs, Inc. v. United States,* 331 F.Supp.2d 630, 640 (W.D.Tenn.2004)(citing *City Mgmt. Corp. v. U.S. Chem. Co.,* 43 F.3d 244, 251 (6th Cir.1994))(finding this rule "universally-accepted").

In determining the existence of successor liability, a plaintiff must first show that a transfer of assets has taken place. *See Signature Combs, Inc.,* 331 F.Supp.2d at 640; *see also Third Nat'l Bank v. Showbiz Pizza Time,* 60 F.3d 829, 1995 WL 385118, *2, 1995 U.S.App. LEXIS 16177, at *7 n. 1 (6th Cir.1995).* Then, the plaintiff must allege a state law exception to the general rule regarding successor liability.

Carrier asserts it has sufficiently pled successor liability, and in particular has met the requirements of a de facto merger-the second exception to the general rule.FN22 In a de facto merger, substantially all of a corporation's assets are sold in exchange for the stocks and bonds of the purchasing corporation, and the "selling company retains no property and goes out of business." *Jennings Neff & Co. v. Crystal Ice Co.,* 128 Tenn. 231, 159 S.W. 1088, 1089 (1913), *cited in Signature Combs, Inc., 331 F.Supp.2d at 640.* Tennessee state law has long recognized the doctrine. *See Jennings Neff & Co.,* 159 S.W. at 1089.

*15 [11] Carrier claims that Quanex is a corporate successor to Piper Impact, Inc. (First Am. Compl. ¶ 18.) According to Carrier's First Amended Complaint, "[i]n 1996, Quanex acquired *substantially all of the assets,* including without limitation trade names/trade marks, technology/know-how, patents and other intellectual property, and certain obligations and liabilities of Piper Impact, Inc." (First Am. Compl. ¶ 15.)(emphasis added). Also, "[a]s part of the asset sale, Piper Impact was required to change its

name, which it changed to PII, Inc. PII, Inc. *filed articles of dissolution shortly thereafter.*" (First Am. Compl. ¶ 16.)(emphasis added) And finally, Carrier contends that "Quanex continued Piper Impact, Inc.'s business line and manufacturing operations." (First Am. Compl. ¶ 17.)

Quanex, however, contends that Carrier has not sufficiently pled successor liability with respect to the de facto merger doctrine because according to Quanex, a de facto merger requires an exchange for assets for stock. Carrier has not pled that the assets were exchanged for stock. Nevertheless, considering that the contours of the de facto merger doctrine have not been well defined in the Tennessee courts, the Court finds the reasoning in *Cytec Indus., Inc. v. B.F. Goodrich Co.* to be persuasive. In that case, the court, applying Ohio law, found that

[a] rule mandating the presence of all of the "hallmarks" of a *de facto* merger or always requiring an assets-for-stock transaction would be too rigid, as it would likely except some 'transaction[s] that result[ ] in the dissolution of the predecessor corporation and [that] [are] in the nature of a total absorption of the previous business into the successor.' Such a rule would dilute the *de facto* merger doctrine, which recognizes transactions that are mergers in fact without an official declaration of such.

*Cytec Indus., Inc. v. B.F. Goodrich Co., 196 F.Supp.2d 644, 658 (S.D.Ohio 2002)*(internal citations omitted)(citing *Welco Indus., Inc. v. Applied Cos., 67 Ohio St.3d 344, 617 N.E.2d 1129, 1134 (1993)*). This Court finds that Tennessee law does not preclude a similar analysis in the instant case. The Court finds the holding in *Cytec* to be persuasive. All of the "hallmarks" of a de facto merger need not be present or pled in order for Carrier to be successful. In particular, the absence of asset-for-stock exchange is not fatal. *Cytec Indus., Inc., 196 F.Supp.2d at 658*.

This Court finds that Carrier has satisfied its obligation with respect to sufficiently pleading successor liability. Carrier has thus met the pleading requirement as required in *Fed.R.Civ.P. 8(a)*,[FN23] and Quanex's motion to dismiss for failing to sufficiently plead successor liability is DENIED.

**B. Motion to Dismiss Plaintiff's First Amended Complaint by Piper Defendants**

The Piper Defendants move to dismiss this action on many of the same grounds as Quanex. In addition, Piper Defendants move to dismiss the CERCLA causes of action under § 107(a) and § 113(f) on one additional ground. They contend that Plaintiff has not properly pled that the costs it has claimed to have incurred are "necessary" under CERCLA. Finally, the Piper Defendants also move to dismiss each state law tort cause of action. Unlike Quanex, the Piper Defendants do not limit their argument to the issue of supplemental jurisdiction should the CERLCA claims be dismissed. Thus, their motion to dismiss the tort causes of action shall be addressed below.

**1. "Necessary Costs" Requirement Under CER-LCA**

***16** [12] Section 107(a)(2)(B), which expressly creates a private cause of action to recover response costs, states, in pertinent part, that PRPs "shall be liable for ... (B) any other *necessary costs* of response incurred by any other person consistent with the national contingency plan." (emphasis added) *42 U.S.C. § 9607(a)(2)(B)*(emphasis added). According to the Defendants, this requirement applies to claims under § 113(f) as well.

Defendants claim that Plaintiff has not properly pled that the costs it has claimed to have incurred are "necessary" under CERCLA. According to Defendants, Plaintiff's causes of action under § 107(a) and § 113(f) are therefore not sustainable. (Mem. Supp. Mot. Dismiss Pl. Carrier's First Am. Compl. ("Mot.Dismiss"), Nov. 23, 2005, Doc. 73, at 5-7.) They assert that their position is supported by the Ninth Circuit case *NL Indus., Inc. v. Kaplan, 792 F.2d 896 (9th Cir.1986)*. In *NL Indus., Inc.,* the court affirmed a denial of a motion to dismiss for failure to state a claim. Respondent-appellee had "alleged that he was required by state and local agencies to incur the response costs that he seeks to recover." *Id. at 898.* The court found that respondent-appellee's allegation was "sufficient to support a claim that the incurrence of response costs was 'necessary' under section 107(a)(2)(B) of CERCLA." *Id.* Importantly, the court

did not decide "whether response costs not required by state and local agencies may also be 'necessary.' " *Id.*

The Defendants also cite to *G.J. Leasing Co., Inc. v. Union Elec. Co.,* 54 F.3d 379, 386 (7th Cir.1995) to support their position. In the case, the Seventh Circuit emphasized the importance of the "statutory limitation to 'necessary' costs of cleaning up" and affirmed the district court's decision finding the costs of removing asbestos unnecessary. *Id.* This Court finds the case inapposite. *G.J. Leasing Co.* was heard on appeal once the district court granted summary judgment after a bench trial. At the motion to dismiss stage, however, this Court is not required to decide whether the costs were, in fact, necessary.

In *McGregor v. Industrial Excess Landfill, Inc.,* the Sixth Circuit affirmed the granting of defendants' motions to dismiss where it found that plaintiffs had "failed to allege any ... factual basis for their conclusory allegation that they had personally incurred response costs consistent with the National Contingency Plan." *McGregor v. Indus. Excess Landfill, Inc.,* 856 F.2d 39, 43 (6th Cir.1988). According to the court, the plaintiffs had "failed completely to allege in their complaints either the costs they incurred or, at minimum, the actions they took in response to the allegedly hazardous conditions." *Id.* at 42. In the instant case, Carrier has made more than a "conclusory allegation" with respect to the necessity of the costs it has incurred.

Carrier alleges that it "has incurred and will continue to incur substantial costs in researching and implanting options for treating chromium in the water from Water Plant 2." (First Am. Compl. ¶ 50; *see also* First Am. Compl. ¶ 49, 51.) This Court infers from the First Amended Complaint that the chromium contamination has impacted Carrier's ability to meet its obligation under the USEPA's Record of Decision ("ROD") to "maintain control over the TCE contamination in groundwater by pumping and treating the groundwater through Water Plant 2." (First Am. Compl. ¶ 44.) After the Town, in April 2003, detected chromium in Water Plant 2, it allegedly "shut down Water Plant 2 directly and solely as a result of the presence of unacceptable levels of chromium."

(First Am. Compl. ¶ 47.) To resolve the situation, the Town and Carrier entered into an Interim Agreement which allegedly required Carrier to "discharge treated groundwater from Water Plant 2 to the Town's publicly owned treatment works ('POTW')." (First Am. Compl. ¶ 48.) Carrier alleges that pursuant to the Interim Agreement it is "required to treat the groundwater for chromium in order to discharge to the POTW." *Id.* It appears to the Court that Carrier has sufficiently pled that the costs of removing the chromium have been necessary in order for it to resume fulfilling its obligations under the ROD and abide by the Interim Agreement.

**\*17** There is no doubt that Carrier has "give[n] the defendant fair notice of what [its] claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Unlike the plaintiffs in *McGregor,* Carrier's allegations are not conclusory. Accordingly, the Court DENIES the Piper Defendants' motion to dismiss as to Count 1 and Count 2.

Additionally, the Piper Defendants move to dismiss the state law claims. For the following reasons, the Court also DENIES the Piper Defendants' motion as to Counts 4 through 8.

### 2. Negligence

The Piper Defendants assert that "[ t] he common law negligence claim must fail because Carrier has not properly alleged that the Piper Defendants owed a duty to Carrier to prevent chromium releases or to conduct remediation at the Water Plant 2 site, nor has Carrier properly alleged a true injury." (Mot. Dismiss Pl. Carrier's First Am. Compl., Nov. 23, 2005, Doc. 72, at 3.) In its First Amended Complaint, Carrier alleged as follows:
"As owners and operators of the Smalley-Piper Site, Defendants *had a duty* to properly own, operate and/or manage their activities and operations at the Smalley-Piper Site, to use the premises in a reasonable manner in the course of their business activities so as not to endanger the rights or safety of others, and to ensure against the possibility of causing the soil and groundwater oat the Smalley-Piper Site and surrounding properties from being contaminated."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
(Cite as: --- F.Supp.2d ----)

Case 1:05-cv-11241-JLT    Document 40-3    Filed 01/12/2007    Page 17 of 24    Page 17

(First Am. Compl. ¶ 77)(emphasis added).

In *Sterling v. Velsicol Chemical Corp.,* the Court found "a duty, a standard of conduct, imposed by law on [the defendant] to protect others from unreasonable harm arising from the dumping of the chemicals." *Sterling v. Velsicol Chem. Corp., 647 F.Supp. 303, 316 (W.D.Tenn.1986).* Carrier has sufficiently pled the existence of a similar duty on the party of the Piper Defendants.

Carrier has also sufficiently alleged a "true injury" as a result of the chromium contamination. Without citing to any case law for their assertion, the Defendants claim that the "expenditures for the voluntary cleanup of the chromium ... is an 'injury' which [Carrier] has brought upon itself." (Mot. Dismiss, Doc. 73, at 11.) Whether it is eventually found that the costs Carrier incurred were "voluntary," as the Piper Defendants contend, or "necessary," this Court finds that Carrier has sufficiently pled a "true injury." The Piper Defendants' Motion to Dismiss Count 4 is DENIED.

### 3. Negligence Per Se

The Piper Defendants also contend that "[t]he negligence per se claims must fail because Carrier has not properly alleged it is within the class of persons that were intended to be beneficiaries under the statute." (Mot. Dismiss Pl. Carrier's First Am. Compl., Doc. 72, at 3.) Again, the Defendants fail to cite to any case law in support of this contention. In its First Amended Complaint, Carrier alleges that it is a member of the class of persons intended to be protected by both the Tennessee Safe Drinking Water Act, Tenn.Code Ann. § 68-221-711(4) ("TNSDWA") and the Tennessee Hazardous Waste Management Act, Tenn.Code Ann. § 68-212-105(1) ("TNHWMA"). (First Am. Compl. ¶¶ 86, 88.) Carrier also alleges that its injury is of the type that both TNSDWA and TNHWMA were intended to prevent. (First Am. Compl. ¶¶ 86, 88.) This Court finds that Carrier has sufficiently stated a claim and thus the Piper Defendants' Motion to Dismiss with respect to Counts 5 and 6 is DENIED.

### 4. Public Nuisance

*18 Also, according to the Piper Defendants, "[t]he

public nuisance claim must be denied because Carrier has not alleged the requisite special injury." (Mot. Dismiss Pl. Carrier's First Am. Compl., Doc. 72, at 3.) The Piper Defendants asserts that "Carrier has not alleged any type of true 'injury,' since it voluntarily began remediation efforts at the Water Plant 2 site for its own benefit. As such, Carrier created its own 'special injury'...." (Mot. Dismiss, Doc. 73, at 13.) Carrier clearly disputes that its efforts at Water Plant 2 were "voluntary." And, once again, the Piper Defendants do not cite any authority to support their assertion that Carrier has not sufficiently stated a claim. Furthermore, in its First Amended Complaint, Carrier alleges that it "has incurred, and will continue to incur, substantial investigatory cleanup and other costs due to the presence of ... chromium at Water Plant 2." (First Am. Compl. ¶ 92.) This Court, therefore, finds that the Piper Defendants' Motion to Dismiss with respect to Count 7 is DENIED.

### 5. Res Ipsa Loquitur

Finally, the Piper Defendants claims that "the res ipsa loquitur claim is improper because res ipsa loquitur is an evidentiary rule, not a separate cause of action; furthermore, Carrier has not alleged that it meets the requirements to utilize the doctrine." (Mot. Dismiss Pl. Carrier's First Am. Compl., Doc. 72, at 3.)

[13] In Tennessee, it is well established that the doctrine of res ipsa loquitur is a rule of evidence, not a rule of substantive law. *Quinley v. Cocke, 183 Tenn. 428, 192 S.W.2d 992, 996 (1946), overruled on other grounds; Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86 (Tenn.1999); Burton v. Warren Farmers Coop., 129 S.W.3d 513, 525 (Tenn.Ct.App.2002).* Res ipsa loquitur allows for "an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent." *Seavers, 9 S.W.3d at 91* (citations omitted). "The weight of any inference to be drawn from the evidence is for the determination of the jury." *Id.* (citing *Franklin v. Collins Chapel Connectional Hosp., 696 S.W.2d 16, 21 (Tenn.Ct.App.1985)).* Also, "[t]he application of the ... doctrine can only occur in the context of an underlying negligence claim." *Burton, 129 S.W.3d at 522.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
(Cite as: --- F.Supp.2d ----)

This Court finds the Third Circuit's explanation instructive:

The res ipsa loquitur doctrine is simply a rule of evidence and like any other rule of evidence it is brought into play where the situation presented makes it applicable. It does not have to be pleaded in the complaint or 'noticed' by specific designation to the adverse party at pre-trial or at trial, since *it is neither a cause of action* nor a ground for recovery, nor an 'issue'.

*Fassbinder v. Pa. R.R. Co.,* 322 F.2d 859, 863 (3d Cir.1963)(emphasis added). Thus, "to the extent that *res ipsa loquitur* is plead [sic] as a cause of action in the complaint, it must be DISMISSED." *Steward-Sterling One, LLC. v. Tricon Global Restaurants, Inc.,* 2001 WL 88207, *2, 2001 U.S. Dist. LEXIS 1425, at *7 (E.D.La. Jan. 31, 2001).

*19 [14] Furthermore, whether res ipsa loquitur is applicable in the instant case is not a question to be resolved at the motion to dismiss stage. "[T]he application of the res ipsa loquitur doctrine is so fact-dependent that the courts may apply it in one set of circumstances but decline to apply it in a similar set of circumstances with only slight factual differences." *Burton,* 129 S.W.3d at 526-27. Thus, this Court finds it inappropriate to find res ipsa loquitur inapplicable only because, as the Piper Defendants assert, "[t]he mechanics of underground migration are complex." (Mot. Dismiss, Doc. 73, at 14.)

### C. Motion for Summary Judgment by Defendant Lund

Defendant Lund moves for summary judgment, contending that it is not liable to Carrier because it is not an "operator" as defined by CERCLA, and thus not a "covered person" as defined by § 107(a)(1), which extends liability to "the owner and operator of a vessel or facility." (Mem. Auths. Supp. Lund's Mot. Summ. J. ("Mem.Auths."), Nov. 7, 2005, Doc. 67, at 5-10.) In other words, it does not fall within the class of PRPs under CERCLA. With respect to the tort causes of action, Lund contends that Carrier fails to provide any facts to support causation, and thus requests summary judgment with respect to the common law counts as well. (Mem. Auths., Doc. 67, at

11-12.) Thus, according to Lund, summary judgment is appropriate for both the CERLCA and the tort causes of action.

### 1. Lund's Liability as an "Operator" under CERCLA § 107(a)

[15] Lund claims that it is not an "operator" within the meaning of § 107(a)(1). According to Lund, the chromium waste at issue was generated by a former owner or operator of the Smalley-Piper Site in the 1970s. Also, "those operations had ceased by the early 1980s, and [the] sludges in impoundments on the Site containing chromium waste were capped by the former owner/operator in 1982." (Mem. Auths., Doc. 67, at 2.) Lund asserts that it began to operate its business on the Smalley-Piper Site beginning in April 2004-since then, it has leased from the current owner approximately two acres of the nine acre Smalley-Piper Site. (*Id.*) Lund claims that it has never generated by its operations or disposed of any hazardous substances on the Site. (*Id.* at 2-3.) Also, according to Lund, it has never controlled or had the authority to control any of the chromium which it asserts is allegedly buried at the Site adjacent to the two acres it has leased. (*Id.* at 3.) According to Lund, it "did not cause, contribute to or assume responsibility for" the chromium released from the Site. (*Id.*) Further, Lund asserts that operating a business on two of the nine acres of the Smalley-Piper Site does not result in CERCLA liability for wastes deposited more than twenty years before Lund was even incorporated or doing business. (*Id.* at 5.) Thus, it moves for summary judgment with respect to all of Carrier's CERCLA claims.

*20 In order to prove CERCLA liability, under either § 107(a) or § 113(f), Carrier must be able to prove that Lund is an "operator" (and thus a "covered person") of a "facility" under the statute. According to Lund, Carrier cannot meet this burden.

Carrier claims that Lund is a PRP because it is a current operator under § 107(a)(1). (Obj. to Lund' s Mot. Summ. J., Dec. 14, 2005, Doc. 83, at 6.) It has not claimed that Lund falls under § 107(a)(2), which provides for the liability of former owners and operators. 42 U.S.C. § 9607(a)(2)(providing for liability

of "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of"). This distinction is important because courts have treated current owners or operators differently than past owners or operators.

As discussed with respect to Quanex's Motion to Dismiss Amended Complaint, § 107(a)(1) "imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation." *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir.1985); *Memphis Zane May Associates v. IBC Mfg. Co.*, 952 F.Supp. 541, 546 (W.D.Tenn.1996)("For defendants sued as 'owners' or 'operaters' under CERCLA, a plaintiff must show only that the defendant currently owns or operates the site. A current owner or operator thus is liable even if it had no relationship to the site when the hazardous wastes at issue were disposed.") (citations omitted). Thus, "there is potential liability regardless of when the disposal occurred." *United States v. Nat'l Bank of Commonwealth*, 1990 WL 357792, at *3 (W.D.Pa. Apr.23, 1990).

The cases to which Lund cites, for the most part, involve the potential liability of *former* owners and operators pursuant to § 107(a)(2).[FN24] For example, in *United States v. Twp. of Brighton*, the court applied an "actual control" test, referring to the Supreme Court's decision in *United States v. Bestfoods*, 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)("[A]n operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.") *United States v. Twp. of Brighton*, 153 F.3d 307, 325 (6th Cir.1998). However, *Twp. of Brighton* concerned the liability of a former operator, not a current operator as in the instant case. *See also Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir.1992)(addressing claims against former tenants); *United States v. TIC Inv. Corp.*, 866 F.Supp. 1173 (N.D.Iowa 1994) (applying § 107(a)(2), not § 107(a)(1)).

Even *New York v. Westwood-Squibb Pharmaceutical*

*Co.*, which Lund cites for support of its motion, does not help Lund's position. In that case, the court found that the defendant, "a current owner," was liable under § 107(a)(1) and could not "claim immunity based on the theory that disposal occurred prior to ownership." *New York v. Westwood-Squibb Pharm. Co.*, 138 F.Supp.2d 372, 380 (W.D.N.Y.2000).

**\*21** Even if current operator liability under CERCLA required "actual control," Carrier has pointed to evidence establishing a genuine issue of material fact with respect to Lund's control of the Smalley-Piper Site as it relates to the chromium contamination. According to the Agency for Toxic Substances and Disease Registry ("ATSDR"), Lund uses an iron slurry as part of its operations at the Site. ATSDR, *Public Health Assessment for Smalley-Piper Collierville, Shelby County, Tennessee-Public Comment Release*, Nov. 25, 2005 ("ATSDR *Public Health Assessment* "). Furthermore, the USEPA has found that the iron slurry currently used at the Site contains chromium. USEPA, *NPL Site Narrative for Smalley-Piper-Site History* ("USEPA NPL Site Narrative"). Finally, the plating of farm tools has been linked to chromium contamination at the Smalley-Piper Site. Weston Solutions, *Site Inspection, Revision 0, Smalley-Piper Technical Direction Document*, Nov. 15, 2002 ("Weston Site Inspection"). Thus, even if Carrier were required to show that Lund "manage[d], direct[ed], or conduct[ed] operations specifically related to pollution," it has shown that there is a genuine issue as to this fact.[FN25]

Finally, Lund suggests, indirectly, that the portion of the Smalley-Piper Site that it has leased should not be considered part of the "facility" at issue. (Mem. Auths., Doc. 67, at 9.) However, applying the same reasoning used to find the Carrier Air Conditioning Superfund Site a single "facility," the Court finds that the Smalley-Piper site is also one "facility" for CERCLA purposes. Although it is true that "the bounds of a facility should be defined at least in part by the bounds of the contamination," *Twp. of Brighton*, 153 F.3d at 313, the definition of a "facility" is not as narrow as Lund suggests. *See United States v. 150 Acres of Land* 204 F.3d 698, 709 (6th Cir.2000)(finding that three parcels were one facility under CERCLA); *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 191

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
**(Cite as: --- F.Supp.2d ----)**

F.3d 409, 418 (4th Cir.1999). Furthermore, Weston Solutions, a consultant retained by USEPA to test at the Smalley-Piper Site, has noted that the chromium contamination is potentially located in contaminated soil throughout the Smalley-Piper Site. Weston Site Inspection, at 4. Also, the USEPA has concluded that the entire Smalley-Piper Site is a "facility." USEPA, *Administrative Order on Consent for Remedial Investigation/Feasibility Study for the Smalley Piper Site* ("Smalley-Piper AOC"), at 8.

Thus, this Court finds that there remains a genuine issue of material fact as to Carrier's CERCLA claims against Lund. Summary judgment is, therefore, DENIED with respect to Counts 1 through 2.

**2. Lund's Liability for the Tort Causes of Action**

With respect to the tort causes of action, Lund contends that the Plaintiff fails to provide any facts to support causation, and that, Lund is, therefore, entitled to summary judgment. To support its position, Lund cites to a few Tennessee cases for the proposition that a plaintiff in a negligence action must prove causation. (Mem. Auths., Doc. 67, at 11.) According to Lund, "Plaintiff's [Amended] Complaint does not even purport to allege facts linking any act or activity of Lund to the release of chromium from the Smalley-Piper Site." *(Id.* at 12.)

**\*22** As explained by the Tennessee Supreme Court, "[c]ause in fact and proximate cause are 'ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.' " *Hale v. Ostrow,* 166 S.W.3d 713, 718 (Tenn.2005)(quoting *Haynes v. Hamilton County,* 883 S.W.2d 606, 612 (Tenn.1994)). As discussed previously, Carrier has offered evidence suggesting that there is a genuine issue as to Lund's possible contribution to the chromium contamination at the Smalley-Piper Site. Therefore, this Court DENIES Lund's Motion for Summary Judgment with respect to Counts 4 through 8.

**IV. CONCLUSION**

As set forth above, Defendant Quanex's Motion to Dismiss Amended Complaint is DENIED IN PART

AND GRANTED IN PART; the Piper Defendants' Motion to Dismiss Plaintiff Carrier's First Amended Complaint is DENIED IN PART AND GRANTED IN PART; and Defendant Lund's Motion for Summary Judgment is DENIED.

So ORDERED this 30th day of September, 2006.

> FN1. This motion was filed by Defendants Paul P. Piper, Jr., Individually and as Executor of the Estate of Paul P. Piper, Sr.; Piper Industrial Coatings, Inc.; Piper Mini-Storage, Inc.; Piper Industries, Inc., a Texas Corporation; Claudia B. Piper, Individually and as Trustee for Annette Allison Piper, Paul Gordon Piper, and Ronald K. Piper, Jr.; Annette Piper Sandstorm; Paul Gordon Piper; and Ronald K. Piper, Jr. The Court will refer to these defendants collectively as "the Piper Defendants."

> FN2. According to Carrier, "the presence of chromium at Water Plant 2 jeopardizes Carrier's ability to meet its obligation to treat TCE .... As a result, it has become necessary for Carrier to treat the chromium along with the TCE." (Mem. Law Supp. Pl.'s Obj. to Piper Defs.' Mot. Dismiss Carrier's First Am. Compl., Dec. 23, 2005, Doc. 86, at 2.)

> FN3. The four categories of Potentially Responsible Parties ("PRPs") are as follows: (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment

facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ....

42 U.S.C. § 9607(a). Case 2:05-c

FN4. Not all courts that have examined the issue agree that a PRP is precluded from pursuing an action under § 107(a) against other PRPs for joint and several liability. The Supreme Court has not yet decided the issue-most recently, in *Cooper Industries, Inc. v. Aviall Services, Inc.,* the Supreme Court, while not deciding either way, remanded to the district court for proceedings on the issue. *Cooper Indus., Inc. v. Aviall Servs.,Inc.,* 543 U.S. 157, 169-71, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004). Despite the differences of opinion, *Centerior,* binding law for courts in the Sixth Circuit, determines the proper approach for this Court. Thus, if Carrier is a PRP, it cannot proceed under § 107(a).

FN5. The court in *Kalamazoo,* however, made clear that there must be a causal nexus between the release of hazardous materials and the incurrence of response costs. *Kalamazoo,* 228 F.3d at 656 n. 5. In other words, plaintiff must have incurred some response costs in response to a release or threatened release of hazardous substance.

FN6. Also, according to the court in *Kalamazoo,* "consideration of causation is proper only in allocating response costs, not in determining liability." *Kalamazoo,* 228 F.3d at 656 (citing to 42 U.S.C. § 9613(f)(1), but noting that the standard of liability is the same under both § 113 and § 107).

FN7. The "Carrier Air Conditioning Superfund Site," as defined in the UAO of February 11, 2003, encompasses approximately 135 acres on Byhalia Road in Collierville, Tennessee, as well as "all areas to which hazardous substances released at this parcel

have migrated and all areas in close proximity to the contamination that are necessary for implementation of the Work...." UAO ¶ III(U). The UAO refers to a map attached as Exhibit 3, but the parties have not provided the Court with that map.

FN8. In *HRW Sys.,Inc.v. Wash. Gas Light Co.,* 823 F.Supp. 318, 349 (D.Md.1993) (internal citations omitted), the court found that the disposal of other hazardous substances at the site did not deprive HRW of the defense under § 107(b)(3):

The statute requires only that the landowner prove that 'the release ... of a hazardous substance and the damages resulting therefrom were caused solely by ... an act or omission of a third party.' Had Congress intended to deprive landowners of this defense, it could have phrased the language of this portion of the statute in the plural, requiring proof that the release of hazardous *substances* was caused by a third party, or that the release of *all* hazardous substances found on the property was caused by a third party. By selecting the singular form, Congress clearly intended that the party responsible for the pollution should be liable for its cleanup. *Id.*

FN9. The cases that Quanex puts forward to support the position that Carrier cannot qualify as an innocent party under § 107(b)(3) are inapposite. (*See* Reply Mem. Supp. Mot. Dismiss, Doc. 49, at 6-7.) (citing *United States v. Rohm & Haas Co.,* 939 F.Supp. 1142, 1152 (D.N.J.1996); *City of New York v. Exxon Corp.,* 766 F.Supp. 177, 195 (S.D.N.Y.1991); *Cont'l Title Co. v. Peoples Gas Light and Coke Co.,* 1999 WL 1250666, at *11 (N.D.Ill., Mar.18, 1999); *Signature Combs, Inc. v. United States,* 248 F.Supp.2d 741, 748 (W.D.Tenn.2003); *Carter-Jones Lumber Co. v. Dixie Distrib. Co.,* 166 F.3d 840, 845 (6th Cir.1999)). None examine the question confronted by this case. None of the cases deal with the circumstance where a party, who has released hazardous substances in the past, alleges complete inno-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)

**(Cite as: --- F.Supp.2d ----)**

Page 22

cence with respect to the release of the particular hazardous substance at issue in the litigation.

Quanex, in its reply, suggests indirectly that Carrier is not entitled to the § 107(b)(3) defense because the defense is only available to landowners. This argument is unpersuasive. As Carrier asserts in its Objection, the text of § 107(b)(3) does nothing to suggest such a limitation. Sixth Circuit case law also does not compel a different interpretation. The analysis in *Signature Combs*, 248 F.Supp.2d at 748, to which Quanex cites, is inapplicable-the court in that instance was concerned with a possible "innocent PRP" exception outside the statutory framework of § 107(b). Here, Carrier, is asserting that it is not a PRP and thus should be allowed to bring an action under § 107(a). The other case that Quanex cites to, *HRW Systems*, is also inapplicable to Quanex's point. (Reply Mem. Supp. Mot. Dismiss, Sept. 20, 2005, Doc. 49, at 7 n. 3.) Quanex's suggestion that *HRW Systems* limited the defense of § 107(b)(3) to landowners is misleading. To support its point, Quanex states that "[i]n addressing that non-landowner who generated some of the hazardous substances at issue in *HRW Systems*, the court simply stated that the § 107(b)(3) defense was 'of course, unavailable.' " *Id.* (citing *HRW Sys.*, 823 F.Supp. at 347).) However, the reason that the defense was unavailable to the party in question was not its status as a non-landowner-in fact, the court found that all the parties in the case were "owners and operators within the contemplation of the statute." *HRW Sys.*, 823 F.Supp. at 337.

FN10. Plaintiff has not responded to the merits of Quanex's allegations, and asks the Court to deny Quanex's invitation to do so. (Obj. Carrier Corp. to Def. Quanex Corp.'s Mot. Dismiss Am. Compl., Oct. 13, 2005, Doc. 51, at 3.) Carrier cites to *Signature Combs* for the idea that the purpose of a 12(b)(6) motion is to test the sufficiency of

the claim, not to resolve it. *Signature Combs*, 253 F.Supp.at 1031.

FN11. "It is true that the equitable contribution principles of § 113(f) permit a district court to consider causation. However, consideration of causation is proper only in allocating response costs, not in determining liability." *Kalamazoo*, 228 F.3d at 656.

FN12. Section 113 "grants the district court discretion to allocate response costs among liable parties." *Kalamazoo*, 228 F.3d at 653.

FN13. There are two express avenues for contribution under § 113: (1) during or following a civil action; or (2) after an administrative or judicially approved settlement. *Aviall*, 543 U.S. at 168, 125 S.Ct. 577.

FN14. The savings clause in § 113(f)(1) is the following part: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title."

FN15. *Centerior* does not decide the situation of when a PRP "initiated cleanup voluntarily without any governmental prodding." *Centerior*, 153 F.3d at 352, n. 10. However, this is not the issue in the instant case because Carrier did not initiate cleanup "voluntarily without any governmental prodding."

FN16. Further, this Court believes that it is not that the Supreme Court in *Aviall* did not choose to make the distinction Carrier calls for-rather, the Court seems to conclude that the only **statute** of **limitations** applicable to CERCLA contribution claims is **§ 113(g)(3)**. *See Aviall*, 543 U.S. at 167, 125 S.Ct. 577("As noted above, § 113 provides two express avenues for contribution: § 113(f)(1) ('during or following' specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)
(Cite as: --- F.Supp.2d ----)

Case 1:05-cv-11241-JLT     Document 40-3     Filed 01/12/2007     Page 23 of 24     Page 23

State). **Section 113(g)(3)** then provides two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, **§ 113(g)(3)**(A), and one beginning at the date of settlement, **§ 113(g)(3)**(B)."); *see also Centerior, 153 F.3d at 348*(stating that SARA "established a three-year **statute** of **limitations** for contribution claims.") (citations omitted).

FN17. For cases finding that PRPs do not have an implied right to contribution, see *Montville Twp. v. Woodmont Builders, LLC, 2005 WL 2000204 (D.N.J., Aug.17, 2005)*; *Kaladish v. Uniroyal Holding, Inc., 2005 WL 2001174 (D.Conn., Aug.9, 2005)*; *Mercury Mall Assocs. v. Nick's Market, Inc., 368 F.Supp.2d 513 (E.D.Va.2005)*; *City of Waukesha v. Viacom Int'l, Inc., 362 F.Supp.2d 1025 (E.D.Wis.2005)*; *Elementis Chems., Inc. v. T.H. Agric. & Nutrition, L.L.C., 373 F.Supp.2d 257 (S.D.N.Y.2005)*. For cases finding an implied right of contribution arising out of CERCLA's § 107(a), see *Viacom, Inc. v. United States, 2005 WL 1902849 (D.D.C., July 19, 2005)*; *Ferguson v. Arcata Redwood Co., 2005 WL 1869445 (N.D.Cal., Aug.5, 2005)*; *Adobe Lumber, Inc. v. Taecker, 2005 WL 1367065 (E.D.Cal., May 24, 2005)*; *Metropolitan Water Reclamation Dist. v. Lake River Corp., 365 F.Supp.2d 913 (N.D.Ill.2005)*; *Vine Street LLC v. Keeling, 362 F.Supp.2d 754 (E.D.Tex.2005)*.

FN18. The Supreme Court, in *Aviall,* reasoned that the "sole function" of the savings clause in § 113(f)(1)

is to clarify that § 113(f)(1) does nothing to 'diminish' any cause(s) of action for contribution that may exist independently of § 113(f)(1). In other words, the sentence rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for contribution available to a PRP. The sentence, however, does not itself establish a cause of action; nor does it expand §

113(f)(1) to authorize contribution actions not brought 'during or following' a § 106 or § 107(a) civil action; nor does it specify what causes of action for contribution, if any, exist outside 113(f)(1). *Aviall, 125 S.Ct. at 583-84*.

FN19. In particular, Quanex asserts that Carrier has failed to allege that Quanex has succeeded to the liabilities of Piper Impact.

FN20. Quanex also asserts that Carrier has failed to allege an applicable exception for each succession-how Piper Impact has succeeded to the liabilities of U.S. Extrusion, and how U.S. Extrusion has succeeded to the liabilities of Piper Industries. This Court, however, agrees with Carrier-because Piper Impact and U.S. Extrusion have also been named individually in the Amended Complaint, Carrier need not allege each link in the chain.

FN21. When a successor company becomes a new "owner or operator" of a facility, it becomes directly liable and successor liability doctrine is not needed. *United States v. Price, 523 F.Supp. 1055, 1073-74 (D.N.J.1981)*, *aff'd, 688 F.2d 204 (3d Cir.1982)* (new facility owner liable although not creator of the hazardous condition). By naming Quanex individually, Carrier is presumably alleging that Quanex is a new "owner or operator" of the Smalley-Piper site. Carrier also asserts, in its Amended Complaint, that "Defendants are and/or were 'owners' and/or 'operators' of the Smalley-Piper Site." *(See* First Am. Compl. ¶¶ 65.) Construing all of the allegations in the light most favorable to Carrier, the non-moving party, this Court finds that Carrier has also sufficiently pled direct liability on the part of Quanex.

FN22. Carrier also claims that it has alleged facts in its Amended Complaint sufficient to show a legal merger. The Court finds that Carrier has alleged sufficient facts under the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 24

--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)

**(Cite as: --- F.Supp.2d ----)**

de facto merger doctrine, and thus does not address this claim.

FN23. Fed.R.Civ.P. 8(a) requires that a pleading contain "a short, plain statement of the claim...."

FN24. Another case cited to by Lund, *Commander Oil Corp. v. Barlo Equipment Corp.*, is inapplicable to the instant case. In that case, the court was examining the potential liability of a subtenant as a current *owner*, not as a current *operator*. *Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321 (2d Cir.2000)*.

FN25. Furthermore, under CERCLA, while "one discharge is sufficient to support liability ... there is no requirement that the generator typically discharge waste to the site." *Kalamazoo, 228 F.3d at 660 n. 7.*

W.D.Tenn.,2006.
Carrier Corp. v. Piper
--- F.Supp.2d ----, 2006 WL 3025842 (W.D.Tenn.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3622259 (Trial Motion, Memorandum and Affidavit) Quanex Corporation's Objection to Plaintiff's Motion to Dismiss Defendant Quanex's Counterclaim (Dec. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 3496630 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Carrier Corporation's Motion to Dismiss Defendant Quanex's Counterclaim (Nov. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 3496629 (Trial Pleading) Quanex Corporation's Answer and Affirmative Defenses and Counterclaim to Plaintiff's First Amended Complaint (Oct. 18, 2006) Original Image of this Document (PDF)

• 2006 WL 1497383 (Trial Motion, Memorandum and Affidavit) Defendants Paul P. Piper, Jr., Individually and As Executor of the Estate of Paul P. Piper, Sr., Piper Industrial Coatings, Inc., Piper Mini-Storage, Inc., Piper Industries, Inc., A Texas Corporation, Claudia B. Piper, Individually, and as Trustee fo r Annette Allison Piper, Paul Gordon Piper and

Ronald K. Piper, Jr., Annette Piper Sandstorm, Paul Gordon Piper and Ronald K. Piper, Jr.'s Reply Memorandum in Support of Their Motion to Dismiss Plaintiff Carrier's First Amended Complaint (Jan. 6, 2006) Original Image of this Document (PDF)

• 2005 WL 4929011 (Trial Pleading) Answer of the Piper Defendants to Plaintiff's First Amended Complaint (2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.