UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BASF CATALYSTS LLC,                    *
                                       *
              Plaintiff,               *
     v.                                *        Civil Action No. 05-11241-JLT
                                       *
UNITED STATES OF AMERICA, et al.,      *
                                       *
              Defendants.              *

MEMORANDUM

March 26, 2007

TAURO, J.

Plaintiff, BASF Catalysts LLC, previously Engelhard Corporation, is suing Defendants,

agencies and officials of the United States of America, to obtain compensation for environmental

cleanup costs incurred by the Plaintiff at its Plainville, Massachusetts, facility.

**Background**

Plaintiff alleges the following facts: Throughout the 1950s and 1960s, Plaintiff contracted

with Defendant United States Department of Defense for nuclear fuel fabrication and

development services, all of which were completed at the Plaintiff's Plainville facility. During the

entire period that Plaintiff manufactured nuclear fuel at the Plainville facility, the United States,

through the Atomic Energy Commission, held title to the nuclear materials. The United States, in

fact, allegedly still retains ownership of the radioactive materials dispersed at the Plainville facility.


Similarly, contracts between Plaintiff and the United States Mint required the United

States to supply Plaintiff with government-owned materials used in the Plainville coinage and coin

1

stock manufacturing operations.  As part of these operations, Plaintiff engaged in various

activities which led to unintentional spills and releases resulting in the pollution of the Plainsville

site with radionuclides, trichloroethylene, heavy metals, and other pollutants.

Since the 1980's, Plaintiff has been cleaning up hazardous substances at the Plainville

facility.  Initially Plaintiff undertook these cleanup activities voluntarily.  On August 27, 1993,

Plaintiff signed a Consent Order with the Environmental Protection Agency ("EPA") under the  §

3008 corrective action program of the Resource Conservation and Recovery Act of 1976

("RCRA").[1]  This Consent Order took effect on September 9, 1993.  It requires Plaintiff to

investigate and remedy past releases of hazardous waste at the Plainville facility, regardless of

when the release occurred.

After signing this agreement, Plaintiff followed through on its promises and was never

subject to any further enforcement action, including any action under the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA").  Through

December 2004, Plaintiff has spent in excess of $15 million implementing the cleanup at the

Plainville facility and has purchased five nearby homes at cost of $971,000.  Plaintiff alleges in the

Complaint that these expenditures are "necessary costs of response . . . consistent with the

national contingency plan," within the meaning of Section 107(a)(4)(B) of CERCLA.

On June 13, 2005, almost twelve years after signing the Consent Order, Plaintiff filed this

action which charges that the United States, through its ownership of processed materials and

manufacturing contracts with Plaintiff, significantly contributed to contamination at the Plainville

facility and, therefore, is liable for cleanup costs under various statutory and common law

---

[1] 42 U.S.C. § 6928(h) (2007).

2

theories.  Now before the court are cross-motions which address two carefully defined legal issues

which control whether Plaintiff can recover contribution, as defined by § 113(f)(3)(B) of

CERCLA.

**Standard of Review**

Through cross-motions, the parties have isolated two questions of law for the court.

Plaintiff styles its motion as a <u>Motion for Declaratory and Summary Judgment</u>.  Defendants have

entitled their filing a <u>Motion for Judgment on the Pleadings on Plaintiff's Fourth Cause of Action</u>.

To resolve the legal issues presented here, the court will largely rely on the facts as

presented in the Complaint, and which are not disputed by the Defendants for the purposes of

these motions.  Parties have also attached two exhibits to their motions, including the Consent

Order and certain tolling agreements.  As the court will rely on these documents, and as the

Parties have had "reasonable opportunity to present all material made pertinent" to the issues

presented, it is appropriate for the court to convert Defendants' motion into a <u>Motion for</u>

<u>Summary Judgment on Count IV</u>.[2]  The court takes this procedural step only so that it may

properly cite to the documents in evidence.  The court's ruling does not limit Defendants' right to

challenge the factual allegations in the Complaint during the litigation of the remaining counts in

this case.

Summary Judgment is appropriate when there is no genuine dispute of material fact and

the moving party is entitled to judgement as a matter of law.[3]  Because the only disputes in this

case are about the legal ramifications of various documents, this case is ripe for the court to

---

[2] Fed. R. Civ. P. 12(c).

[3] Fed. R. Civ. P. 56(c).

declare its rulings on the disputed matters of law and to issue Summary Judgment on Count IV.

**Discussion**

Plaintiff seeks contribution from the United States for its equitable share of costs incurred by Plaintiff in cleaning up its site in Plainville. CERCLA § 113(f)(3)(B) provides that a party "who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution" from another potentially responsible party ("PRP") for an equitable share of those costs.[4] Here Plaintiff argues that its RCRA settlement with the EPA is an administrative settlement within the meaning of § 113. Defendants disagree and further argue in the alternative that the applicable statute of limitations bars any action Plaintiff may have.[5]

    I.    <u>The RCRA Consent Order is not an administrative settlement within the meaning of CERCLA</u>

RCRA requires that hazardous waste disposal site operators receive permits from the EPA.[6] As part of this permitting process, the EPA may require that the applicant take certain corrective measures.[7] In 1993, Plaintiff, in settlement of its permit dispute with the EPA, entered into a Consent Order where it agreed to take certain remedial measures at its Plainsville site.[8] Defendants assert two grounds as to why this Consent Order is not an administratively approved

---

[4] 42 U.S.C. § 9613(f)(3)(B).

[5] <u>See</u> 42 U.S.C. §9613(g).

[6] 42 U.S.C. § 6925.

[7] 42 U.S.C. § 6928(h).

[8] RCRA Section 3008(h) Administrative Order, <u>Defs.' Mem. in Supp. of Mot. for J. on the Pleadings</u>, Paper #29, Ex. 1, p. 113 [hereinafter Consent Order].

settlement within the meaning of CERCLA § 113(f)(3)(B).

> A.    *Plaintiff may have acted on a common liability*

Defendants maintain that the Consent Order imposes liability only on Plaintiff, which was engaged in the administrative process of seeking a license, and not on the Defendants who were allegedly partially responsible for the original contamination.  Section 113(f)(3)(b) does implicitly require that the triggering settlement resolve a party's share of liability for a joint or common liability.[9]

Defendants argue that only Plaintiff is liable under the Consent Order, because the order did not impose a joint liability shared by Plaintiff and Defendants.  But that argument begs the question of liability.  It is undisputed that the Consent Order does not impose liability on Defendants.  Plaintiff, however, brings this action to establish that, under CERCLA, the liability for the costs of environmental cleanup should be jointly borne by the responsible parties, which allegedly include both Plaintiff and Defendants.

That Plaintiff initially accepted sole responsibility for the cleanup is not dispositive.  It is not unusual for one party to be forced to take individual responsibility for a joint liability.  In fact, the very point of the contribution action is to allow a plaintiff to establish that a defendant was jointly liable for a cost that the plaintiff initially bore alone.  In other words, though Plaintiff took its cleanup actions to satisfy its individual liability under a RCRA consent order, it may have also incurred costs to cleanup a joint liability that Plaintiff and Defendants would have shared under

---

[9] Although this limitation is not in the statute, Defendants point out that it is implied in the word contribution.  Giving that word its "customary meaning" the First Circuit has defined it "a right 'of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear.'" United Techs. Corp. v. Browning-Ferris Indus., 33 F.3d 96, 99 (1st Cir. 1994) (quoting Black's Law Dictionary 399 (6th ed. 1990)).

CERCLA.  Plaintiff rightly brings this contribution action to establish this contention.

B.     *Plaintiff's failure to resolve its liability is fatal to its claim*

The Consent Order reserved the EPA's right to bring further RCRA and CERCLA § 106 actions against Plaintiff and explicitly stated that "[n]otwithstanding compliance with the terms of this Consent Order, [the Plaintiff] is not released from any liability for the costs of any response actions taken by EPA."[10]  Defendants argue that this language shows that Plaintiff is not eligible to seek contribution under CERCLA §113(f)(3)(B), which gives a cause of action to a plaintiff who has "resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action."

In the Consent Order, Plaintiff agreed to take certain response actions and did indeed spend $15 million doing so.  By agreeing to and then making such payments, Plaintiff argues that it "resolved" that it was liable for those costs.  It contends that the EPA essentially used threats of further administrative action to force Plaintiff to accept the Consent Order.  Plaintiff notes that it entered the Consent Order in exchange for certain administrative concessions from the EPA (namely a permit) and to end the pending threat of further administrative action.  Accordingly, Plaintiff urges the court to conclude that this Consent Order is an administrative settlement that resolved liability for all or part of the costs of a response action, under the meaning of CERCLA §113(f)(3)(B).  Although no controlling precedent definitively answers this question, a number of factors persuade this court to reject Plaintiff's reasoning.

First, Plaintiff's interpretation of the word "resolve" is inconsistent with the traditional meaning of contribution.  If two tortfeasors injure a plaintiff and one of the tortfeasors then

---

[10] Consent Order, p. 108-09.

voluntarily pays a small part of the plaintiff's medical costs without demanding any waiver of

claims in return, the first tortfeasor has not settled or resolved his claim and could not seek

contribution from the second tortfeasor.[11]

Second, Plaintiff's interpretation has also been rejected by a number of courts.  One

district court, deciding that a unilateral order was not a settlement, noted that incurring costs is

not equivalent to resolving liability.[12]  Another case lists substantial authority for the conclusion

that compliance with a consent order does not resolve liability within the meaning of CERCLA:

> In the instant case, the administrative order by consent cannot be construed an
> administrative settlement within the meaning of CERCLA § 113(f)(3)(B). See
> Pharmacia Corp. v. Clayton Chem. Acq., LLC, 382 F. Supp. 2d 1079, 1084-86
> (S.D. Ill. 2005) (holding that an administrative order by consent is not a settlement
> under § 113(f)(3)(B)). Section 113(f)(3)(B) explicitly provides that contribution is
> available only to "a person who has resolved its liability to the United States or a

---

[11] Restatement (Second) of Torts § 886A cmt. f (1979) ("Partial payments.  In order to be entitled to contribution, the tortfeasor seeking it must have discharged the entire claim of the injured person by paying more than his equitable share of the common liability. There is thus no right to contribution in favor of one who has made a partial payment on that liability. The equity rule applies, that there can be no contribution so long as the claim of the original plaintiff is still outstanding.")

[12] The court reasoned:
> In other words, Raytheon argues that it can pursue a claim for contribution under
> this section for costs incurred responding to the [unilateral administrative order]
> because it has resolved its liability with respect to costs incurred complying with
> the [administrative orders of consent]. The court rejects this argument and agrees
> with the United States that a proper reading of section 113(f)(3)(B) is one that
> limits a plaintiff's right to contribution to those response costs for which it has
> resolved its liability in settlements with the United States or a State. Stated another
> way, the right to contribution under section 113(f)(3)(B) is defined by the scope of
> the liability resolved. See Restatement (Third) of Torts § 23 cmt. b ("A person
> seeking contribution must extinguish the liability of the person against whom
> contribution is sought for that portion of liability, either by settlement with the
> plaintiff or by satisfaction of judgment.").

Raytheon Aircraft Co. v. United States, 435 F. Supp. 2d 1136, 1144 (D. Kan. 2006).

State . . . ." 42 U.S.C. § 9613(f)(3)(B). The consent order does not purport to resolve any party's liability - not ITT's, not the United States' and not that of any State. <u>Consol. Edison</u>, 423 F.3d at 96-97 (finding that Voluntary Cleanup Agreement was not a settlement under § 113(f)(3)(B) because it did not resolve CERCLA liability with any party).[13]

Plaintiff relies on <u>Seneca Meadows, Inc. v. ECI Liquidating, Inc.</u> for the proposition that other kinds of consent orders, including with state agencies, can qualify under the language of § 113(f)(3)(B).[14] But that case is distinguishable as the order involved a clear resolution of liability.[15] Furthermore, other district courts have found that a settlement with a state agency that did not resolve CERCLA liability is not a basis for a CERCLA contribution claim.[16] Other more dated precedent which allowed actions to go forward in different circumstances under CERCLA § 107[17] is not relevant to this action, especially after the Supreme Court decision in <u>Cooper Industries v. Aviall Services.</u>, which emphasized that § 113 must be strictly interpreted according

---

[13] <u>ITT Indus. v. Borgwarner, Inc.</u>, No. 05-674, 2006 U.S. Dist. LEXIS 59877, at *19 (W.D. Mich., Aug 22, 2006).

[14] 427 F. Supp. 2d 279, 287 (W.D.N.Y. 2006).

[15] <u>Id.</u> ("In contrast, the consent orders here expressly state that the parties agreed that SMI had resolved its liability to the state for purposes of CERCLA.")

[16] <u>Differential Dev.-1994, Ltd. v. Harkrider Distrib. Co.</u>, No. 05-3375, 2007 U.S. Dist. LEXIS 1592, at *29-41 (S.D. Tex. January 9, 2007); <u>Niagara Mohawk Power Corp. v. Conrail</u>, 436 F. Supp. 2d 398, 402 (N.D.N.Y. 2006) ("However, resolution of liability for state law claims does not meet the statutory prerequisite. Rather, to bring a § 9613(f)(3)(B) claim, CERCLA liability must have been resolved." (citations omitted)); <u>ASARCO, Inc. v. Union Pac. R.R. Co.</u>, No. 04-2144, 2006 U.S. Dist. LEXIS 2626, at *21 (D. Ariz. Jan. 24, 2006) ("Just as to receive CERCLA contribution protection, one must comply with CERCLA settlement procedures and resolve CERCLA liability, to initiate a CERCLA contribution action, one must do the same.").

[17] <u>United States v. Rohm & Haas Co.</u>, 2 F.3d 1265, 1275 n.15 (3d Cir. 1993) (allowing the government to use CERCLA to recover administrative costs incurred in a RCRA enforcement action, and noting in passing "that a number of courts have held defendants liable for costs of removal or remedial action even where such costs were not incurred pursuant to CERCLA's statutory authority.").

to its text.[18]

Plaintiff asserts that this conclusion will sow negative policy consequences and will discourage cooperation and compliance with government administrative orders.  But, consistent with Aviall, this court must rely on the text of the statute and enforce the policy judgment made by Congress when it drafted the contribution statute.  In fact, this result may not be so negative: some corporations will continue to comply with intermediate orders that do not resolve liability in order to obtain other benefits from the government (e.g. a RCRA permit).  Other corporations that envision filing a contribution action will simply be required to accept more cleanup responsibility as consideration for a government waiver of future CERCLA liability.  Such a result also conserves judicial resources by avoiding the piecemeal litigation that may result where a plaintiff sues for contribution to recover for each of a series of many intermediate chapters of cleanup performed on the way to complete resolution of liability.

Because of the traditional meaning of contribution, the developing consensus in the case law, and the unpersuasiveness of Plaintiff's policy arguments, Plaintiff's claim must be dismissed, as the Consent Order does not resolve liability with the United States or a state as required by the text of § 113.

II.    Even if Plaintiff had a § 113 claim, it would be time barred

CERCLA § 113(g)(3) is titled "Contribution" and contains a statute of limitations for contribution actions.  Specifically, it provides that the limitations period should run three years from the date of a CERCLA § 107 judgment, a CERCLA § 122 settlement, or a judicially

---

[18] 543 U.S. 157, 168 (2004) (ruling that plaintiffs who engaged in voluntary cleanup cannot proceed with a contribution action under § 113(f)(1)).

approved settlement.[19]  Notably absent from the provision is language that triggers a limitations period following a RCRA settlement.[20]

Plaintiff argues that because there is no statute of limitations triggering event for its particular contribution action, the court should apply either no statute of limitations or the more generous six-year statute of limitations for § 107 cost recovery actions provided in §113(g)(2). This conclusion, though consistent with some earlier precedent, is counter to the precedent of the First Circuit and the Supreme Court.[21]

    A.    *Plaintiff's claim is best analogized to the limitations period in § 113(g)(3)*

The Supreme Court recognizes that Congress frequently does not include a statute of limitations in new laws.[22]  To handle this problem, courts should import the most analogous state statute of limitations.[23]  There is an exception to this rule "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for

---

[19] 42 U.S.C. § 4613(g)(3).

[20] This absence of a triggering event could have been another factor in this court's conclusion that the RCRA settlement did not provide a basis for an initiating a CERCLA contribution action.  Drawing such a conclusion would be excessive.  In Section I, this court did not hold that no RCRA settlement could ever qualify under CERCLA, but rather that the Consent Order in this case did not resolve liability as required by the statute.  Drawing such a conclusion is also unjustified considering that § 113(g)(3) lists no triggering event for settlements with a state, even though some such settlements clearly qualify under §113(f)(3)(B).
Another court has used this reasoning to find a Plaintiff without a § 113 remedy.  See ITT Indus., 2006 U.S. Dist. LEXIS 59877, at *23.

[21] See infra Section II.B.

[22] Bd. of Regents v. Tomanio, 446 U.S. 478, 483 (1980).

[23] Id.

interstitial lawmaking."[24]

Though CERCLA § 113(g)(3) does not specifically reference RCRA settlements, it is the most analogous provision. Plaintiff brings this action for contribution based on what it alleges is a settlement (albeit without any resolution of liability). A § 113 contribution action based on RCRA settlement is more analogous to a § 113 contribution action based on a CERCLA settlement than it is to an action for cost recovery under § 107.

Furthermore, the limitations period in § 113(g)(3) is a "more appropriate vehicle" than any state provision. Environmental pollution is a national problem and cleanup efforts frequently involve interrelated sites and corporations spanning multiple states. It would dilute consistency and predictability to import state limitations periods of varying lengths. Instead, if Plaintiff had a federal contribution cause of action, it would be most analogous and appropriate to use the federal contribution limitations period, despite the absence of the relevant triggering event.

>    B.    Though inconsistent with some older precedent, _Aviall_ supports
>          application of the § 113(g)(3) limitations period

A number of pre-Aviall courts (outside the First Circuit) have seen the problem a different way.[25] Some of these courts have ruled that there should be no statute of limitations for such claims.[26] Other courts have concluded that CERCLA § 113(g)(2)'s six-year statute of limitations

---

[24] Del Costello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172 (1983).

[25] See Geraghty & Miller, Inc. v. Conoco Inc., 234 F.3d 917, 925 (5th Cir. 2000); Sun Co. v. Browning-Ferris, Inc., 124 F.3d 1187, 1193 (10th Cir. 1997).

[26] See e.g., W.R. Grace & Co. v. Zotos Int'l, Inc., No. 98-838S, 2000 U.S. Dist. LEXIS 18091, at *14-16 (W.D.N.Y. Nov. 2, 2000); Reichhold Chems., Inc. v. Textron, Inc., 888 F. Supp. 1116, 1125 (N.D. Fla. 1995) (ruling that no statute of limitations should be borrowed because Congress chose to provide a statute of limitations that was simply not triggered by a state Consent Order). This authority in not persuasive. It is more likely that Congress simply forgot to

for CERCLA § 107 recovery of costs actions applies because CERCLA § 113 actions are a type

of action for recovery of costs–and are thus cognizable as CERCLA § 107 actions.[27]

    Such results could make sense considering the history of the statute. Section 107 existed

before § 113 and broadly allowed parties to recover response costs from PRPs. At the time,

courts allowed plaintiffs to seek contribution using § 107.[28] Congress later added § 113 to

explain how contribution actions specifically operate.[29] In this way, a § 113 contribution action

could be thought of as a breed of actions to recover costs under the broad language of § 107. But

interpreting the statute in this manner is inconsistent with controlling precedent.

    In Aviall, the Supreme Court held that parties that engaged in voluntary cleanup could not

recover under CERCLA § 113(f)(1).[30] In addition to analyzing the plain language of the statute,

the Supreme Court reasoned that the statute created a regime which matched remedies with

corresponding limitations periods.[31] The absence of a statute of limitations triggering event for

---

include a triggering event than that Congress intended, without explicitly saying, the unusual
result that a claim would never expire.

    [27] See e.g., Sun Co., 124 F.3d at 1193 ("If the PRP incurred its cleanup costs in some
other way, without the attendant procedural safeguards of a judgment or CERCLA settlement, its
contribution action will be the initial action for recovery of such costs. That PRP will have six
years from the start of remediation (or three years after completion of a removal action) in which
to file."); Sherwin-Williams Co. v. ARTRA Group, Inc., 125 F. Supp. 2d 739, 746 (D. Md.
2001).

    [28] See Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1457 n.3 (9th Cir. 1986).

    [29] Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, § 113,
100 Stat. 1613, 1647 (1986).

    [30] Aviall, 543 U.S. at 168.

    [31] Id. at 167 ("Our conclusion follows not simply from § 113(f)(1) itself, but also from the
whole of § 113. As noted above, § 113 provides two express avenues for contribution:
§ 113(f)(1) (. . .) and § 113(f)(3)(B) (. . .). Section 113(g)(3) then provides two corresponding

voluntary cleanups suggested to the Court that voluntary cleanups should not be allowed as a basis for a contribution action.[32]  While this court did not employ similar reasoning to reject the availability of contribution action based on a RCRA Consent Order,[33] the Supreme Court's reasoning does indicate that the Court saw that the universe of § 113(f) limitations periods could be found in § 113(g)(3).  Accordingly, this precedent implies that lower courts should presume that all § 113(f) recoveries should find their statute of limitations in CERCLA § 113(g)(3).

This conclusion is also bolstered by First Circuit precedent.  In United Technologies Corp. v. Browning-Ferris Industries, the First Circuit drew a clear distinction between § 113 and § 107 which it said "are distinct, non-overlapping anodynes."[34]  In that case, the First Circuit held that a PRP who entered into a judicially approved consent decree and who could recover under § 113 could not use the § 107 statute of limitations.[35]  Because of this distinct statutory structure, the Plaintiff in this case who similarly advances a contribution claim must rely on the statute of limitations labeled "Contribution" and found in § 113(g)(3).

Plaintiff attempts to distinguish United Techs. on the ground that it dealt with a judicially approved settlement, and not the kind of quasi-voluntary administrative order at issue here.  This

---

3-year limitations periods for contribution actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, § 113(g)(3)(B).").

[32] Id.

[33] See supra note 20.

[34] 33 F.3d at 103.

[35] Id. ("Applying this definition, the instant action clearly qualifies as an action for contribution under section 9613(f)(1). And because CERCLA's text indicates that contribution and cost recovery actions are distinct, non-overlapping anodynes, the action had to be commenced within three years of its accrual." (footnotes omitted))

is a distinction without a difference. Controlling precedent indicates that § 107 and § 113 are separate remedies each having their own limitations period. Regardless of the triggering event, Plaintiff's action is one for contribution and is time barred under § 113(g)(3).

Plaintiff also argues that a more recent First Circuit case challenges this conclusion. In American Cyanamid Co. v. Capuano, the court held that a contribution action to collect costs for cleanup of water pollution at a site was not time-barred by an earlier enforcement action pertaining to soil contamination at the site.[36] Plaintiff argues that this decision evinces a position that the statute of limitations triggering events in § 113(g)(3) should be read strictly and not expanded by judicial interpretation. This argument does not succeed. The First Circuit's interpretation of the statute calls for strict separation between the limitations period of separate contribution claims, but it does not address the issue in the present case of what limitations period applies where no triggering event is satisfied.

C.    *The decision to apply § 113(g)(3) is not disturbed by recent uncertainty regarding implied rights under § 107*

It should be noted that Aviall and United Techs., when read in conjunction, create some tension. Following both cases, PRPs who engage in voluntary cleanup would be unable to recover under either § 107 or § 113. This is an odd result considering that PRPs who fight cleanup efforts until they lose an enforcement action can still use § 113. Because of this result, three out of four circuit courts to recently consider the issue have reached a result contrary to United Techs. and allowed PRPs to find an implied right of contribution in § 107.[37] Two district

---

[36] 381 F.3d 6, 12-15 (2004).

[37] Compare Metro. Water Reclamation Dist. of Greater Chi. v. N. Am. Galvanizing & Coatings, Inc., 473 F.3d 824, 837 (7th Cir. 2007); Atl. Research Corp. v. United States, 459 F.3d

courts in this circuit have employed the language of a footnote in <u>United Techs.</u>[38] to reach a similar result.[39]  Plaintiff argues that because this recent trend allows contribution actions to proceed under § 107, it is "nonsensical" to conclude that § 113(g)(3) controls the limitations period for all contribution actions.  But, despite Plaintiff's contentions, no court that has created an implied right of contribution has had occasion to address the limitations period that would accompany such an implied right.[40]  The First Circuit expressed uncertainty as to what statute of limitations would apply to any implied claim, if it exists.[41]  In any event, rights under § 107 are not the question presently before the court.  The Parties have carefully put forward the narrow issue of Plaintiff's right under § 113(f)(3)(B).  For all the reasons stated above, this court concludes that § 113(g)(3) is the correct limitations period for § 113(f)(3)(B) contribution claims.

---

827, 837 (8th Cir. 2006), <u>cert. granted</u>, 127 S.Ct. 1144 (Jan. 19, 2007); <u>Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.</u>, 423 F.3d 90, 104 (2d Cir. 2005) <u>with</u> <u>E.I. Dupont De Nemours & Co. v. United States</u>, 460 F.3d 515, 544 (3d Cir. 2006).

[38] 33 F.3d at 109 n8.

[39] <u>Emhart Indus. v. New England Container Co.</u>, No. 06-218S, 2007 U.S. Dist. LEXIS 20217, at *12-13 (D.R.I. Mar. 20, 2007); <u>City of Bangor v. Citizens Commc'ns. Co.</u>, 437 F. Supp. 2d 180, 223 (D. Me. 2006).

[40] At the same time, the courts that have refused to find an implied right sometimes use as one justification, the confusion that would result from blurring the distinctions between § 107 and § 113.  <u>See</u>, <u>e.g.</u>, <u>AMCAL Multi-Housing, Inc. v. Pac. Clay Prods.</u>, 457 F. Supp. 2d 1016, 1025-26 (C.D. Cal. 2006) ("Indeed, to allow such an implicit contribution claim to exist independently would create an awkward statutory scheme where an implied right to contribution in one section of the statute continues to exist untouched even after Congress enacted amendments to conclusively resolve whether such a right to contribution ever existed under the statute."); <u>Aviall Servs. v. Cooper Indus.</u>, No. 97-1926, 2006 U.S. Dist. LEXIS 55040, at *24 n.9 (N.D. Tex. Aug. 8, 2006).

[41] <u>United Techs.</u>, 33 F.3d at 99 n.8 (1st Cir. 1994) ("If, indeed, the law allows such an implied right of action for contribution to be maintained -- a matter on which we take no view -- it is unclear to us whether such a cause of action would be subject to the three-year or the six-year prescriptive period.")

Speculation that a different limitations period might apply to an implied right that may or may not

exist in the First Circuit does not alter this result.

### D.    Additional support for concluding that § 113(g)(3) applies

In the midst of this circuit split, another district court has similarly reached the conclusion

that the § 113(g)(3) limitations period should apply to contribution actions not based on one of

the enumerated triggering events.[42]

Though the court need not resort to legislative history, it is worth noting that such history

also bolsters this conclusion.  When Congress adopted the CERCLA § 113(g)(3) statute of

limitations, the conference report noted that the section "prohibits the commencement of *any*

*action for contribution* more than three years after the date of judgment in any civil action under

this Act for recovery of costs or damages or more than three years after the date of entry of

administrative or judicially approved settlements."[43]

This report, the structure of the statute, and the fact that § 113(g)(3) is titled

"Contribution," indicate that Congress intended all § 113(f) contribution actions to be brought

subject to the restrictive three-year limitations period in § 113(g)(3).  Because § 113(g)(3)

provides the most analogous statute of limitation to Plaintiff's claim (if it existed) and because

applying this limitations period is consistent with precedent, this court holds that the three-year   §

113(g)(3) statute of limitations would apply to Plaintiff's claim.

---

[42] Carrier Corp. v. Piper, 460 F. Supp. 2d 827, 843 (W.D. Tenn. 2006) (finding that where plaintiff sued for contribution based on an administrative order on consent, "the proper statute of limitations to apply to a contribution action pursuant to § 113(f)(3)(B) is § 113(g)(3)").

[43] H.R. Rep. No. 99-962 at 223 (1986) (emphasis added).

16

E.    *The existence of a 2002 tolling agreement does not save Plaintiff's claim*

Plaintiff asserts that even if the shorter limitations period applies, the court should not grant Defendants' Motion for Judgment on the Pleadings. Although the parties identified this issue as dispositive, Plaintiff subsequently contended that agreements between Plaintiff and Defendants toll the statute of limitations. Defendants dispute this claim and produced the applicable tolling agreements. These agreements indicate that the tolling began in April 2002.[44] The agreements do not preclude Defendants from "rais[ing] any defense based on the running of any applicable statute of limitations prior to the Tolling Period."[45] In response, Plaintiff conceded at oral arguments that its § 113(f)(3)(B) claim does fail if the § 113(g)(3) limitations period applies. Based on the evidence before the court, it is clear that any § 113(f)(3)(B) right of contribution that Plaintiff might have had was extinguished six years before the parties signed the tolling agreements. Having converted Defendants' motion to one for Summary Judgement, the court finds that no genuine dispute of material fact that would preclude entering judgment on this point.

**Conclusion**

Because the Consent Order in this case did not resolve Plaintiff's liability to the United States or a state, Plaintiff can not prevail on its CERCLA §113(f)(3)(B) contribution claim. In the alternative, this claim is time-barred. Accordingly, Plaintiff's Motion for Declaratory and Summary Judgment is DENIED and Defendants' converted Motion for Summary Judgment on

---

[44] Tolling Agreement, Affidavit of Ronald L. Kuis, Paper #34, Ex. A.

[45] Id.

17

<u>Count IV</u> is ALLOWED.  Count IV of Plaintiff's complaint is DISMISSED with PREJUDICE.

AN ORDER WILL ISSUE.


                                                    _____/s/ Joseph L. Tauro_____
                                                    United States District Judge