## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

—————————————————————
                                                )
BASF CATALYSTS LLC,                             )
                                                )
            Plaintiff,                          )
                                                )
      v.                                        )     **Civil Action No. 05-11241-JLT**
                                                )
UNITED STATES OF AMERICA, et al.,               )     (*Electronic filing*)
                                                )
            Defendants.                          )
—————————————————————)

### JOINT MOTION FOR APPROVAL AND ENTRY OF CONSENT DECREE

Plaintiff BASF Catalysts LLC ("BASF" or "Plaintiff") and Defendants the United States

of America, et al. ("United States" or "Defendants") hereby jointly move this Court to approve

and enter the attached Consent Decree, which would resolve claims by Plaintiff against the

United States concerning the investigation and cleanup of hazardous substances (and related

costs) at Plaintiff's former manufacturing facility in Plainville, Massachusetts (the "Site"), and

constitute the final judgment in this case.  In support of the relief requested in this motion, the

parties state the following:

1.      Plaintiff commenced this case in June 2005, principally alleging that the United

States is liable under the Comprehensive Environmental Response, Compensation, and Liability

Act ("CERCLA"), 42 U.S.C. §§ 9601-75, for the costs that Plaintiff had incurred in response to

releases of hazardous substances at the Site.  Plaintiff also sought a declaration of the United

States' liability under CERCLA for response costs to be incurred by Plaintiff at the Site in the

future.

2.      In late 2007, following months of negotiations — and years of research,

exchange, and review of thousands of pages of historical, environmental, and cost-related information — the parties reached an agreement-in-principle to settle Plaintiff's claims against the United States at the Site.

3.    The parties subsequently agreed upon and executed the attached proposed Consent Decree. See Exhibit 1 hereto. The principle terms of the proposed Consent Decree include the following:

*    Payment by the United States to Plaintiff of $2,790,063, for past response costs, and an agreement by the United States to pay specified percentages of response costs incurred by Plaintiff at the Site in the future. (Consent Decree ¶ 4.a.-b.).

*    A covenant by Plaintiff not to sue the United States for "Covered Matters," a term defined as "any and all past or future claims that were, could now be or hereafter have been asserted by Plaintiff arising out of or in connection with any conditions at the Site or any disposals, releases, or threatened releases of any hazardous substances, hazardous wastes, solid wastes, or other pollutants or contaminants in connection with Plaintiff's past, present, or future response action(s) concerning the Site." (Id. ¶ 3.d.)

*    An agreement by Plaintiff to indemnify and hold the United States harmless with respect to claims brought by parties that have reimbursed Plaintiff for Covered Matters, capped by an amount equal to the total amount of payments made by the United States to Plaintiff under the Consent Decree. (Id. ¶ 9.)

*    Protection for the United States from claims asserted by non-parties with respect to Covered Matters. (Id. ¶ 10.a.).

*    Upon approval and entry, the Consent Decree shall constitute the final judgement in this case, and all claims against the United States in this case are dismissed as provided in the Consent Decree. (Id. ¶¶ 11.b, 18).

4.    There is a strong public policy favoring voluntary settlement of litigation in federal court. See United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990). This general policy in favor of settlements applies in CERCLA cases; when Congress amended CERCLA in 1986, Congress explicitly attempted to encourage prompt settlements between

parties in CERCLA cases in order to facilitate more timely and cost-efficient cleanups of hazardous waste sites.  See Cannons Eng'g, 899 F.2d at 84-85, 88 ("a principal end of the statute" is "achievement of prompt settlement and a concomitant head start on response activities"); In re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1027 n.13, 1028-29 (D. Mass. 1989) ("Congress passed the [1986] Amendments to encourage settlements" and this "purpose is better served through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation.").

5.      Entry of a CERCLA settlement is committed to the informed discretion of the district court, and that discretion is guided by an inquiry into whether the proposed settlement is "fair, reasonable, and faithful to the objective of [CERCLA]," Cannons Eng'g, 899 F.2d at 84, "not whether the settlement is one the court itself might have fashioned, or considers ideal[.]" Id.; see also United States v. Davis, 261 F.3d 1, 21 (1st Cir. 2001) ("Considerable deference is involved in the review of CERCLA consent decrees.").

6.      The proposed Consent Decree is fair, reasonable, and consistent with the objectives of CERCLA.  The parties spent a number of years researching, exchanging, reviewing thousands of pages of documents pertinent to this case, as well as several months negotiating and drafting the terms of the proposed Consent Decree.  As a result, the parties are well aware of the salient facts as well as the respective strengths of each other's claims and defenses.  Because the proposed Consent Decree is the result of lengthy, and arm's length negotiations by experienced counsel, the Consent Decree deserves a presumption of validity.  See, e.g., Cannons Eng'g, 899 F.2d at 84 & 87 n.4; Davis, 261 F.3d at 23 (CERCLA consent decrees are procedurally fair and worthy of judicial deference where "[t]here is no reason to doubt that the consent decrees were

the result of arm's length, good faith bargaining between sophisticated parties") (internal

quotation marks omitted).  In addition, the proposed Consent Decree provides for substantial

monetary payments by the United States to resolve its liability for past and future cleanup costs

at the Site.  As such, the proposed Consent Decree is consistent with the objectives of CERCLA,

by providing funds toward the prompt cleanup of the Site, as an alternative to the expenditure of

resources on further litigation.

　　　　For the foregoing reasons, the Court should approve and enter the attached proposed

Consent Decree.

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

**FOR THE UNITED STATES:**

　　　　　　　　　　　　　　　　　　　RONALD J. TENPAS
　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　Environment & Natural Resources Division


Dated:  July 10, 2008　　　　　　　　　　___/s/ Stephen E. Crowley_____
　　　　　　　　　　　　　　　　　　　STEPHEN E. CROWLEY
　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　Environmental Defense Section
　　　　　　　　　　　　　　　　　　　P.O. Box 23986
　　　　　　　　　　　　　　　　　　　Washington, D.C.  20026-3986
　　　　　　　　　　　　　　　　　　　Tel:  (202) 514-0165
　　　　　　　　　　　　　　　　　　　Stephen.Crowley@usdoj.gov

　　　　　　　　　　　　　　　　　　　MICHAEL J. SULLIVAN
　　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　　District of Massachusetts

　　　　　　　　　　　　　　　　　　　ANTON P. GIEDT
　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　1 Courthouse Way
　　　　　　　　　　　　　　　　　　　Boston, MA  02210
　　　　　　　　　　　　　　　　　　　Tel:  (617) 748-3309
　　　　　　　　　　　　　　　　　　　Fax: (617) 748-3967

-4-

anton.giedt@usdoj.gov

*Attorneys for the United States*

**FOR PLAINTIFF BASF CATALYSTS LLC:**

Dated: July 10, 2008                          /s/ Paul R. Mastrocola

Paul R. Mastrocola
David P. Rosenblatt
Burns & Levinson
125 Summer Street
Boston, MA 02110
pmastrocola@burnslev.com
drosenblatt@burnslev.com

Ronald L. Kuis, Esq.
12 Scenery Road
Pittsburgh, PA 15221
rlkuis@aol.com
(412) 731-7246

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2008, a true and accurate copy of the foregoing Joint Motion To Approve And Enter Consent Decree was filed electronically with the Court's CM/ECF system, which automatically notifies the below counsel of record of the filing, via e-mail, as follows:

Ronald L. Kuis, Esq.
rlkuis@aol.com

Paul R. Mastrocola
David P. Rosenblatt
pmastrocola@burnslev.com
drosenblatt@burnslev.com

/s/ Stephen E. Crowley
Attorney for the United States

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
BASF CATALYSTS LLC,                     )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      **Civil Action No. 05-11241-JLT**
                                        )
UNITED STATES OF AMERICA, <u>et al.</u>,      )      (*Electronic filing*)
                                        )
            Defendants.                 )
_____)

## <u>CONSENT DECREE</u>

This Consent Decree is made, as of the Effective Date, between Plaintiff BASF Catalysts

LLC ("Plaintiff") and Defendants United States of America, <u>et al.</u> ("United States"), collectively

referred to herein as the "Parties."

WHEREAS, this Case involves claims by Plaintiff under the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C.

§§ 9601-75, and the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-92k (also known

as the Resource Conservation and Recovery Act or "RCRA"), seeking:  (1) to recover costs

Plaintiff had allegedly incurred in responding to the release or threatened release of hazardous

substances at Plaintiff's former manufacturing site in Plainville, Massachusetts (the "Site"); (2)

injunctive relief against the United States for the performance of response actions at the Site; and

(3) a declaration as to the United States' liability for costs of response to be incurred in the future

at the Site.

WHEREAS, the Parties enter into this Consent Decree as a full and final resolution of

any and all claims that were, could now be or hereafter have been asserted against the United

States in connection with Covered Matters, and to avoid the complication and expense of further litigation of such claims.

WHEREAS, the Parties agree that this Consent Decree is fair, reasonable, and in the public interest.

WHEREAS, by entering into this Consent Decree, the Parties do not admit any issue of law or fact arising from transactions or occurrences related to Covered Matters.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that:

1.     <u>The Parties</u>.  The Parties to this Consent Decree are Plaintiff and the United States.

2.     <u>Application of this Consent Decree</u>.  This Consent Decree applies to and is binding upon Plaintiff (and its predecessors, successors, and assigns) and the United States.  This Consent Decree does not extend to or inure to the benefit of any party, person or entity other than the United States and Plaintiff, and nothing in this Consent Decree shall be construed to make any other person or entity not executing this Consent Decree a third-party beneficiary to this Consent Decree.

3.     <u>Definitions</u>.  Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or its implementing regulations shall have the meaning assigned to them in CERCLA or its implementing regulations as of the Effective Date of this Consent Decree.  Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply:

a.     "Case" shall mean <u>BASF Catalysts LLC v. United States of America</u>, Civil Action Number 05-11241-JLT, in the United States District Court for the District of Massachusetts.

b.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-75.

c.      "Consent Decree" or "Decree" shall mean this consent decree, including Appendix A.

d.      "Covered Matters" means any and all past or future claims that were, could now be or hereafter have been asserted by Plaintiff arising out of or in connection with any conditions at the Site or any disposals, releases, or threatened releases of any hazardous substances, hazardous wastes, solid wastes, or other pollutants or contaminants in connection with Plaintiff's past, present, or future response action(s) concerning the Site.

e.      "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday, or Federal holiday.

f.      "Effective Date" shall mean the date the Court approves and enters this Consent Decree.

g.      "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

h.      "Other Response Actions" shall mean all response actions undertaken by Plaintiff at the Site other than Radiologically-Contaminated Soils Response Actions.

i.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

j.      "Plaintiff" shall mean BASF Catalysts LLC, including its predecessors,

successors, assigns, designees, affiliates and related companies.

k.      "Radiologically-Contaminated Soils Response Actions" shall mean all response actions undertaken by Plaintiff at the Site that concern radiologically-contaminated soils and are necessary for the Site to meet the Radiological Criteria For License Termination set forth at Mass. Regs. Code tit. 105, § 120.245, or, if appropriate, the Radiological Criteria For License Termination set forth at Mass. Regs. Code tit. 105, § 120.246.

l.      "Site" means the area of approximately 18.3 acres at 32 Taunton Street (on the west of State Route 152) in Plainville, Massachusetts, where Plaintiff owned and operated a manufacturing facility, and includes without limitation, all hazardous and solid waste disposal, treatment or storage areas, buildings, equipment, structures, roads, ditches, culverts, pipes, appurtenances to and improvements on the area, and any location where any hazardous substances or wastes from the area have come to be located through natural airborne, waterborne or subsurface migration, including groundwater.

m.      "United States" shall mean the United States of America, including all agencies, departments, and instrumentalities of the United States of America, including, without limitation, the EPA, the United States Nuclear Regulatory Commission, the United States Department of Defense, the United States Mint, and the United States Department of Energy.

4.    Payments.

a.    First Payment.

(1).    As soon as reasonably practicable after the Effective Date, the United States shall pay $2,790,063.00 to Plaintiff.  Payment shall be made by Electronic Funds Transfer (EFT) in accordance with instructions furnished by Plaintiff to the United States.  Plaintiff shall

-4-

provide instructions for EFT to the undersigned counsel for the United States within three (3) days after the Effective Date.

(2).     If such payment is not made in full within one hundred and twenty (120) days after the Effective Date, then interest on the unpaid balance shall be paid, with interest beginning to accrue, on the 121st day after the Effective Date.  Interest shall accrue at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26 of the United States Code.

(3).     Payment by the United States pursuant to this Paragraph 4.a is subject to the availability of funds appropriated for such purpose.  No provision of this Consent Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-42 and 1511-19, or any other applicable provision of law.

(4).     Within 5 days after receipt of the payment as required by this Paragraph 4.a, Plaintiff shall send a letter to the undersigned counsel for the United States stating that payment under this Paragraph has been received by Plaintiff.  This letter shall be sent in the manner described in Paragraph 16 of this Consent Decree.

b.     Subsequent Payment(s).

(1).     Following the two-year time period that started on January 1, 2008, and will continue through December 31, 2009 — and thereafter not more often than once for each subsequent two-year time period — Plaintiff may make a written demand to the United States for payment of thirty (30) percent of the response costs incurred by Plaintiff during that prior two-year time period in connection with the performance of Radiologically-Contaminated Soils

-5-

Response Actions, and 11.07 percent of the response costs incurred by Plaintiff during that prior

two-year time period in connection with the performance of Other Response Actions.  Such

demand may include a demand for payment by the United States of thirty (30) percent of the

interest accrued on the response costs incurred by Plaintiff in connection with the performance of

Radiologically-Contaminated Soils Response Actions, as well as a demand for payment by the

United States of 11.07 percent of the interest accrued on the response costs incurred by Plaintiff

in connection with the performance of Other Response Actions.  Such interest shall be calculated

annually at the end of each calendar year in which costs have been incurred, at the rate specified

for interest on investments of the Hazardous Substance Superfund established under subchapter

A of chapter 98 of Title 26 of the United States Code.  Plaintiff's written demand(s) under this

Paragraph 4.b shall specify, on a line-by-line basis:

        (i) the total amount of response costs incurred by Plaintiff during the prior

two-year time period in connection with the performance of Radiologically-Contaminated Soils

Response Actions;

        (ii) of the total amount of response costs incurred by Plaintiff during the

prior two-year time period in connection with the performance of Radiologically-Contaminated

Soils Response Actions, the amount of response costs incurred by BASF internally (and not paid

to a contractor or vendor) in connection with the performance of Radiologically-Contaminated

Soils Response Actions at the Site;

        (iii) the total amount of response costs incurred by Plaintiff during the

prior two-year time period in connection with the performance of Other Response Actions;

        (iv) of the total amount of response costs incurred by Plaintiff during the

prior two-year time period in connection with the performance of Other Response Actions, the amount of response costs incurred by BASF internally (and not paid to a contractor or vendor) in connection with the performance of Other Response Actions at the Site;

(v) the total amount of the payment demanded from the United States with respect to response costs incurred by Plaintiff during the prior two-year time period; and

(vi) the total amount of interest demanded from the United States.

Plaintiff's written demands under this Paragraph 4.b shall not seek or demand payment for any costs incurred more than three years prior to the date of the demand. The United States has the right to refuse payment of any costs (including interest accrued on such costs) that have not been identified and sought in a written demand from Plaintiff within three years of the date on which the costs were incurred by Plaintiff. Plaintiff's written demands under this Paragraph 4.b shall not seek or demand payment for any costs that have not been paid by Plaintiff as of the date of the demand, and the United States has the right to refuse payment of any costs that have not been paid by Plaintiff as of the date of the demand.

(2).    Each demand by Plaintiff for payment under this Paragraph 4.b. shall be accompanied by:

i.    a certification, signed under penalty of perjury by an officer of Plaintiff with the authority to legally bind Plaintiff, in the form of Appendix A hereto;

ii.    a complete and itemized description of the nature, location, purpose, and scope of all of the response actions performed that resulted in the incurrence of response costs for which payment is requested;

iii.    all invoices, bills, or other such documentation from contractors or

venders as may be reasonably necessary to enable the United States to determine that the

payment demanded from the United States is for costs incurred by Plaintiff in connection with

the performance of Radiologically-Contaminated Soils Response Actions, or, if appropriate, is

for costs incurred by Plaintiff in connection with the performance of Other Response Actions;

        iv.     proof of payment by Plaintiff of all of the response costs demanded

from the United States (such as copies of cancelled checks or proof of electronic wire payments);

and,

        v.     an explanation of the calculations performed by Plaintiff

supporting the amount of interest sought under the written demand.

        (3).     If the United States does not provide a written objection to the Plaintiff

within sixty (60) days after the United States' receipt of a demand sent by Plaintiff pursuant to

this Paragraph 4.b, then the United States shall pay the amount demanded to Plaintiff as soon as

reasonably practicable.  Payment shall be made by Electronic Funds Transfer (EFT) in

accordance with instructions furnished by Plaintiff to the United States.  Plaintiff's EFT payment

instructions must be furnished to the United States within three (3) days of the date on which the

demand is sent to the United States.  If such payment is not made in full within one hundred

twenty (120) days after the United States' receipt of Plaintiff's written demand, then interest on

the unpaid balance shall be paid, with interest accrual commencing on the 121st day after the

United States' receipt of Plaintiff's written demand, provided, however, that no such interest

accruing on the unpaid balance shall ever become due or be paid by the United States to the

extent the United States objects to the balance demanded, and through mutual agreement or

Court order (as described in this Paragraph 4.b), the balance due and/or demanded is reduced.

-8-

For purposes of this Paragraph 4.b(3), interest shall accrue at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26 of the United States Code.

(4).    Payments by the United States under this Paragraph 4.b are subject to the availability of funds appropriated for such purpose.  No provision of this Consent Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-42 and 1511-19, or any other applicable provision of law.

(5).    Within 5 days after receipt of any payment made by the United States pursuant to this Paragraph 4.b, Plaintiff shall send a letter to the United States stating that such payment under this Paragraph 4.b has been received by Plaintiff.

(6).    The United States may object to Plaintiff's demand for payment made under this Paragraph 4.b by providing written notice to Plaintiff within 60 days of the date the demand for payment is received by the United States.  If the United States objects to only a portion of Plaintiff's demand, then the United States shall pay the remaining, undisputed portion of such demand in accordance with Paragraph 4.b(3).

The United States may object to a demand for payment or portion thereof on any or all of the following grounds:  (i) the costs included in the demand were not incurred by Plaintiff in connection with the performance of Radiologically-Contaminated Soils Response Actions or Other Response Actions; (ii) the demand seeks to recover more than 11.07 percent of the costs that were incurred by Plaintiff in connection with the performance of Other Response Actions, or more than 30 percent of the costs that were incurred by Plaintiff in connection with the

performance of Radiologically-Contaminated Soils Response Actions; (iii) the description of the nature, location, purpose, and scope of work performed or the costs incurred, and any accompanying documentation submitted to the United States, is insufficient to enable the United States to determine whether the costs were incurred in connection with the performance of the Radiologically-Contaminated Response Actions or, alternatively, in connection with the performance of the the Other Response Actions; (iv) Plaintiff has not paid the costs for which it has demanded payment, or there is inadequate proof that Plaintiff has paid the costs for which it has demanded payment; (v) the certification required under Paragraph 4.b(2) of this Consent Decree is false, incorrect, incomplete, or absent; (vi) the written demand by Plaintiff under Paragraph 4.b(1) does not contain the information required as provided under Paragrph 4.b(1); (vii) the costs sought do not qualify as response costs under CERCLA, including, but not limited to, because the costs sought are not necessary costs of response, or because the costs were not incurred in a manner consistent with the National Contingency Plan; (viii) the costs sought were incurred more than three years prior to the date of Plaintiff's written demand seeking such costs. The United States shall specify with particularity its reason(s) for objection to Plaintiff's demand for payment or portion thereof.

Within 30 days after Plaintiff receives a written objection by the United States to a demand for payment, and if Plaintiff continues to demand payment of the costs objected to, the Parties shall meet and confer in good faith in an effort to resolve the dispute. In the event the Parties are unable to mutually resolve the dispute, the Parties may agree to promptly submit this dispute to a nonbinding alternative dispute resolution process, such as a mediation. Unless otherwise agreed to by the Parties, any face-to-face meetings that occur during this nonbinding

dispute resolution process shall take place in Washington, D.C.  Each party shall bear its own costs for the nonbinding alternative dispute resolution process and shall equally be responsible for the costs of the mediator or other person or entity selected by the Parties to conduct or oversee the alternative dispute resolution process.

If the dispute is not fully resolved within 90 days after the United States provides Plaintiff with an objection to a demand for payment, the United States or the Plaintiff may demand that the Court resolve the dispute, unless the 90-day period is extended by mutual written consent of the Parties.

(7).  All written communications sent pursuant to this Paragraph 4.b shall be sent in the manner described in Paragraph 16 of this Consent Decree, unless the Parties mutually agree otherwise in a separate written agreement signed by representatives of both Parties.

5.    Covenants by Plaintiff.  Upon entry of this Consent Decree by the Court, Plaintiff hereby covenants and agrees not to assert (by way of the commencement of an administrative or judicial action, the joinder of the United States in any such existing action, or in any other fashion) any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity which it now has, may have had, or hereafter have, including, but not limited to, claims under CERCLA sections 107 or 113, 42 U.S.C. §§ 9607, 9613, or RCRA section 7002, 42 U.S.C. § 6972, against the United States for Covered Matters.

6.    Reservation of Rights by Plaintiff.  The Plaintiff reserves, and this Consent Decree is without prejudice to, all rights against the United States with respect to all matters not expressly included within the Covenants By Plaintiff in Paragraph 5 of this Consent Decree, including, but not limited to:

a.      liability for failure to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal or release of any hazardous substances, hazardous wastes, solid wastes, or other pollutants or contaminants outside of the Site, including the Shpack Landfill in Attleboro and Norton, Massachusetts.

c.      liability arising from the United States' past, present, or future ownership or control of any hazardous substances, hazardous wastes, solid wastes, or other pollutants or contaminants disposed of or released outside the Site (including the Shpack Landfill in Attleboro and Norton, Massachusetts), unless such hazardous substances, hazardous wastes, solid wastes, or other pollutants or contaminants were disposed of or released in connection with Plaintiff's past, present, or future response action(s) concerning the Site.

d.      liability arising from the United States' disposal of hazardous substances at or on the Site after the Effective Date.

e.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments.

The United States hereby reserves any and all defenses it may have, whether now or in the future, regarding any claims reserved by the Plaintiff.

7.      <u>Covenants Not To Sue By The United States</u>.

a.      The United States — with the exception of all regulatory agencies of the United States (including, without limitation, EPA, the U.S. Nuclear Regulatory Commission, and any federal natural resource trustee) — hereby covenants not to sue Plaintiff under sections 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(f), and section 7002 of RCRA, 42 U.S.C. § 6972, for Covered Matters.

b.      The United States hereby covenants not to sue Plaintiff to recover the payments made by the United States pursuant to Paragraph 4 of this Consent Decree.

8.      <u>Reservation of Rights By The United States</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to:

a.      all rights against Plaintiff with respect to all matters not expressly included within the Covenant Not To Sue By The United States contained in Paragraph 7 of this Consent Decree;

b.      all rights against Plaintiff arising from the past, present, or future disposal, release, or threat of release of any hazardous substances, hazardous wastes, solid wastes, or other pollutants or contaminants outside of the Site;

c.      all rights against Plaintiff arising from Plaintiff's disposal of hazardous substances, hazardous wastes, solid wastes, or other pollutants or contaminants at or on the Site after the Effective Date;

d.      all rights against Plaintiff for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.       all rights against Plaintiff for costs incurred at the Site by any department or agency of the United States in the performance of its duties as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300);

f.      all rights and claims against Plaintiff held by regulatory agencies of the United States (including, but not limited to, EPA and the U.S. Nuclear Regulatory Commission) or any federal natural resource trustee.

In addition, notwithstanding the Covenant Not To Sue By The United States contained in Paragraph 7 of this Consent Decree, in the event the United States pays or incurs response costs

-13-

in connection with any suit(s), threat(s) of suit, or administrative action(s) asserted or taken against the United States relating to the Site (except for this Case), then all claims by the United States against Plaintiff for such costs — to the extent those costs have not been already paid to the United States by Plaintiff pursuant to the indemnification provision set forth in Paragraph 9 of this Consent Decree, or otherwise — are hereby reserved by the United States.

9.    <u>Indemnification by Plaintiff</u>.  Plaintiff shall indemnify and hold harmless (but not defend) the United States against any and all past or future claims concerning the Site asserted under CERCLA sections 107 or 113, 42 U.S.C. §§ 9607, 9613, or RCRA section 7002, 42 U.S.C. § 6972, against the United States by any entity that reimburses Plaintiff for any Covered Matter; <u>provided</u>, <u>however</u>, that Plaintiff's obligations pursuant to this Paragraph 9 shall not exceed the aggregate amount of the payments made by the United States to Plaintiff under Paragraph 4 of this Consent Decree (excluding payments by the United States for interest accrued on response costs incurred by Plaintiff and payments by the United States for response costs incurred by BASF internally (and not paid to a contractor or vendor)), as calculated on the date the United States seeks indemnification by Plaintiff under this Paragraph 9.

10.    <u>Protection Against Claims</u>.

a.    The payments to be made by the United States pursuant to this Consent Decree represent a good faith compromise of disputed claims and the compromise represents a fair, reasonable, and equitable discharge for the Covered Matters addressed in this Consent Decree. With regard to any claims against the United States for Covered Matters, the United States has protection from such claims pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f), and any other applicable provision of federal or state law, whether by statute or common law,

extinguishing the United States' liability to persons or entities not party to this Consent Decree. Any rights the United States may have to obtain contribution or otherwise recover costs or damages from persons or entities not party to this Consent Decree are reserved.

b.    The Parties will join in and/or support, as may be appropriate, such legal proceedings as necessary to secure the Court's approval and entry of this Consent Decree and to secure and maintain the protection from claims contemplated in this Consent Decree.

11.    <u>Effect of Settlement and Entry of Judgment</u>.

a.    This Consent Decree was negotiated and executed by Plaintiff and the United States in good faith and at arms length and is a fair and equitable compromise of claims which were vigorously contested.  Nothing in this Consent Decree shall constitute or be construed as an admission of any issue of fact or law by the Parties.  Nor is this Consent Decree an admission or denial of any factual allegations set out in the Complaint, or an admission of violation of any law, rule, regulation, or policy by the Parties.

b.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment in this Case.

12.    <u>Potential Counterclaims</u>.

a.    Nothing in this Consent Decree shall be construed to prevent the United States or any of its regulatory agencies (including, but not limited to, EPA and the U.S. Nuclear Regulatory Commission) or federal natural resource trustees from initiating claims or administrative actions relating to this Site against Plaintiff or any other person or entity, whether in this Case, or any other litigation or proceeding, should that course, in the sole discretion of the United States, become appropriate.

b.      Any claim or counterclaim, concerning activities or conditions at the Site, that might be available to the United States or any of its regulatory agencies (including, but not limited to, EPA and the U.S. Nuclear Regulatory Commission), or any federal natural resource trustee, is "permissive," and subject to Fed. R. Civ. P. 13(b).

c.      Plaintiff shall not assert in this Case, or in any other action or administrative proceeding relating to this Site, that any claim, demand, or enforcement activity (including, but not limited to, efforts by the United States or its agencies to compel Plaintiff to undertake corrective actions, response actions, or decommissioning or de-licensing activities at the Site, or to recover response costs or natural resource damages) is precluded by the rules pertaining to merger and bar, Federal Rule of Civil Procedure 13(a), or any similar rule or regulation, or because the claims there asserted were not raised or asserted in this Case.  Nor shall Plaintiff make any defense or avoidance based on any such argument.

d.      In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Plaintiff shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, claim preclusion, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in this Case.

13.     Plaintiff's Certification As to Other Recovery of Response Costs.  Plaintiff certifies, based on knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. § 3729 et seq., and other applicable law, that as of the Effective Date, Plaintiff has not been reimbursed by any entity or party for the response costs for which Plaintiff will receive

-16-

reimbursement or payment under this Decree.  Plaintiff shall not seek or accept any

reimbursement or payment from any other entity or party for the portions of Plaintiff's response

costs that the United States pays or reimburses to Plaintiff pursuant to this Decree.

14.    Integration Provision.  This Consent Decree, including Appendix A, constitutes the entire

Consent Decree between the United States and the Plaintiff with respect to Covered Matters.  All

prior discussions, drafts and writings are specifically superseded by this Consent Decree and

may not be used to vary or contest the terms of this Consent Decree.

15.    Representative Authority.  The individuals and representatives of the parties signing this

Consent Decree below hereby certify that they are authorized to bind their respective party or

parties to this Consent Decree.

16.    Written Communications.  Unless stated otherwise in this Consent Decree, or in a

subsequent, written agreement between the Parties, all written communications between the

Parties made pursuant to this Consent Decree shall be by Express U.S. Mail delivery, or by

FedEx or other commercial carrier (shipped overnight delivery), to one of the following

addresses:

      a.    Communications to the United States:

          Chief, Environmental Defense Section
          Ref.:  DJ # 90-11-6-17611
          United States Department of Justice
          Environment & Natural Resources Division

          *[if by U.S. Mail:]*
          P.O. Box 23986
          Washington, DC 20026-3986

          *[if by FedEx or other commercial carrier:]*
          601 D Street, NW, Suite 8000
          Washington, DC 20004

Tel: (202) 514-2219

b.    <u>Communications to Plaintiff</u>:

Nan Bernardo, Esquire
BASF Corporation
100 Campus Drive
Florham Park, NJ 07932
Tel: (973) 245-6050

17.    <u>Costs and Expenses</u>.  Plaintiff and the United States shall each bear their own costs and

expenses, including attorneys' fees, in this Case.

18.    <u>Final Judgment</u>.  The Court hereby finds that this Consent Decree is fair and reasonable,

both procedurally and substantively, consistent with applicable law, in good faith, and in the

public interest.  This Consent Decree is hereby APPROVED and ENTERED as an order of the

Court.  All claims against the United States in this Case, whether alleged in the Complaint or

otherwise, are hereby DISMISSED as provided in this Consent Decree.  This Court expressly

directs ENTRY OF FINAL JUDGMENT in accordance with the terms of this Consent Decree.

SO ORDERED this _____ day of _____ 2008.


_____
The Honorable Joseph L. Tauro
United States District Judge


**FOR PLAINTIFF:**

Dated:  June 2, 2008                    /s/ Steven J. Goldberg_____
                                       Steven J. Goldberg
                                       Vice President/Associate General Counsel
                                       BASF Corporation
                                       100 Campus Park Drive
                                       Florham Park, NJ 07932
                                       (973) 245-6050

-18-

Dated: July 10, 2008                          ___/s/ Paul R. Mastrocola_____
                                              Paul R. Mastrocola
                                              David P. Rosenblatt
                                              Burns & Levinson
                                              125 Summer Street
                                              Boston, MA 02110
                                              pmastrocola@burnslev.com
                                              drosenblatt@burnslev.com

                                              Ronald L. Kuis, Esq.
                                              12 Scenery Road
                                              Pittsburgh, PA 15221
                                              rlkuis@aol.com
                                              (412) 731-7246

                    **FOR THE UNITED STATES:**

                                              RONALD J. TENPAS
                                              Assistant Attorney General
                                              Environment & Natural Resources Division

Dated: July 10, 2008                          ___/s/ Stephen E. Crowley_____
                                              STEPHEN E. CROWLEY
                                              United States Department of Justice
                                              Environmental Defense Section
                                              P.O. Box 23986
                                              Washington, D.C.  20026-3986
                                              Tel:  (202) 514-0165
                                              Stephen.Crowley@usdoj.gov

                                              MICHAEL J. SULLIVAN
                                              United States Attorney
                                              District of Massachusetts

                                              ANTON P. GIEDT
                                              Assistant U.S. Attorney
                                              1 Courthouse Way
                                              Boston, MA  02210
                                              Tel:  (617) 748-3309
                                              Fax: (617) 748-3967
                                              anton.giedt@usdoj.gov

                                              *Attorneys for the United States*

                                                        -19-

**Appendix A**

**Model Certification Required Under Paragraph 4.b**

<u>**CERTIFICATION**</u>

On behalf of BASF Catalysts LLC ("BASF") and pursuant to Paragraph 4.b(2) of the Consent Decree approved and entered in Civil Action No. 05-11241-LJT in the United States District Court for the District of Massachusetts, I hereby certify that:  (a) all of the costs demanded from the United States at this time, as set forth in the attached written demand by BASF, are response costs within the meaning of CERCLA, and were incurred by BASF in connection with the performance of the Radiologically-Contaminated Soils Response Actions or Other Response Actions (as those terms are defined under the Consent Decree) during the two-year time period of January 1, _____, and December 31, _____; (b) all of the response costs set forth in the attached demand have been paid in full by BASF; (c) all of the costs are properly described and documented in accordance with Paragraph 4.b(2) of the Consent Decree; (d) payment by the United States of all of the response costs, as set forth in the attached written demand, together with a payment of any interest demanded, shall be accepted by BASF Catalysts LLC as payment in full of all sums owing under the attached demand.

I hereby swear under penalty of perjury that the foregoing statement is true and correct to the best of my knowledge and belief.

Dated: _____          _____/signature/_____
                                      Name: [Printed]
                                      Title:
                                      Address:
                                      Tel:

Signed before me this _____ day of _____, _____.

_____          _____
Notary's Signature                         Title

_____          My commission expires:_____
Notary's Name [Printed]